| | |
|---|---|
| 1 | RICHARD DOYLE, City Attorney (#88625) |
| 2 | NORA FRIMANN, Chief Trial Attorney (#93249) |
|   | ROBERT BURCHFIEL, Sr. Deputy City Attorney (#112318) |
| 3 | Office of the City Attorney |
|   | 200 East Santa Clara Street |
| 4 | San José, California 95113-1905 |
|   | Telephone Number: (408) 535-1900 |
| 5 | Facsimile Number: (408) 998-3131 |
|   | E-Mail Address: cao.main@sanjoseca.gov |
| 6 | Attorneys for Defendant, CITY OF SAN JOSE |

UNITED STATES DISTRICT COURT

COUNTY OF SANTA CLARA, SAN JOSE DIVISION

| | |
|---|---|
| CHIN-LI MOU, | Case Number: C07-05740 JF |
| Plaintiff, | DEFENDANT'S NOTICE OF MOTION; MOTION FOR SUMMARY JUDGMENT OR PARTIAL JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATION OF NED HIMMEL, CAROL FROST AND DAISY PORTER |
| v. | |
| CITY OF SAN JOSE, SAN JOSE PUBLIC LIBRARY EDUCATION PARK BRANCH, | |
| Defendants. | |
| | Date: August 28, 2009 |
| | Time: 9:00 a.m. |
| | Courtroom: 3 |
| | Judge: Jeremy Fogel |

### NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on August 28, 2009, at 9:00 a.m. or as soon thereafter as counsel may be heard by the above-entitled Court located at 280 S. First Street, San Jose, California, Defendant will move, pursuant to Federal Rules of Civil Procedure Rule ("FRCP") 56 for summary judgment or in the alternative, partial summary judgment on all claims for relief alleged in the Complaint on the grounds that the Plaintiff's allegations fail to state a claim for relief and that the Defendant is entitled to judgment as a matter of law. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and Declarations of Robert b. Burchfiel, Ned Hemmel, Carol Frost, Daisy

Porter, all of the pleadings and papers on file, and whatever oral argument may be made at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Chin-Li Mou (hereafter "Mou") has brought the above captioned action against Defendant City of San Jose (hereafter "City") alleging that her "constitutional rights have been violated specifically but not limited to my first, eighth, and fourteenth amendment rights." See Plaintiff's Complaint at 5:9-11. The most favorable interpretation of Ms. Mou's Complaint would result in an interpretation that Ms. Mou is claiming Defendant City violated her United States Constitutional rights concerning the First Amendment (Freedom of Speech), Fourteenth Amendment (Equal Protection), and Fourteenth Amendment (Due Process Protections). Any allegation or claim pertaining to the Eighth Amendment proscription against cruel and unusual punishment will not be addressed due to the fact that Ms. Mou's stated situation does not lend itself to such a rule which applies only to prisoners who have been tried and convicted. *Ingraham v. Wright* (1977) 430 US 651. Due to the fact that Plaintiff Mou is not claiming any injunctive relief but rather financial damages as a result of these alleged Constitutional violations, Defendant City surmises that Ms. Mou is claiming these damages for the alleged violations of her Constitutional rights pursuant to claims under 42 U.S.C. § 1983.

Ms. Mou's claims stem from her interaction within several branches of the San Jose Public Library and ultimately the suspension of her library privileges for a period of four months.

### II. BACKGROUND AND FACTUAL HISTORY

In 2006, Mou was a patron of several branches of the San Jose Public Library (hereafter "SJPL"). The Educational Park Branch (hereafter "EP") of the SJPL is located on the campus of Independence High School in San Jose which is part of the East Side Union High School District. Due to its location and partnership with Independence High

/ / / / /

School, the EP Branch library has a high volume of high school student patrons, especially between 2:00 p.m. and 4:00 p.m. Monday through Fridays.

In October 2006, Ms. Mou utilized the EP facility on a minimum of 6-7 occasions. Daisy Porter (hereafter "Porter") was the Senior Librarian at EP during this time period. Ms. Mou complained to Porter repeatedly that the other patrons, usually high school students, were too noisy and misbehaving while Mou was attempting to use the library. Porter found the conduct and noise being complained of by Ms. Mou was normal for that specific facility and advised Ms. Mou of that fact and Ms. Porter gave Ms. Mou the locations of other library facilities which could offer her a quieter environment.

Porter also observed that Ms. Mou's personal attempts to confront the other patrons about her complaints caused growing hostility by both Ms. Mou and the confronted student patrons. Porter advised Mou on several occasions not to "shush" or confront the other patrons in any manner, but rather report any complaints directly to the library staff. See Porter Declaration paragraphs 6 and 7; Frost Declaration paragraph 5; and Burchfiel Declaration, Exhibit A at p. 38. Ms. Mou chose to ignore the requests by both Senior Librarian Porter and Supervising Librarian Carol Frost (hereafter "Frost") because as stated by Ms. Mou; "I don't believe that they're entitled to tell me what to do or how to behave." See Burchfiel Declaration, Exhibit A at p. 38.

