1  RICHARD DOYLE, City Attorney (#88625)
   NORA FRIMANN, Chief Trial Attorney (#93249)
2  ROBERT BURCHFIEL, Sr. Deputy City Attorney (#112318)
   Office of the City Attorney
3  200 East Santa Clara Street
   San José, California 95113-1905
4  Telephone Number: (408) 535-1900
   Facsimile Number: (408) 998-3131
5  E-Mail Address: cao.main@sanjoseca.gov

6  Attorneys for Defendant, CITY OF SAN JOSE

                    UNITED STATES DISTRICT COURT

                     COUNTY OF SANTA CLARA

                       SAN JOSE DIVISION

CHIN-LI MOU,                        Case Number: C07-05740 JF

           Plaintiff,               DECLARATION OF ROBERT B.
                                    BURCHFIEL IN SUPPORT OF
       v.                           DEFENDANT'S MOTION FOR
                                    SUMMARY JUDGMENT
CITY OF SAN JOSE, SAN JOSE PUBLIC
LIBRARY EDUCATION PARK BRANCH,      Date:       August 28, 2009
                                    Time:       9:00 a.m.
           Defendants.              Courtroom:  3
                                    Judge:      Jeremy Fogel

I, Robert B. Burchfiel, declare the following:

1.  I am an attorney at law duly licensed to practice in the Courts of the State of California in the United States District Court, Northern District of California. I am a Senior Deputy City Attorney for the City of San Jose, defendant in the above-titled action.

2.  Attached as Exhibit A are true and correct copies of excerpts from the deposition of Plaintiff Karen Mou.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on July 16, 2009, at San Jose, California.

                              ROBERT B. BURCHFIEL

- 1 -

DEC OF ROBERT BURCHFIEL ISO                    CASE NO. C07-05740 JF
DEFENDANT'S MSJ                                566274

Dockets.Justia.com

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHIN-LI MOU,                          )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )   CASE NO. C07 05740JF
                                      )
CITY OF SAN JOSE, SAN JOSE            )
PUBLIC LIBRARY EDUCATION PARK         )
BRANCH,                               )
                                      )
            Defendant.                )
                                      )

DEPOSITION OF CHIN-LI MOU

DATE:              October 10, 2008

TIME:              12:30 p.m.

LOCATION:          City Attorney's Office
                   200 E. Santa Clara St.
                   16th Floor
                   San Jose, CA  95112

REPORTED BY:       BETTY A. SALOIS, RPR,
                   Certified Shorthand Reporter
                   License Number 4768

-----------------------------------------------------

SALOIS & ASSOCIATES
Certified Shorthand Reporters
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA  94085-4037
(408) 279-DEPO

1  advice.

2  Q.   You did see this same female student on or about

3  November 7th, 2006 at the Independence library,

4  correct?

5  A.   Yes.

6  Q.   You called the police; is that correct?

7  A.   Yes.  That was the advice that I had obtained from

8  311.

9  Q.   When you saw this person were you in the library?

10 A.   Yes.

11 Q.   Was the female student that you were fearful of

12 also in the library?

13 A.   Yes.

14 Q.   Why didn't you first contact library personnel

15 before calling the police?

16 A.   Because the head of the library staff historically

17 ignore my comments or requests.

18 Q.   Those comments and requests were about noisy

19 students, correct?

20 A.   He also ignore about the complaint when students

21 bothered me or intimidated me.

22 Q.   Other than this one female that you have testified

23 to when have you ever been intimidated or threatened by

24 other students?

25 A.   Well, this female student alone has threatened me

```
 1   A.    I have done it at Walgreen and Payless.
 2   Q.    Which Walgreens and Payless?
 3   A.    I don't remember.  My ex-husband filled them for
 4   me.
 5                (Short recess.)
 6            MR. BURCHFIEL:  Let's go back to Exhibit B
 7   that you were shown.
 8   Q.    As clarification do you believe on Exhibit B where
 9   it says on the first page reasons for suspension and
10   there is a list of paragraphs that go on to the second
11   page, do you believe you were given that information
12   before you were suspended?
13   A.    No.  Furthermore some of the reasons listed on
14   this document are wrong.
15   Q.    The question is have you ever seen this document
16   before today?
17   A.    Yes.
18   Q.    When?
19   A.    I don't remember.
20   Q.    Before you went to meet with the man and your
21   lawyer at the library, correct?
22   A.    Yes.
23   Q.    All right.  What I want to do is go through this
24   document and get your comments.  We are going to go
25   line by line, and if you would follow I would
```

