RICHARD DOYLE, City Attorney (#88625)
NORA FRIMANN, Chief Trial Attorney (#93249)
ROBERT BURCHFIEL, Sr. Deputy City Attorney (#112318)
Office of the City Attorney
200 East Santa Clara Street
San José, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address: cao.main@sanjoseca.gov

Attorneys for Defendant,
CITY OF SAN JOSE

UNITED STATES DISTRICT COURT

COUNTY OF SANTA CLARA

SAN JOSE DIVISION

| | |
|---|---|
| CHIN-LI MOU,<br><br>          Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE, SAN JOSE PUBLIC LIBRARY EDUCATION PARK BRANCH,<br><br>          Defendants. | Case Number: C07-05740 JF<br><br>**DECLARATION OF DAISY PORTER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       August 28, 2009<br>Time:      9:00 a.m.<br>Courtroom:  3<br>Judge:     Jeremy Fogel |

I, Daisy Porter, declare:

1.     I am a Senior Librarian with the City of San Jose Public Library and received my Master's in Library Science in May of 2003.

2.     In October of 2006 I was the Senior Librarian at the Educational Park Branch of the San Jose Library which is located on the campus of Independence High School in San Jose, California.

3.     Attached as Exhibit A is a true and correct copy of the San Jose Library Suspension Policy and Disciplinary Behavior List that was part of the San Jose Library policy in 2006.

/ / / / /

1

Dockets.Justia.com

1      4.     Attached as Exhibit B is a true and correct copy of the two page Library
2  Incident Report dated October 27, 2006 which I prepared and contains true factual
3  statements of events contained therein.

4      5.     Attached as Exhibit C is a true and correct copy of the two page Library
5  Incident Report dated October 31, 2006 which I prepared and contains true factual
6  statements of the events contained therein.

7      6.     As Senior Librarian of Educational Park Branch of the San Jose Library I had
8  direct contact with Karen Mou on four or five occasions during the one month period prior to
9  October 27, 2006.  During these contacts, Karen Mou demanded in an increasingly angry
10 manner that I and the staff of the library provide a quieter environment for Ms. Mou than she
11 was currently experiencing.  The nature of the Educational Park Library structure and use by
12 high school students were factors that made Ms. Mou's expectation of the level of quietness
13 within this branch unrealistic and not one which was conducive to the majority neither of
14 library users nor within the objectives of the standards set by the branch staff.  On four or
15 five occasions prior to October 27, 2006 I personally explained to Ms. Mou that her
16 expectations of quietness and conduct of other patrons at the Educational Park Branch was
17 not within the goals and objectives of this particular facility.

18     7.     Prior to October 27, 2006 I had also told Ms. Mou several times not to
19 personally confront the other patrons (primarily students) using the library in a direct attempt
20 to enforce her own personal desires to lower the level of noise or distraction in the library.  I
21 witnessed hostility and disruption by both Ms. Mou and those patrons, again primarily
22 students, during these confrontations initiated by Ms. Mou and the ensuing investigations by
23 staff.

24     8.     Also prior to October 27, 2006 Ms. Mou had expressed her dissatisfaction with
25 the level of activity and noise at the Educational Park Branch and continued against my
26 instruction to directly confront other patrons of the library concerning her demand to have
27 others behave more quietly.

28

2

DEC OF DAISY PORTER ISO DEFENDANT'S MSJ

C07-05740 JF
565742

9.     I felt that Ms. Mou was the direct cause of repeated disruptions and unreasonable interference with others in their use of the library.   Her continued action was creating a potential safety hazard for both staff and patrons.

10.     Ms. Mou's interactions both with the staff and other users of the library became increasingly hostile while she appeared to be also increasingly agitated.

11.     After the incidents described in Exhibits B and C attached, I believed that a suspension of Ms. Mou's library privileges were in order and in the best interest of all involved.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on June _____ 30 , 2009, at San Jose, California.

