# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CONNECTU LLC,

                                    Plaintiff,

        v.

MARK ZUCKERBERG, EDUARDO
SAVERIN, DUSTIN MOSKOVITZ, ANDREW
MCCOLLUM, CHRISTOPHER HUGHES
AND THEFACEBOOK, INC.,

                        Defendants.

Case No.: 04-11923 DPW

MARK ZUCKERBERG, and
THEFACEBOOK, INC.,

                        Counterclaimants,

        v.

CONNECTU LLC,

                        Counterdefendant,

        and

CAMERON WINKLEVOSS, TYLER
WINKLEVOSS, and DIVYA NARENDRA,

        Additional defendants on counterclaims.

**ANSWER OF ALL DEFENDANTS TO
FIRST AMENDED COMPLAINT, COUNTERCLAIMS OF
MARK ZUCKERBERG AND THEFACEBOOK, INC., AND JURY DEMAND**

Defendants Mark Zuckerberg ("Zuckerberg"), Eduardo Saverin, Dustin

Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc. (collectively "Defendants") by and through the undersigned counsel, answer the First Amended Complaint of Plaintiff ConnectU LLC ("Plaintiff") as follows:

## NATURE OF THE ACTION

1.      To the extent that the allegations in Paragraph 1 of the Complaint are legal conclusions and contain no factual allegations, Defendants are not required to, and do not, admit or deny such allegations. Defendants otherwise deny the allegations in Paragraph 1.

## JURISDICTION AND VENUE

2.      To the extent that the allegations in Paragraph 2 of the Complaint are legal conclusions and contain no factual allegations, Defendants are not required to, and do not, admit or deny such allegations. Defendants otherwise deny the allegations in Paragraph 2.

3.      Defendants do not contest personal jurisdiction, but otherwise deny the allegations in Paragraph 3.

## THE PARTIES

4.      Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 4.

5.      Defendants deny the allegations in Paragraph 5.

6.      Defendants admit that Defendant Eduardo Saverin has previously resided in the State of Florida, but deny that he is a citizen of that state.

2

7. Defendants admit that Defendant Dustin Moskovitz has previously resided in the State of Florida, but deny that he is a citizen of that state.

8. Defendants admit that Defendant Andrew McCollum has previously resided in the State of Idaho, but deny that he is a citizen of that state.

9. Defendants admit that Defendant Christopher Hughes has previously resided in the State of North Carolina, but deny that he is a citizen of that state.

10. Defendants admit that TheFacebook, Inc., is a Delaware corporation.

## FACTS

11. Defendants admit that Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra attended Harvard University. With respect to the other allegations in Paragraph 11, Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.

12. Defendants admit that Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra represented that the HarvardConnection website (the "HC website") was to serve the Harvard University Community. Defendants otherwise deny the allegations in Paragraph 12.

13. Defendants deny that any purported business model was ever communicated to Zuckerberg. With respect to the other allegations in Paragraph 13, Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.

14. Defendants admit that Zuckerberg did work related to the HC website, but deny that he was "engaged" to do so. Defendants also admit that Victor Gao stated that he worked on the source code for the HC website, and that Zuckerberg was given access

to HC website source code as it existed in late 2003. Defendants otherwise deny the allegations in Paragraph 14.

15. Defendants admit that Cameron Winklevoss, Tyler Winklevoss, and/or Divya Narendra expressed a desire to launch a website before their graduation, but otherwise deny the allegations in Paragraph 15.

16. Defendants admit that there may be a first mover advantage with respect to certain internet websites, but otherwise deny the allegations in Paragraph 16.

17. Defendants deny the allegations in Paragraph 17.

18. Defendants deny the allegations in Paragraph 18.

19. Defendants admit that emails were exchanged between Zuckerberg and Cameron Winklevoss and that these emails speak for themselves. Defendants also admit that the website thefacebook.com was launched on February 4, 2004. Defendants deny that Zuckerberg or any of the Defendants made any use of the HC website source code in connection with thefacebook.com. Defendants deny all of the remaining allegations in Paragraph 19.

20. Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21. Defendants deny the allegations in Paragraph 21.

22. Defendants deny the allegations in Paragraph 22.

23. Defendants deny the allegations in Paragraph 23.

## FIRST CLAIM FOR RELIEF
### Copyright Infringement
### 17 U.S.C. § 101 et seq.

24.     Defendants reassert each response to Paragraphs 1 through 23 inclusive, and incorporate them herein by reference.