On October 31, 2006, Ms. Mou created another disturbance and confrontation at the EP Library Branch which was documented by Ms. Porter. See Porter Declaration, Exhibit B and C. Based upon Ms. Mou's behavior causing disruptions and safety concerns within the library, Supervising Librarian Frost reviewed the situation and issued a six-month suspension of Mou's library privileges which was served upon her on November 1, 2006. See Frost Declaration, Exhibit A.

As provided within the policies and procedures of the SJPL, Ms. Mou was afforded a hearing to contest the suspension. Ms. Mou scheduled the hearing before Assistant Library Director Ned Himmel for January 4, 2007 and attended said hearing with her attorney, Jeffrey Kallis and Ms. Mou believes that Mr. Kallis did all of the talking on her

behalf at the suspension hearing while she does not believe she spoke at all. See Burchfiel Declaration, Exhibit A at p. 44. After the suspension hearing, Assistant Library Director Ned Himmel reduced the six-month suspension to 4 months under the conditions outlined in his correspondence to Ms. Mou on January 18, 2007 related to her behavior. See Himmel Declaration, Exhibit B.

### III. LEGAL ARGUMENT

#### A. STANDARD FOR SUMMARY JUDGMENT

FRCP 56(b) states in relevant part as follows:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

Summary Judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp., v. Catrett*, 477 U.S. 317, 322 (1986). After the moving party meets its burden, the burden shifts to the responding party who must then present specific facts showing that a triable issue of fact exists. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978), cert. denied 440 U.S. 981 (1979).

It is not enough for the responding party to point to mere allegations or denials contained in the pleadings. Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. FRCP 56(e). The evidence is supposed to be more than a mere "scintilla"; the responding party must show that the trier of fact could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To preclude the entry of summary judgment the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law,

- 4 -

factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. 242-248. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matshushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Matshushita, supra,* 475 U.S. at 587.

**B.   PLAINTIFF FAILED TO ESTABLISH MUNICIPAL LIABILITY (42 U.S.C. § 1983)**

The only Defendant in this case, City, as a municipality cannot be held liable under 42 U.S.C. § 1983 unless it is found that the execution of the governmental policy or custom inflicts injury. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694; *Springfield v. Kibbe,* 480 U.S. 257, 265 (1987). In order to constitute a governmental custom, the practice of unconstitutional misconduct must by "so common and well settled as to constitute a custom that fairly represents municipal policy" and "actual or constructive knowledge of custom must be attributed to the governmental body or to an official to whom the body was delegated policy making authority." *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984).

Plaintiff has failed to establish or articulate any municipal policy or custom as it pertains to the City of San Jose as a constitutional deprivation. Even assuming *arguendo*, that a constitutional violation had occurred, absolutely no evidence even suggests any constitutional injury occurred because of a City of San Jose policy or custom amounting to misconduct intending to deprive a citizen of their constitutional right. "Nor, without more, would a city automatically be liable under §1983 if one of its employees happen to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*." *City of Canton v. Harris,* 487 U.S. 387 (1989). It has been long established that a municipality can not be held liable under § 1983 on a *respondeat superior* theory. *Monell, supra,* at 691.

This Court can clearly see that the City of San Jose cannot possibly be liable under 42 U.S.C. § 1983 in this action because there is no evidence, that: (1) the City of San

Jose had a policy or custom which allows for the existence of any unconstitutional misconduct by its employees; (2) the City of San Jose's policy making officials are intentionally indifferent to any allegedly unconstitutional misconduct, or that they tacitly authorized any allegedly unconstitutional misconduct, or (3) that the City of San Jose had some "policy" or "custom" that actually caused the alleged constitutional deprivation of which Plaintiff Mou now complains. *Monell, supra.*

### C.    FREEDOM OF SPEECH

Plaintiff Mou has inferred that her First Amendment right to freedom of speech has been violated by Defendant City while she was using the EP Library branch. The factual allegations appear to be that Ms. Mou was told not to have direct contact with anyone who she believed was not conforming to her standards of conduct but rather she was instructed to consult library staff members who would deal with any potential situation. See Mou Deposition attached to Burchfiel Declaration, Exhibit A at pp. 44-46.

Again, Ms. Mou believed that the library staff is not entitled to restrict her confrontations with other patrons. As confirmed in her deposition: "I don't believe that they are entitled to tell me what to do or how to behave." See Mou Deposition attached to Burchfiel Declaration, Exhibit A at p. 38. Ms. Mou had drawn the conclusion that library staff, "historically ignore my comments or requests." See Mou Deposition attached to Burchfiel Declaration, Exhibit A at p. 28.