1 appreciate it. The first sentence says quote over the
2 past several weeks the patron alleges that students in
3 the Educational Park branch have been noisy end of
4 quote. Is that true? You had made those complaints?
5 A. Yes.
6 Q. The next sentence says quote staff have spoken
7 with the patron and have asked her not to speak
8 directly to the students when she is concerned about
9 their noise level or behavior period end of quote. Is
10 that true that the staff told you that?
11 A. They might have said that. Nonetheless I don't
12 believe that they are entitled to tell me what to do or
13 how to behave.
14 Q. The next sentence says quote it is the staff's
15 responsibility to insure that the library is a safe
16 environment for all members of the public period end of
17 quote. Do you believe that is a true statement?
18 A. I believe they have maintained the library as a
19 safe environment for the students, but not for me.
20 Q. Have you ever directly talked to the students or
21 tried to have them be quiet?
22 A. I shushed them before.
23 Q. Was that your attempt to have them be quieter?
24 A. Yes.
25 Q. The next paragraph says quote the staff have asked

```
 1  her on several occasions to notify them if she is
 2  having a problem period end of quote.  Is that a true
 3  statement?
 4  A.   No.  I think they might have mentioned it once.
 5  Q.   It is true that you were asked to leave the
 6  library when you were found to use your husband's
 7  library card to access the internet, correct?
 8  A.   Yes.  But I think it was simply an excuse because
 9  there are so many others who did the same thing and
10  they were never asked to leave the library.
11  Q.   So why do you think -- I am sorry.  Go ahead?
12  A.   That is why I don't think it is equal protection
13  for all members.  Supposed to be so.
14  Q.   What is there that you believe about you that is
15  different that you are being treated differently?
16  A.   Maybe because I am an Asian woman.  Maybe because
17  I have an accent.  Or maybe because I am not certain.
18  But I think I am being discriminated.
19  Q.   But you have no proof of discrimination, correct?
20  A.   That is not true.
21  Q.   What proof do you have that you are being
22  discriminated?
23  A.   Like the statement from the officer that they were
24  born here, but I wasn't.  That is definitely
25  discrimination.
```

```
 1   Q.   Other than that statement by the officer what
 2   other evidence do you have of discrimination?
 3   A.   I believe they discriminate me.
 4   Q.   What evidence do you have of that?
 5   A.   Your evidence in the discovery.
 6   Q.   What discovery?
 7   A.   Future discovery.
 8   Q.   Other than future discovery do you have any
 9   evidence of discrimination other than what the police
10   officer is supposed to have said?
11   A.   I don't know just yet.
12   Q.   Have you witnessed the library staff let other
13   people use library cards to access the Internet that
14   don't belong to the person?
15   A.   Yes.  Often times I witness students calling their
16   friends letting them know that they have already had
17   their two hours time with the computer, and so they ask
18   for friend's library card number.  I have also heard
19   other patrons saying that it is not a big deal.  It is
20   almost done by everyone.
21           I have also talked to a librarian telling her
22   about what I saw that some students use their friend's
23   library card because their time were up, and the
24   librarian said that that is not against the rule.
25   Q.   Which librarian is this?
```

```
 1   A.   No.
 2   Q.   Did you ever use your library card to gain access
 3   to a music listening room?
 4   A.   Yes.
 5   Q.   Did you ever use your husband's card to access the
 6   music listening room?
 7   A.   Yes, but it was just an error.  I used the wrong
 8   card.
 9   Q.   You were told to leave the Martin Luther King
10   Library for a day in 2004.  Do you remember that?
11   A.   I believe so, but I don't think it was a fair
12   judgment.
13   Q.   Were you charged with any crimes?
14   A.   No.
15   Q.   Have you ever argued with your husband while in a
16   library?
17   A.   I don't remember.
18   Q.   Did you talk at all to the man that you went to
19   meet at the Martin Luther King Library with your
20   lawyer?
21   A.   I don't believe I did.
22   Q.   What civil rights of yours do you believe have
23   been violated by San Jose employees?
24   A.   Including but not limited to First Amendment and
25   14th Amendment.
```

```
 1   Q.   I don't want the numbers.  I want the explanation
 2   of what rights of yours have been violated.  I just
 3   want you to explain verbally with language, not
 4   numbers.
 5   A.   Are you calling for legal assumption or legal
 6   conclusion or any things like that?
 7   Q.   No legal conclusion.  I am just asking you you
 8   have alleged civil rights violations.  I want to know
 9   what they are?
10   A.   Well, they violated my freedom of speech because
11   they told me not to shush the student and not to talk
12   to the students.  They also violated my 14th Amendment.
13   Q.   Let's just keep with the first, your freedom of
14   speech.  Other than telling you not to talk to the
15   students or shush them did they violate your freedom of
16   speech in any other way?
17   A.   They disallowed me to use the library, and the
18   library is an information center.  And I have my right
19   to use the library.
20   Q.   Right.  I am just talking about freedom of speech.
21   You also say they violated your rights because they
22   took away your library privileges, correct?
23   A.   That is right.
24   Q.   All right.  Is there any other way they violated
25   your freedom of speech other than telling you not to
```

```
 1  talk to the students or to shush them?
 2  A.    These are the ones that I can remember now.
 3  Q.    Other than the freedom of speech of talking to the
 4  students and taking away your library privileges did
 5  any San Jose employees do anything else to you that
 6  violated your rights?
 7  A.    I think they violated my equal protection right
 8  because they only protected the students.  They did not
 9  protect me.
10  Q.    So they protected all the students and didn't
11  protect you; is that what you believe?
12  A.    Yes.
13  Q.    What about you is different than the students?
14  A.    I don't believe we have a difference.  However,
15  the statement from the police officer make it clear
16  that because they were born here so they should be
17  protected and I shouldn't.
18  Q.    Protected from what?
19  A.    I don't understand your question.
20  Q.    You said that they should be protected and you
21  shouldn't.  I am asking you protected from what?
22  A.    I still don't understand the question.  I think
23  maybe this way it will be better explain it.  I think
24  that I got the impression that because the students
25  were born here so their rights should be protected and
```