_____
DAISY PORTER

3

C07-05740 JF
565742

# EXHIBIT A

CITY OF SAN JOSE LIBRARY DEPARTMENT
PROCEDURE MANUAL

SUBJECT:  **SUSPENSION POLICY**              PROCEDURE:  **6.13.3**

EFFECTIVE DATE:  5/18/00
APPROVED:                                      REVISED DATE:

The Suspension Policy includes these five parts:

1.  San Jose Public Library *Suspension Policy*

2.  San Jose Public Library *Notice of Library Suspension* (3 *pages*)

3.  San Jose Public Library *Notice of Hearing - Library Suspension*

4.  San Jose Public Library *Form Hearing Determination Letter*

5.  San Jose Public Library *Disruptive Behavior List*

suspension/4P

CITY OF SAN JOSE LIBRARY DEPARTMENT
PROCEDURE MANUAL                                Page 2 of 9

SUBJECT:  **SUSPENSION POLICY**                 PROCEDURE:  **6.13.3**

---

APPROVED:                                       EFFECTIVE DATE:  5/18/00
                                                REVISED DATE:

---

## SAN JOSE PUBLIC LIBRARY SUSPENSION POLICY

In order to preserve the peace and provide public access to Public Library facilities, the Library Suspension Policy describes conduct that may be grounds for removal from, and denial of access to, the city libraries, the procedures for suspension and the suspended customer's right to a hearing.

## PROCEDURES:

In order to be fair and equitable in the application of Library behavior rules and to provide a documented record of the enforcement of these rules, authorized Library staff members shall apply the following procedures.  Authorized library staff members are: Ranking staff members (defined as supervisors or staff members designated by a supervisor to act in that capacity), and Public Safety Officers.

## 1-DAY SUSPENSION:

**Note:  The Library reserves the right at all times to immediately discharge a customer that is dangerous or in any way threatening library staff or other customers.**

Some behavior may be disruptive enough to ask a customer to leave for the day.  A written report is **not** required for "remainder of the day" suspensions.  In order to suspend a customer for a day, the following procedures shall occur:

1.  Library staff should explain to the customer that they are engaging in disruptive behavior.  Library staff should tell the customer what the disruptive behavior is and the importance of abiding by the rules.  The customer should be advised that further violations of the rules will not be tolerated and may result in their being asked to leave for the day.

2.  If the disruptive behavior continues after staff has admonished the customer, the customer may be asked to leave for the day.  If the customer feels that the treatment is unfair, a supervisor or ranking staff member may be called to hear the objection.  The supervisor's or ranking staff member's decision will be final.

## LONGER THAN 1-DAY SUSPENSIONS:

1.  Some disruptive behaviors may require that the customer be suspended for longer periods of time.  Longer than 1-day suspensions will be based on the severity of the behavior, or will be issued if a customer continues to be disruptive after receiving at least one 1-day suspension.

2.  Depending on the severity of the disruptive behavior, a customer may be suspended for a minimum of one week and a maximum of twenty-six weeks (6 months).

suspension/4P

CITY OF SAN JOSE LIBRARY DEPARTMENT
PROCEDURE MANUAL                          Page 3 of 9

SUBJECT:  **SUSPENSION POLICY**            PROCEDURE:  **6.13.3**

APPROVED:                                 EFFECTIVE DATE:  5/18/00
                                          REVISED DATE:

3.  If a decision is made to suspend a customer for more than the remainder of the day, staff must complete Part A of the "Notice of Library Suspension" document.  A copy of the completed document (all three pages) must be made available to the customer.  In the case of a minor (under the age of 18), the Library will attempt to notify the parent or guardian and provide the parent or guardian with a copy of the completed document.

4.  Any customer who is suspended is entitled to a hearing. To receive a hearing the customer must follow the directions on the "Notice of Library Suspension" and Part B of the "Notice of Library Suspension."  In addition, the customer must return the forms to the suspending library within 5 working days.  The Hearing Officer will hold a suspension hearing at the Main Library.  A parent or guardian must accompany a minor (under the age of 18) to the hearing.  The Hearing Officer's decision is final.

5.  The original suspension form shall be kept at the location where the suspension occurred.  Copies of Parts A and B should be made, and forwarded to, the Supervising Librarian in charge of the location where the suspension took place and the Library Public Safety Services Unit.

suspension/4P

# SAN JOSE PUBLIC LIBRARY
# NOTICE OF LIBRARY SUSPENSION

## Part A

Name "Karen" Chin-Li Mou _____

Date of notice of Library suspension___November 1, 2006_____

**Your visitor privileges to all San Jose Public Libraries are suspended for a period of _One Month_ .**

This means that you may not enter any San Jose Library from____ November 1, 2006 to
___December 1, 2006___ . Your access to the San Jose Public Libraries will be restored on
___December 2nd, 2006___ .

Reason for suspension.  Please describe the incident.