25.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     Defendants deny the allegations in Paragraph 26.

27.     Defendants lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations that that the original certificate of registration for "the software" is attached to the First Amended Complaint; that this alleged registration is *prima facie* evidence of the validity of the alleged copyright and of the facts stated in the certificate; and that the Harvard Connection Code constitutes copyrightable subject matter. Defendants deny the remaining allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     Defendants deny the allegations in Paragraph 29.

## SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### Massachusetts G.L. ch. 266, § 30(4)

30.     Defendants reassert each response to Paragraphs 1 through 29 inclusive, and incorporate them herein by reference.

31.     Defendants deny the allegations in Paragraph 31.

32.     Defendants deny the allegations in Paragraph 32.

33.     Defendants deny the allegations in Paragraph 33.

34. Defendants deny the allegations in Paragraph 34.

35. Defendants deny the allegations in Paragraph 35.

36. Defendants deny the allegations in Paragraph 36.

37. Defendants deny the allegations in Paragraph 37.

## THIRD CLAIM FOR RELIEF
### Breach of Contract

38. Defendants reassert each response to Paragraphs 1 through 37 inclusive, and incorporate them herein by reference.

39. Defendants deny the allegations in Paragraph 39.

40. Defendants deny the allegations in Paragraph 40.

41. Defendants deny the allegations in Paragraph 41.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing

42. Defendants reassert each response to Paragraphs 1 through 41 inclusive, and incorporate them herein by reference.

43. Defendants deny the allegations in Paragraph 43.

44. Defendants deny the allegations in Paragraph 44.

45. Defendants deny the allegations in Paragraph 45.

## FIFTH CLAIM FOR RELIEF
### Breach of Massachusetts Unfair Trade Practices Statute
### Mass. G.L. ch. 93A

46. Defendants reassert each response to Paragraphs 1 through 45 inclusive, and incorporate them herein by reference.

47. Defendants deny the allegations in Paragraph 47.

48. Defendants deny the allegations in Paragraph 48.

49. Defendants admit that letters purporting to be pursuant to 93A, § 9, as attached to the First Amended Complaint, were sent by Plaintiff's counsel to Defendants Zuckerberg, Moskovitz, McCollum, and Hughes. Defendants deny the remaining allegations in Paragraph 49.

50. Defendants deny the allegations in Paragraph 50.

51. Defendants deny the allegations in Paragraph 51.

## SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty

52. Defendants reassert each response to Paragraphs 1 through 51 inclusive, and incorporate them herein by reference.

53. Defendants deny the allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54.

55. Defendants deny the allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56.

57. Defendants deny the allegations in Paragraph 57.

58. Defendants deny the allegations in Paragraph 58.

59. Defendants deny the allegations in Paragraph 59.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment

60. Defendants reassert each response to Paragraphs 1 through 59 inclusive, and incorporate them herein by reference.

61. Defendants deny the allegations in Paragraph 61.

62.   Defendants deny the allegations in Paragraph 62.

63.   Defendants deny the allegations in Paragraph 63.

64.   Defendants deny the allegations in Paragraph 64.

65.   Defendants deny the allegations in Paragraph 65.

## EIGHTH CLAIM FOR RELIEF
### Intentional Interference with Prospective Contractual and Advantageous Business Relations

66.   Defendants reassert each response to Paragraphs 1 through 65 inclusive, and incorporate them herein by reference.

67.   Defendants deny the allegations in Paragraph 67.

68.   Defendants deny the allegations in Paragraph 68.

69.   Defendants deny the allegations in Paragraph 69.

## NINTH CLAIM FOR RELIEF
### Fraud

70.   Defendants reassert each response to Paragraphs 1 through 69 inclusive, and incorporate them herein by reference.

71.   Defendants deny the allegations in Paragraph 71.

72.   Defendants deny the allegations in Paragraph 72.

73.   Defendants deny the allegations in Paragraph 73.

74.   Defendants deny the allegations in Paragraph 74.

75.   Defendants deny the allegations in Paragraph 75.

76.   Defendants deny the allegations in Paragraph 76.

In addition to the foregoing, the Defendants assert the following additional

defenses:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because it fails to state a claim upon which relief can be granted, including but not limited to the fact that it asserts claims on behalf of a corporate entity which purportedly arose prior to the formation of that entity.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because the damages sustained by Plaintiff, if any, were actually and proximately caused by Plaintiff's own conduct or misconduct.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because the damages sustained by Plaintiff, if any, were actually and proximately caused by the conduct or misconduct of persons other than Defendants.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because Plaintiff failed to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred because any alleged infringement constitutes fair use.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because any alleged infringement is de minimus.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of license.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of abandonment.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part by the doctrine of innocent intent.