Defendant City certainly admits that both Porter and Frost, as library staff, have advised Mou that she is not to have direct contact with other patrons and in particular, not to "shush" any other patrons but rather contact library staff with any complaints. When dealing with governmental regulations of speech, the Court has adopted a forum analysis when balancing the government's interest in regulating the speech against the interests of others in the use of the property. The purpose of the particular forum, in the case the library, is essential to the legal determination of any governmental regulation of speech. *Cornelius v. NWACP Legal Defense and Education Fund, Inc.,* 473 U.S. 788, 800 (1983). The United States District Court, Northern District of California has previously found that a

NOTICE OF MOTION AND MEMO OF Ps & As                CASE NO. C07-05740 JF
565867.doc

library was classified as a limited public forum which was not intended to be open for indiscriminate use. *Faith Center Church Evangelistic Ministries v. Glover,* 480 F.3d 891, 907 (9th Cir. 2007). As indicated in the SJPL Disruptive Behavior List, there are numerous activities that are restricted within the library which includes conduct which "unreasonably interferes with another's use of the library or unreasonably interferes with the ability of members of the library staff to perform his or her job." See Frost Declaration, Exhibit A (bates # SJ0025 #16).

When dealing with a limited public forum, the Court's focus on the reasonableness of the viewpoint neutral restrictions placed on speech. *Faith Center,* 480 F.3d at 908. As similar fact pattern was present in the case of *Galiano v. Institute of Governmental Studies at the University of California at Berkeley* (2008) WL4155594 and the Court found that "given the purpose of the IGS Library as an environment suitable for reading and studying, the Court finds that the library's policy of prohibiting patrons from asking other patrons for quiet, is a reasonable restriction of speech under *Faith Center.*" Additional factors in the case at hand make for a stronger finding of reasonableness in the restriction of Ms. Mou's contact with other patrons in that her previous encounters had resulted in not only disruption but hostile conduct which as documented, "can create a hostile environment for both the patron and the students." See Frost Declaration, Exhibit A (bates # SJ0018).

### D.   EQUAL PROTECTION

Ms. Mou has specifically stated a claimed violation of her Fourteenth Amendment Rights and described factual allegations where she believes she is treated differently than other library patrons. See Plaintiff's Complaint, 5-11; and Plaintiff's Deposition attached to Burchfiel Declaration, Exhibit A at pp. 39 and 46. Ms. Mou has stated that she believes that the staff of the library "maintained the library as a safe environment for the students, but not for me." Ms. Mou also believes that she was discriminated against when she was told to leave the library after having used her husband's library care to access the internet in violation of the library policies. (Plaintiff Deposition page 38 and 39.) The reason why Ms. Mou believes that she is being discriminated against by library staff was explained as

follows: "Maybe because I am an Asian woman. Maybe because I have an accent. Or maybe because, I am not certain. But I think I am being discriminated." (Plaintiff Deposition, Burchfiel Declaration Exhibit A, page 39.)

When dealing with a claim that a party has been intentionally treated differently from others that are likewise situated, an equal protection argument can be made if there is no rational basis for the difference in treatment. *Willowbrook v. OLCH,* 528 U.S. 562, 120 Superior Court 1073 (2000). Additionally when dealing with claims of equal protection it has been determined that, "only if laws are [so irrational or absurd on their face and it is clear they can be motivated by nothing other than animus or prejudice] will they violate the equal protection clause under rational basis review." *Tucson Womens' Clinic v. Eden,* (9th Cir. 2004) 371 F.3d 1173, 1185.

Plaintiff has failed to establish that any City library staff has acted with any prejudice towards Plaintiff, let alone a group that Plaintiff would represent. As mentioned above, Plaintiff has no idea why she believes that she is being discriminated against but certainly feels that is the case.

Additionally, the fact that the library staff is enforcing the policies and procedures pertaining to conduct of its patrons certainly has a rational basis and "aimed at preventing patrons from causing disturbances or engaging in behavior that might interfere with library activities."