Over the past several weeks, the patron alleges that students in the Educational Park Branch have been noisy. Staff have spoken with the patron, and have asked her to not speak directly to the students when she is concerned about their noise level or behavior. It is the staff's responsibility to ensure that the library is a safe environment for all members of the public. When the patron directly confronts the students, they verbally respond to her, which can create a hostile environment for both the patron and the students.

Staff have asked her on several occasions to notify them if she is having a problem. On 10/27, library staff wrote an incident report of a specific case where the patron asked staff to 'stop a group of students from making noise.' She also mentioned that she had 'shushed' some patrons, and they cursed at her. When the staff member was writing up the report, she noticed that the patron in question was using a library card to access the Internet. When the patron was informed that she cannot use another person's card to access the Internet, staff report that she argued with the staff. At that point, she was asked to leave the library. Students followed her outside and taunted her. The police were called.

I spoke with the patron on 10/27 and on 10/30, and asked her to not return to the library until I have been able to visit the branch. ON 10/31, the patron returned to the Educational Park branch. She asked staff to discipline a group of students. Staff investigated, and determined no wrong-doing. The patron then proceeded to call both the Independent High School Security, and then San Jose Police, to report that the students were harassing her. Both IHS Security and SJPD determined there was no wrong-doing, and expressed to staff that the patron was engaging in 'nuisance calls' to them. The suggested we ban the patron from the library because of her disruptive behavior.

suspension/4P

**<u>You have the right to a hearing.</u>**

You may request a hearing to challenge this suspension.  Your suspension will be withdrawn if a hearing officer determines that you did not engage in the behaviors listed on this form and that this suspension is unwarranted.  To request a hearing, follow the directions below and complete and submit Part B of this form within five (5) working days.

suspension/4P

## Procedures to request a hearing:

### Complete and return Part B, attached.

**If you would like a hearing, you must complete and return Part B of this form within 5 working days of the date of the notice of suspension listed above.** Working days are defined as those days in which the library is open for business for any part of the day. You must return this form to the library that issued this suspension. The library must actually receive this within 5 working days; postmarks will not apply.

### Hearing Date:

Once you have returned Part B of this form, the library will send you a notice that will provide you with the hearing date, time and location. This notice will be mailed to you within five (5) days of the time the library receives your request for a hearing. If you do not have an address, you must return to the suspending library in five (5) days to pick up your notice of hearing date, time and place.

### Hearing Procedure:

When you arrive for your hearing you will be provided the opportunity to present evidence or reasons why this suspension should be withdrawn. Suspensions will be withdrawn if the hearing officer determines by a preponderance of the evidence that you did not engage in the behavior listed above under "Reason for Suspension," and that this suspension is unwarranted. A parent or guardian must accompany a minor (under the age of 18) to the hearing.

### Hearing Determination:

At the conclusion of the hearing, the hearing officer will verbally tell you whether the suspension will be withdrawn. The hearing officer will tell you the factual reasons for his or her decision. Within five (5) days of the date of your hearing, the hearing officer will mail you a hearing determination that will reiterate what you were told at the hearing. If you do not have a mailing address, you may return to the suspending library after five (5) days to pick up a copy of the hearing determination. The hearing determination will include findings of fact in support of the decision. The hearing officer's decision is final.

Copies:

☐ Supervising Librarian          ☐ Public Safety          ☐ Branch or Unit

☐ Other_____

suspension/4P

# SAN JOSE PUBLIC LIBRARY
# NOTICE OF LIBRARY SUSPENSION

## PART B

☐ Yes, I want to appeal this suspension.

Name:_____

Address:_____

Telephone:_____

Reason for Appeal (Optional):

Issued by_____Branch/Unit

(Return this form to the library issuing the suspension.)

122605

suspension/4P

# SAN JOSE PUBLIC LIBRARY

## NOTICE OF HEARING - LIBRARY SUSPENSION

Date: _____

Time: _____

Location:

A parent or guardian must accompany a minor (under the age of 18) to the hearing.

suspension/4P

## FORM HEARING DETERMINATION LETTER

On _____, a hearing was held whereby you appealed your Library suspension. Present at the hearing were _____, on behalf of the Library, and _____, on behalf of the appellant. Pursuant to this hearing, the hearing officer has made the following finding of facts:

(Include a synopsis of the events that resulted in this suspension).