## FOURTEENTH AFFIRMATIVE DEFENSE

One or more of Plaintiff's common law claims are pre-empted by federal law.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because Plaintiff has misused its alleged copyright.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because Plaintiff is not the owner of the alleged copyright.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because the material claim by Plaintiff's alleged copyright is not copyrightable subject matter.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff never relied to its detriment on any alleged acts or omissions of any Defendant.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent that the Plaintiff relied on any alleged acts or omissions of any Defendant, such reliance was not reasonable.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims for equitable relief are barred because Plaintiff has an adequate remedy at law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claim for violation of G.L. c. 93A is barred because the conduct complained of did not occur primarily or substantially within the Commonwealth.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part because plaintiff lacks standing to assert the claims therein.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint is barred in whole or in part as to one or more of the individual defendants because the acts complained of were taken in their capacity as employees, agents, or servants of TheFacebook, Inc.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Defendants hereby give notice that they intend to rely upon such other and further defenses as may become apparent during the proceedings in this case and reserve their right to do so.

## PRAYER

Wherefore Defendants pray as follows:

- That ConnectU LLC take nothing by reason of its First Amended Complaint and that judgment be rendered in favor of Defendants;

- That Defendants be awarded their costs of suit incurred in defense of this action, including attorneys' fees; and

- For such other and further relief that this Court may grant in Defendants' favor.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a jury trial on all claims so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## COUNTERCLAIMS OF MARK ZUCKERBERG AND THEFACEBOOK, INC., AND JURY DEMAND

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Mark Zuckerberg ("Zuckerberg") and TheFacebook, Inc., ("TheFacebook," and together with Zuckerberg, the "Counterclaimants") hereby assert counterclaims against ConnectU LLC, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (collectively "Counterdefendants"), and allege as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. § 1367(a) to the extent that this Court has jurisdiction over Plaintiff's claims, under 28 U.S.C. § 1331, and under 15 U.S.C. §§ 1051 *et seq.* Venue is proper pursuant to 28 U.S.C. §§ 1391.

## The Parties

2.    Zuckerberg is the creator of the internet website thefacebook.com, and is the founder of TheFacebook, Inc.

3.    TheFacebook, Inc., is a Delaware Corporation with its principal place of business in Palo Alto, California. TheFacebook, Inc., owns and operates the website thefacebook.com, which receives revenues from entities that pay to advertise on the website.

4.    Additional defendant on counterclaim Cameron Winklevoss is, upon information and belief, a citizen of the Commonwealth of Massachusetts.

5.    Additional defendant on counterclaim Tyler Winklevoss is, upon information and belief, a citizen of the Commonwealth of Massachusetts.

6.    Additional defendant on counterclaim Divya Narendra ("Narendra") is, upon information and belief, a citizen of the State of New York.

7.    Counterdefendant ConnectU LLC is, upon information and belief, a limited liability corporation of the State of Delaware, owner of the website www.connectu.com, and is the plaintiff in this action.

## Narendra and the Winklevosses Request That Zuckerberg Work on the HarvardConnection Website

8.    Zuckerberg, creator of the facebook.com website and founder of TheFacebook, Inc., possesses extensive computer programming expertise, which he acquired both before his arrival at and while he attended Harvard University during the 2003-2004 school year. By the fall of 2003, Zuckerberg had already undertaken work on two

website projects at Harvard University — coursematch.com and facemash.com. Through media coverage and word of mouth publicity regarding facemash.com, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, (collectively, the "Individual Counterdefendants") learned of Zuckerberg and his computer programming expertise and abilities.

9.    On November 3, 2003, Zuckerberg received an unsolicited email from Narendra, asking Zuckerberg if he would like to be a part of a website that Narendra and his team were assertedly developing. Zuckerberg later learned that the website referenced by Narendra was called HarvardConnection ("HC").

10.    Although the Individual Counterdefendants requested that Zuckerberg participate in the development of the HC website, they made no promises to Zuckerberg that he would be compensated in any way or that he would receive an interest in the HC website in exchange for any work he did. Zuckerberg never reached an agreement regarding compensation with the Individual Counterdefendants or anyone else associated with the HC website, and Zuckerberg was never compensated in any way for his work on the HC website.