### E. DUE PROCESS

Plaintiff Mou has alluded to the claim that her Fourteenth Amendment Rights have been violated by Defendant City in this action. See Plaintiff's Complaint, 5:9-11. Reviewing the claimed facts by Plaintiff Mou that may possibly be the basis for any Fourteenth Amendment violation, the initial equal protection argument has been addressed above. Due to the fact that Ms. Mou had her library privileges suspended for a period of four (4) months, there may be a claim by Ms. Mou that she did not receive the protections afforded by the Due Process clause of the Fourteenth Amendment. It has been well established that procedural due process is required by any municipality actions

- 8 -
NOTICE OF MOTION AND MEMO OF Ps & As                                CASE NO. C07-05740 JF
                                                                   565867.doc

1  which deprive individuals of "liberty" or "property" within the meaning of the Due Process
2  clause of the Fourteenth Amendment. *Matthews v. Eldridge,* 424 U.S. 319, 332 (1976).
3  Defendant City would first argue that the suspension of Mou's library privileges was not
4  either a "liberty" or "property" right which would trigger any imposed due process
5  requirements under the Fourteenth Amendment.
6      Even if one could argue that the suspension of Mou's library privileges could be
7  characterized as a deprivation of a liberty interest, Mou was provided all requisite due
8  process. There is no dispute that Ms. Mou was provided notice of her suspension along
9  with a copy of the "facts giving rise to the suspension". She was also provided a copy of
10 the Disruptive Behavior List and the library policies for suspension and the policy for
11 requesting a hearing to challenge the suspension. See Frost Declaration, Exhibit A. It is
12 further undisputed that a library suspension hearing was held on January 4, 2007 before
13 Assistant Library Director Ned Himmel where Plaintiff Mou appeared with he
14 representative attorney, Jeffrey Kallis. Mr. Himmel reduced the six-month suspension to
15 four months under certain behavioral conditions which had to be met by Ms. Mou. See
16 Himmel Declaration, Exhibit A. It is well established that under certain circumstance
17 similar to those presented in this case, due process does not require full adjudication of
18 issues but rather the requisite procedure for the hearing is one of opportunity for providing
19 written and oral evidence. *Mathews*, 424 U.S. 319 at 334.
20     The factual issue that Ms. Mou's hearing was held after the beginning of her
21 suspension in no way diminishes the fact that Ms. Mou was provided all requisite due
22 process under the Fourteenth Amendment. As the Supreme Court has explained, "an
23 important governmental interest, accompanied by a substantial assurance that the
24 deprivation is not baseless or unwarranted, may in limited cases demanding prompt action
25 justify postponing the opportunity to be heard until after the initial deprivation." *Fed.*
26 *Deposit Insurance Co., v. Mellen*, 486 U.S. 230, 240 (1988). The Ninth Circuit has
27 followed this line of legal analysis where a post suspension hearing was found to be
28 adequate protection of due process where the defendants were able to articulate a strong

1 | interest in implementing the suspension prior to the hearing. *Qualls v. Cook*, 245
2 | Fed.Appdx. 624, 625 (9th Cir. 2007). The important governmental interest served by the
3 | immediate suspension without a pre-deprivation hearing was one of public safety and
4 | termination of an escalating disruption to the library staff and other patrons of the library.
5 | Ms. Mou had demonstrated that she was dissatisfied with the level of noise allowed at the
6 | EP Brach by library staff members and was not going to follow their instructions to
7 | discontinue any confrontation with the other patrons who Ms. Mou believed violated her
8 | personal standard of conduct within the library. The library staff witnessed the escalation
9 | of hostility in Ms. Mou's conduct and failure to follow not only the branch staff instructions
10 | by Ms. Porter, but also those instructions given by Library Division Manager Frost. See
11 | Porter Declaration and Exhibit B and C; and Frost Declaration and Exhibit A.

12 | It should be noted that the degree of deprivation involved in the suspension of Ms.
13 | Mou's library privileges from SJPL is influenced by the fact that Ms. Mou had access to a
14 | number of other library facilities such as branches at the Santa Clara County Library,
15 | Sunnyvale City Library, Mountain View City Library and San Francisco Library Branches.
16 | See Plaintiff's Deposition attached to Burchfiel Declaration, Exhibit A at p. 58.

17 | Defendant City believes that given both the facts as presented by Ms. Mou and the
18 | above-referenced case law establishes that the actions taken by SJPL in the temporary
19 | suspension of Ms. Mou's library privileges had in all manners conformed with the
20 | requirements of due process as required under the Fourteenth Amendment.
21 | / / / / /
22 | / / / / /
23 | / / / / /
24 | / / / / /
25 | / / / / /
26 | / / / / /
27 | / / / / /
28 | / / / / /

NOTICE OF MOTION AND MEMO OF Ps & As                      CASE NO. C07-05740 JF
                                                          565867.doc

## IV. CONCLUSION

For all of the foregoing reasons, Defendant City respectfully requests the Court grant their motion for summary judgment or, in the alternative, partial summary judgment based upon Plaintiff's failure to state a claim for relief.

Respectfully submitted,

Dated: July 17, 2009

RICHARD DOYLE, City Attorney

By: _____
ROBERT BURCHFIEL
Sr. Deputy City Attorney

Attorneys for Defendant,
CITY OF SAN JOSE