Accordingly, the hearing officer has determined that your suspension is (or is not) warranted. Your suspension will remain in effect until _____. After that date your Library privileges will be restored. (or Effective immediately your suspension is withdrawn, and your Library privileges are restored.)

This decision is final. The time within which judicial review must be sought is governed by the California Code of Civil Procedure, section 1094.6.

120558

suspension/4P

## DISRUPTIVE BEHAVIOR LIST

1. No person shall sleep in the library facilities.

2. No person shall leave food or drink residue, or otherwise create a custodial problem when eating or drinking in the library facilities.

3. No person shall utilize library electronic equipment in excess of the posted time limits.

4. No person shall smoke tobacco or any other substance within the library facilities.

5. No person shall utilize the library facilities for bathing, washing clothes, utensils, or other items, or preparing food.

6. No person shall enter or remain in library facilities when it is not open to the public unless authorized by the Library staff to do so.

7. No person shall obstruct library entrances, exits, aisles, or other areas in any manner that impedes or restricts public access. This restriction shall not apply to authorized City staff or other authorized persons performing maintenance, repair, or other required business activities.

8. No person shall bring any bicycle, unicycle, tricycle or other wheeled conveyance into library facilities, or leave such conveyances at the entry or exit areas in a manner that blocks ingress or egress. This regulation shall not apply to wheelchairs, other medical devices, strollers or other similar conveyances, provided they are utilized or left in a manner that does not restrict public access.

9. No person shall bring any animal into the libraries other than service animals assisting individuals with disabilities, animals under the control of a peace officer, or as authorized by City staff.

10. No person shall camp in library facilities, or on library grounds. Camping means the use of library property for living or accommodation purposes.

11. No person shall engage in riding skateboards, roller skates, and/or roller blades or running in library facilities or on library grounds.

12. No person shall engage in loud or boisterous conduct in the library facilities or on the library grounds, so as to unreasonably interfere with the use of the facilities by patrons or City staff.

13. No person shall use sound generating or amplifying devices within the library facilities or on the library grounds, in any manner that unreasonably interferes with the use of library services by patrons or City staff. Sound generating or amplifying devices employed by City staff or other authorized persons are exempt from this regulation.

14. No person shall engage in threatening or intimidating language or behavior directed at library patrons or City staff on library premises or grounds.

suspension/4P

15. No person shall enter or remain within the library facilities while emitting odors (including bodily odors, perfumes, colognes, etc.) which unreasonably interfere with the use of library services by other patrons or City staff.

16. No person shall engage in any criminal activities, or other activities, which unreasonably interferes with another person's use of the library, or unreasonably interferes with the ability of a member of the library staff to perform his or her job.

17. No person shall leave packages, handbags, laptop computers, or any kind of luggage unattended in the Library.

suspension/4P

# EXHIBIT B

# CITY OF SAN JOSE PUBLIC LIBRARY SYSTEM
# BRANCH LIBRARY INCIDENT REPORT

**DATE OF INCIDENT:** 10/27/06      **LOCATION (BRANCH):**    Educational Park Branch Library

**TIME OF INCIDENT:** 2:20 PM      **TYPE OF INCIDENT:**    Patron Complaint

**S.J. POLICE CASE #:** NA      **OFFICER (NAME/BADGE):**   NA

**CUSTOMER NAME:** **Unknown**      **PHONE #:**      **LIBRARY CARD #:**

**HOME ADDRESS:**      **DATE OF BIRTH:**

**VICTIM NAME:**      **PHONE #:** NA      **LIBRARY CARD #:** NA

**HOME ADDRESS:** NA      **DATE OF BIRTH:** NA

**WITNESS NAME:**      **PHONE #:**      **LIBRARY CARD #:** NA

**HOME ADDRESS:** NA      **DATE OF BIRTH:** NA

**STAFF MEMBER(S) INVOLVED:** Daisy Porter, Anh Doan, Andee Shirley, Melvyn Yabut, Candice Tran

**STAFF MEMBER COMPLETING REPORT:** Daisy Porter

**DESCRIBE THE INCIDENT:** The customer is a regular at Educational Park during the after-school hours, although she is not a student herself (she is middle-aged). I have discussed the library rules with her on numerous occasions; so have other staff, and we have been unfailingly courteous to her despite her constant causing of problems. Her inability to focus on one subject for very long and her fixation on disciplining several particular students suggest to me that she may be mentally ill, although she is articulate and intelligent. She frequently harasses students and then complains that they yell at her and infringe upon her right to use the public library.