11.    The Individual Counterdefendants never communicated a "business plan" for the HC website to Zuckerberg, nor did anyone else associated with the HC website ever reveal any such "business plan" to Zuckerberg. To the contrary, the Individual Counterdefendants communicated to Zuckerberg that the HC website was not a commercial venture and that their desire was only to "make waves" on the Harvard

campus. There was no discussion concerning who owned any potential assets that might be created in connection with the HC website.

12.   The Individual Counterdefendants represented that the HC website was intended to be a tool for dating and nightclubbing and for professional networking, and that the expectation was that access to the HC website would be limited to only a few "elite" schools. Contrary to Plaintiff's allegations in its Complaint, there was no discussion of confidentiality, and no one affiliated with the HC website requested assurances from Zuckerberg that he keep confidential any information he learned about the HC website or its source code.

13.   Narendra originally represented to Zuckerberg that no more than six to ten hours would be required from Zuckerberg to complete the programming requested of Zuckerberg for the HC website. Zuckerberg, however, never agreed that he would work any particular number of hours on the HC website or that he would be available to work on the HC website for any specific duration. It subsequently became clear to Zuckerberg that the HC website was far from being finished, and was not nearly as complete as Narendra had represented. It also became clear to Zuckerberg that the website was not particularly interesting and was not likely to be popular among potential users.

14.   Although Zuckerberg was not being compensated for his work on the HC website, Cameron Winklevoss repeatedly requested that Zuckerberg perform additional work on the project and that this work be completed quickly. In or about mid-January 2004, Zuckerberg informed Cameron Winklevoss that he was not willing, in the short term, to continue work on HC website. Zuckerberg indicated, however, that he might be

15

available to perform additional work on the project at a later date. Zuckerberg ceased his work on the HC website at this time.

## Launch of thefacebook.com

15.     After this mid-January meeting with Cameron Winklevoss, Zuckerberg began work on a new website, thefacebook.com, intended to serve university communities as a comprehensive informational and social directory tool for students, enabling students to share information about themselves with their classmates. Zuckerberg created this website in part because Harvard University did not provide its students with such a tool. Thefacebook.com website was very different in its features, function, and look and feel from the incomplete HC website, which had been designed as a website for dating and professional networking only. In developing thefacebook.com, Zuckerberg did not use or copy any information, work product, or source code that he received from the Individual Counterdefendants or anyone else associated with the HC website. Nor did Zuckerberg use or copy any of the work that he performed in connection with the HC website.

16.     Zuckerberg finished thefacebook.com website in short order and the website went live on February 4, 2004. On February 10, 2004, Cameron Winklevoss sent an email to Zuckerberg demanding that he cease and desist from all "further expansions" of the thefacebook.com. Zuckerberg responded to this email and explained that that the allegations raised in Cameron Winklevoss's email, including that Zuckerberg had somehow misappropriated material associated with the HC website, were baseless.

## Counterdefendants' Wrongful Conduct

17.    Months after the launch of thefacebook.com, the Individual Counterdefendants launched the ConnectU website. The ConnectU website was wholly different in its features, function, and look and feel from the HC website.

18.    In preparing to launch the ConnectU website, the Individual Counterdefendants and ConnectU began a campaign of false and defamatory factual representations about Zuckerberg and thefacebook.com. The Counterdefendants made these false representations to a wide audience, including Zuckerberg's colleagues and fellow students, potential users of thefacebook.com, and media outlets, including California and Massachusetts newspapers. The Counterdefendants also posted false representations about Zuckerberg and thefacebook.com on the ConnectU website, and provided links on the ConnectU website to articles containing false representations about Zuckerberg and thefacebook.com. The publications in which Counterdefendants make such false statements include the May 28, 2004, edition of The Harvard Crimson, and the August 5, 2004, edition of the Stanford Daily. These false representations include statements that:

- ■    Zuckerberg was paid for his work on the HC website;

- ■    Zuckerberg stole his idea for thefacebook.com while writing code for the HC website;

- ■    thefacebook.com's presentation "smacked of cloning;"

- ■    Zuckerberg left the counterdefendants with code for the HC website that was "essentially useless;"

- ■    thefacebook.com, in its current form, is "as much of [the Individual Counterdefendants'] ideas and creativity as [Zuckerberg] had access to;"

- Zuckerberg "hijacked [the Individual Counterdefendants'] ideas, developed his own site, and launched it without telling [the Individual Counterdefendants'];"

- Zuckerberg "lead [sic] [the Individual Counterdefendants] on by pretending to complete work, and making up excuses to stall [the Individual Counterdefendants'] progress, while he developed his own competing site;"

- Zuckerberg's behavior was unscrupulous;

- Zuckerberg falsely claimed to have completed certain work on the HC website;

- Zuckerberg directly violated the rules and conduct of Harvard University, namely the honor code; and.