The customer approached me today and asked me to stop a group of students from making noise. From my point of view, the group she pointed out were relatively quiet and well-behaved. She has complained about them frequently in the past, so I suspected that her complaints were a form of retribution. I explained to the customer that while we do our best to keep the noise level down after school, it's difficult with the high volume of patrons we have. I explained that we schedule our full staff to be on the floor at this time, circulating to assist patrons and assure that everyone is in compliance with the rules.

The customer then complained that when she had shushed some students, they responded by cursing at her and telling her to leave the library. I agreed that this behavior was not acceptable, and I asked her (as I have asked her several times in the past) to come and get me or another library staff member and ask us to enforce the rules rather than doing it herself. I said we would be happy to assist. She responded by getting upset and saying that I was removing her right of freedom of speech and that I couldn't tell her what to do or make special rules for her. I said that on the contrary, I was making a

personal request from me to her, asking her to please come to get me to take over the job of disciplining the students so that she could enjoy her book.  She said she would "try" to do this.

The customer then went on to say that the library is a public place and that she has the right to quiet. She said that she was never able to read quietly here and that I was violating her rights. I explained that I would try to help her find a quieter place in the library, but that during the after-school hours, that was difficult. I politely recommended that she visit us in the morning or that she visit a branch that's not located on a high school campus. She became angry and said that I was infringing upon her rights to go anywhere she wants whenever she wants. She threatened to call Library Administration so that they could discipline me, and she threatened to call the police to tell them that we at EK were disturbing her peace. She said that she didn't want to do this, but that my failure to respect her rights would force her to do it. I tried to de-escalate the situation by saying again that we try our best to keep the branch quiet, but that this often isn't possible after school. I then reminded her that she could always come to get me or another library staff member if she saw anyone violating any library rule. I thanked her for her time and stepped back into the office.

Library page Melvyn Yabut said that he had witnessed the original incident between this customer and the students. He said that the kids were talking at a normal volume and that this customer had told them angrily to be quiet. I didn't witness this incident, but it's consistent with how I have seen her behave on several occasions.

I sat down and began to write this incident report, but I didn't know the customer's name. She was logged on to public computer #3, so I used the Reserve-a-Computer administrative mode to determine the person that had logged in. I discovered that the account she was using belonged to a male patron. I approached the customer and told her that we permit people to use only their own library cards for computer access. She once again became very belligerent and refused to leave her computer. She demanded that I check everyone else's card in the library if I was checking hers, and said that I was discriminating against her. I asked her to please leave the library for the rest of the day. She refused. I asked Anh Doan to get Billy Harris, but he was not on the premises. I told the customer that if she would not leave the library, I would have to call the police to escort her out. She left the building and went to the pay phone just outside the library, saying she was going to call Library Administration to make a complaint.

A group of teens that have had negative interactions with the customer in the past were delighted to see me escorting her from the building. They followed her outside and began yelling at her, laughing and taunting her. They gathered around her at the pay phone. I was worried about her safety, so I went inside and asked Anh to call Billy at Biblioteca and ask him to come over ASAP. I stationed two staff members (Melvyn Yabut and Andee Shirley) outside with cell phones in case it was necessary to call 911.

Candice Tran called the IHS security office in case they could arrive faster than Billy, who was dealing with an incident at Biblioteca. Three security officers, including Ray Valverde, came to disperse the students. The customer left.

Upon further research, we determined that the phone number on the male patron's library card matches the number given by the patron "Steven" that complained to Carol Frost about after-school noise at EK on October 11. That account belongs to a Lijau Yang, card number 21197301076864.

# CITY OF SAN JOSE PUBLIC LIBRARY SYSTEM
# BRANCH LIBRARY INCIDENT REPORT

| | | |
|---|---|---|
| DATE OF INCIDENT: 10/31/06 | LOCATION (BRANCH): | Educational Park Branch Library |
| TIME OF INCIDENT: various throughout the day | TYPE OF INCIDENT: | Patron Complaint |
| S.J. POLICE CASE #: NA | OFFICER (NAME/BADGE): | NA |

| | | | |
|---|---|---|---|
| CUSTOMER NAME: Chin-Li "Karen" Mou | PHONE #: 954-8085 | LIBRARY CARD #: 21197301343876 | |
| HOME ADDRESS: 4141 Boneso Circle, SJ 95134 | | DATE OF BIRTH: 12-2-1962 | |
| VICTIM NAME: | PHONE #: NA | LIBRARY CARD #: | NA |
| HOME ADDRESS: NA | | DATE OF BIRTH: | NA |
| WITNESS NAME: | PHONE #: | LIBRARY CARD #: | NA |
| HOME ADDRESS: NA | | DATE OF BIRTH: | NA |