- "[Zuckerberg] stalled [the Individual Counterdefendants] for months while he worked on his own idea, which he launched in February as an original idea."

## FIRST COUNTERCLAIM
## INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

### (By All Counterclaimants Against All Counterdefendants)

19. Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 18, inclusive, and incorporate them herein by reference.

20. In connection with the business of TheFacebook, Inc., and thefacebook.com, Counterclaimants have entered business relationships and have contemplated contracts of economic benefit with third parties, including relationships with advertisers and prospective advertisers on thefacebook.com.

21. Counterdefendants knew of these business relationships and contemplated contracts of economic benefit.

22.     By their conduct as alleged above, Counterdefendants have intentionally and improperly interfered with and continue to interfere with Counterclaimants' business relationships and contemplated contracts of economic benefit.

23.     Counterclaimants have suffered damages, including loss of advantage, directly as a result of the conduct of Counterdefendants, in an amount to be proved at trial.

24.     Counterdefendants' acts of interference with Counterclaimants' prospective business relationships have proximately caused Counterclaimants to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to cause Counterclaimants to suffer irreparable harm and injury. Counterclaimants are therefore entitled to a permanent injunction against Counterdefendants' acts of interference with Counterclaimants' business relationships and prospective business relationships.

### SECOND COUNTERCLAIM
### FALSE ADVERTISING IN VIOLATION OF
### THE LANHAM ACT, 15 U.S.C. SECTION 1125(A)

**(By TheFacebook, Inc., Against ConnectU LLC)**

25.     Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 24, inclusive, and incorporate them herein by reference.

26.     By its conduct as alleged above, ConnectU LLC has made false and misleading representations of fact concerning the nature and qualities of TheFacebook, Inc.'s, origins, founder, services and commercial activities.

27. ConnectU LLC made these false and misleading representations of fact in interstate commerce in commercial advertising and promotion, including on the ConnectU website.

28. TheFacebook, Inc., has been damaged by ConnectU LLC's acts in an amount to be established at trial.

29. ConnectU LLC's acts of false advertising have proximately caused TheFacebook, Inc., to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to cause TheFacebook, Inc., to suffer irreparable harm an injury. TheFacebook, Inc., is therefore entitled to a preliminary and permanent injunction against ConnectU LLC's acts of false advertising.

## THIRD COUNTERCLAIM
### FALSE ADVERTISING IN VIOLATION OF
### CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17500 *ET SEQ.*

### (By TheFacebook, Inc., Against ConnectU LLC)

30. Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 29, inclusive, and incorporate them herein by reference.

31. By its conduct as alleged above, including making false statements to promote the ConnectU website, ConnectU has engaged in advertising to the public, which advertisements are disseminated to and received by the public in California.

32. ConnectU has engaged in this advertising with the intent to directly or indirectly induce individuals to use the ConnectU website and the services provided thereon.

33. This advertising was untrue and misleading and likely to deceive the public.

34. In making and disseminating the statements alleged herein, ConnectU LLC knew, or by the exercise of reasonable care should have known, the statements were untrue and misleading and so acted in violation of Sections 17500 *et seq.* of the California Business and Professions Code.

35. ConnectU LLC's acts of false advertising have proximately caused TheFacebook, Inc., to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to cause TheFacebook, Inc., to suffer irreparable harm and injury. TheFacebook, Inc., is therefore entitled to a permanent injunction against ConnectU LLC's acts of false advertising.

## FOURTH COUNTERCLAIM
## BUSINESS DEFAMATION

### (By TheFacebook, Inc., Against All Counterdefendants)

36. Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 35, inclusive, and incorporate them herein by reference.

37. By their conduct as alleged above, Counterdefendants have communicated false and defamatory statements to third parties of and concerning TheFacebook, Inc., and its business.

38. These false and defamatory statements have prejudiced TheFacebook, Inc., in the conduct of its business and have deterred others from dealing with TheFacebook, Inc., and its business.