STAFF MEMBER(S) INVOLVED: Daisy Porter, Andee Shirley

STAFF MEMBER COMPLETING REPORT: Daisy Porter

DESCRIBE THE INCIDENT:

Today Karen used what appeared to be her own library card to use the Internet, so I was able to obtain her personal information. Her card number is 21197301343876 and her legal name is Chin-Li Mou.

I spoke with Bijan today to ask him about any past incidents he might recall from when he was the Senior Librarian at EK. He remembers Karen well, as the lady that threw a privacy screen to the floor and cracked it, and who made the same constant complaints about student noise that she makes now.

Karen arrived at EK today in the late morning. Immediately upon entering, she asked me to discipline some students that were allegedly harassing her. I politely declined (the students were talking and laughing, but not at her and not loudly), and she called IHS Security (without my prior knowledge). They came over, but determined that the students were not at fault.

Later in the day, two uniformed SJPD officers came in and said that Karen had called them to report harassment by two girls in the library. Again, I didn't know about the call until the officers actually

---

arrived at the branch. The officers took the girls outside and questioned them, but determined they were not at fault.

I spoke with both the IHS security officers and the SJPD officers. Both units were frustrated with Karen's nuisance calls. They both asked me, "Why can't you just ban her?" I explained about public access to public libraries, etc. They expressed sympathy that we have to deal with her.

Karen eventually left on her own.

# EXHIBIT C

# CITY OF SAN JOSE PUBLIC LIBRARY SYSTEM
# BRANCH LIBRARY INCIDENT REPORT

| | | |
|---|---|---|
| **DATE OF INCIDENT:** 10/31/06 | **LOCATION (BRANCH):** | Educational Park Branch Library |
| **TIME OF INCIDENT:** various throughout the day | **TYPE OF INCIDENT:** | Patron Complaint |
| **S.J. POLICE CASE #:** NA | **OFFICER (NAME/BADGE):** | NA |

**CUSTOMER NAME:** Chin-Li "Karen" Mou     **PHONE #:** 954-8085     **LIBRARY CARD #:** 21197301343876

**HOME ADDRESS:** 4141 Boneso Circle, SJ     **DATE OF BIRTH:** 12-2-1962
95134

**VICTIM NAME:**     **PHONE #:** NA     **LIBRARY CARD #:** NA

**HOME ADDRESS:** NA     **DATE OF BIRTH:** NA

**WITNESS NAME:**     **PHONE #:**     **LIBRARY CARD #:** NA

**HOME ADDRESS:** NA     **DATE OF BIRTH:** NA

**STAFF MEMBER(S) INVOLVED:** Daisy Porter, Andee Shirley

**STAFF MEMBER COMPLETING REPORT:** Daisy Porter

DESCRIBE THE INCIDENT:

Today Karen used what appeared to be her own library card to use the Internet, so I was able to obtain her personal information. Her card number is 21197301343876 and her legal name is Chin-Li Mou.

I spoke with Bijan today to ask him about any past incidents he might recall from when he was the Senior Librarian at EK. He remembers Karen well, as the lady that threw a privacy screen to the floor and cracked it, and who made the same constant complaints about student noise that she makes now.

Karen arrived at EK today in the late morning. Immediately upon entering, she asked me to discipline some students that were allegedly harassing her. I politely declined (the students were talking and laughing, but not at her and not loudly), and she called IHS Security (without my prior knowledge). They came over, but determined that the students were not at fault.

Later in the day, two uniformed SJPD officers came in and said that Karen had called them to report harassment by two girls in the library. Again, I didn't know about the call until the officers actually

arrived at the branch. The officers took the girls outside and questioned them, but determined they were not at fault.

I spoke with both the IHS security officers and the SJPD officers. Both units were frustrated with Karen's nuisance calls. They both asked me, "Why can't you just ban her?" I explained about public access to public libraries, etc. They expressed sympathy that we have to deal with her.

Karen eventually left on her own.