39. These false and defamatory statements have caused TheFacebook, Inc., to suffer damages in an amount to be proven at trial.

40. Counterdefendants' acts of defamation have proximately caused TheFacebook, Inc., and its business to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to cause TheFacebook, Inc., and its business to suffer irreparable harm an injury. TheFacebook, Inc., is therefore entitled to a permanent injunction against Counterdefendants' acts of business defamation.

### FIFTH COUNTERCLAIM
### DEFAMATION

### (By Zuckerberg Against All Counterdefendants)

41. Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 40, inclusive, and incorporate them herein by reference.

42. By their conduct as alleged above, Counterdefendants have, without a privilege to do so, published and communicated to third parties false and defamatory material of and concerning Zuckerberg that ridicules Zuckerberg, treats Zuckerberg with contempt, and discredits Zuckerberg in the minds of a considerable and respectable segment in the community.

43. As a result of Counterdefendants' defamatory statements, Zuckerberg has suffered damages in an amount to be proven at trial.

44. Counterdefendants' acts of defamation have proximately caused Zuckerberg to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to

cause Zuckerberg to suffer irreparable harm an injury. Zuckerberg is therefore entitled to a permanent injunction against Counterdefendants' acts of defamation.

## SIXTH COUNTERCLAIM
### UNFAIR TRADE PRACTICES IN VIOLATION OF
### MASSACHUSETTS GENERAL LAWS CHAPTER 93A, § 11

**(By TheFacebook, Inc., Against ConnectU LLC)**

45.     Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 44, inclusive, and incorporate them herein by reference.

46.     At all relevant times hereto, TheFacebook, Inc. and ConnectU LLC have been engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§ 2 and 11.

47.     By the conduct alleged above, ConnectU LLC committed unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 11.

48.     ConnectU LLC's unfair or deceptive acts or practices, as described above, were willful or knowing within the meaning of M.G.L. c. 93A, §§ 2 and 11.

49.     As a result of ConnectU LLC's conduct, TheFacebook, Inc. has sustained damages.

## SEVENTH COUNTERCLAIM
### UNFAIR COMPETITION IN VIOLATION OF
### CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEO.*

**(By TheFacebook, Inc., Against ConnectU LLC)**

50.     Counterclaimants reassert each and every allegation set forth in Paragraphs 1 through 49, inclusive, and incorporate them herein by reference.

23

51. ConnectU LLC's business practices as alleged above, which include false advertising, defamation, and interference with Counterclaimants' business relationships and prospective business relationships, constitute anticompetitive conduct and unfair competition in violation of Section 17200 of the California Business and Professions Code.

52. ConnectU LLC's acts of unfair competition have proximately caused TheFacebook, Inc., to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to cause TheFacebook, Inc., to suffer irreparable harm an injury. TheFacebook, Inc., is therefore entitled to a permanent injunction against ConnectU LLC's acts of unfair competition.

## PRAYER

Wherefore Counterclaimants pray as follows:

A. That a preliminary and permanent injunction be entered against Counterdefendants enjoining them and their agents, servants, and employees and all persons acting under, in concert with, or for them from making, disseminating, or causing to be made or disseminated before the public, in any website, newspaper, other publication, or advertising device, by public outcry or proclamation, or in any other manner, any statement that is untrue, misleading, or defamatory, and that is known, or by the exercise of reasonable care should be known, to be untrue, misleading, or defamatory;

B. That judgment be entered in Counterclaimants' favor against Counterdefendants, jointly and severally;

C. That the Court award to Counterclaimants all their actual damages caused by Counterdefendants' wrongful conduct as complained of herein, as to be proven at trial, and/or statutory damages, together with multiple damages where appropriate;

D.   That the Court award to Counterclaimants their costs of suit incurred herein, including their attorneys' fees, as well as interest ; and

E.   That the Court award to Counterclaimants such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a jury trial on all claims so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Defendants Mark Zuckerberg, Eduardo Saverin, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc.,

By their attorneys,

HOLLAND & KNIGHT LLP

Gordon P. Katz (BBO No. 261080)
Daniel K. Hampton (BBO No. 634195)
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

and

Robert B. Hawk (of counsel, seeking *pro hac vice* admission)
Charles W. Burk (of counsel, seeking *pro hac vice* admission)
HELLER EHRMAN WHITE & McAULIFFE LLP
2775 Sand Hill Road
Menlo Park, CA 94025-7019
(650) 324-7165

DATED: November 18, 2004

# 2406738_v2

25