LEXSEE

**TRAVELJUNGLE, APPELLANT v. AMERICAN AIRLINES, INC., APPELLEE**

**NO. 2-06-178-CV**

**COURT OF APPEALS OF TEXAS, SECOND DISTRICT, FORT WORTH**

*212 S.W.3d 841; 2006 Tex. App. LEXIS 10634*

**December 14, 2006, Delivered**

**PRIOR HISTORY:** [**1] FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY.

**COUNSEL:** For APPELLATE: Thomas R. Bromberg, SOLOMON PEARL BLUM HEYMANN & STICH, Denver, CO; Edward R. Nelson, FRIEDMAN SUDER & COOKE, Fort Worth, TX.

For APPELLEE: Dee J. Kelly, Jr., KELLY HART & HALLMAN, L.L.P., Fort Worth, TX; R. Paul Yetter, George Fibbe, YETTER & WARDEN, L.L.P., Houston, TX.

**JUDGES:** PANEL M: LIVINGSTON, GARDNER, and WALKER, JJ.

**OPINION BY:** TERRIE LIVINGSTON

**OPINION**

[*843] **Introduction**

This is an accelerated interlocutory appeal from the trial court's order denying appellant TravelJungle's special appearance. *See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7)* (Vernon Supp. 2006). In one issue, TravelJungle challenges the trial court's determination that it had sufficient minimum contacts with the State of Texas that would enable Texas to assert personal jurisdiction over it. Because TravelJungle did not meet its burden of proof, under the standard of review articulated by the Texas Supreme Court, to disprove all possible bases of jurisdiction, we affirm the trial court's order.

[*844] **Background Facts**

TravelJungle operates a website that gathers hotel, car rental, and airline flight schedules and fare information in response to internet requests from consumers. With regard to airline information, TravelJungle uses special software to gather the flight and fare information from airlines' websites and from other travel websites, such as Expedia.com and Travelocity.com. Once it obtains [**2] that information, it "assimilates and sorts the data it obtains from airline and reservation sites and presents it to the requestor." Users of TravelJungle's website search it for flight information by first choosing a departure and arrival city. The website then provides the user with several fares and schedules to choose from, which the user can then select to make reservations through TravelJungle's website.

TravelJungle is registered in the United Kingdom and has its principal places of business in Germany and Bulgaria. Its servers and employees are located in Germany and Bulgaria, and it has no employees in the U.S. If a user of the website decides to book one of the flights presented by TravelJungle in response to the user's request, a TravelJungle representative in Bulgaria books the flight with the organization that it got the information from via that organization's website.

According to TravelJungle, between February 2003 and June 2004, TravelJungle included appellee American Airlines, Inc.'s website, AA.com, in its search for flight schedule and fare information if American provided services between the departure and arrival cities listed in a TravelJungle user's search. [**3] TravelJungle also listed AA.com on its website as one of the sites it searched to provide this information and displayed a copy of the American logo on its website.

In 2004, American sued TravelJungle and several other similar website operators for breach of AA.com's Use Agreement, which prohibits users from using the information on the website for "commercial" purposes; tortious interference with American's contracts with authorized internet distributors of American's fare and scheduling data; tortious interference with prospective business relations, i.e., consumers who could have booked flights directly on AA.com; [1] trespass of AA.com's servers; violation of the Texas computer

crimes statute;[2] civil conspiracy; common law trademark infringement; violation of the Texas anti-dilution act;[3] and misappropriation. After learning that American had sued it, TravelJungle discontinued accessing AA.com and took American's logo off its website. It also entered a special appearance challenging the trial court's personal jurisdiction over it. The trial court denied the special appearance after an evidentiary hearing but declined to file findings of fact and conclusions of law.

1   In connection with this allegation, American alleged that TravelJungle's software did not always pick up all available fares, including the lowest fares, and that if TravelJungle users had known that, they might have purchased their fares at AA.com at a lower fare.

**[**4]**

2   *TEX. PENAL CODE ANN. § 33.02* (Vernon 2003). This statute provides that "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." *Id. § 33.02(a).*

3   *TEX. BUS. & COM. CODE ANN. § 16.29* (Vernon 2002). This statute provides that

[a] person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.

*Id.*

**[*845] Issue on Appeal**

In a single issue on appeal, TravelJungle contends that the trial court abused its discretion by denying the special appearance because it negated all possible bases of jurisdiction as a matter of law. American contends that TravelJungle did not meet its burden of proof under the standard of review articulated by the Texas **[**5]** Supreme Court.

**Standard of Review**

Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belg., N.V.*

*v. Marchand, 83 S.W.3d 789, 793, 45 Tex. Sup. Ct. J. 930 (Tex. 2002); SITQ, E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 644 (Tex. App.--Fort Worth 2003, pet. denied).* The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *BMC Software, 83 S.W.3d at 793; Reata, 111 S.W.3d at 644.* A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *BMC Software, 83 S.W.3d at 793; Reata, 111 S.W.3d at 644.* We review all of the evidence in making this determination. *Reata, 111 S.W.3d at 645; Michel v. Rocket Eng'g Corp., 45 S.W.3d 658, 667 (Tex. App.--Fort Worth 2001, no pet.).*

When, as here, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all facts necessary to support the judgment. *BMC Software, 83 S.W.3d at 794;* **[**6]** *Reata, 111 S.W.3d at 645.* Because here the appellate record includes both the reporter's and clerk's records, however, these implied findings are not conclusive. *BMC Software, 83 S.W.3d at 795; Reata, 111 S.W.3d at 645.* We may review the trial court's resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury's or trial court's findings of fact at trial. *Michel, 45 S.W.3d at 668.*

**Personal Jurisdiction**

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of due process under the *Fourteenth Amendment* and the Texas long-arm statute are satisfied. *U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045* (Vernon 1997 & Supp. 2006); *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S. Ct. 1868, 1871-72, 80 L. Ed. 2d 404 (1984); CSR Ltd. v. Link, 925 S.W.2d 591, 594, 39 Tex. Sup. Ct. J. 767 (Tex. 1996)* (orig. proceeding); *Michel, 45 S.W.3d at 668.*

**Long-arm Statute**

The Texas **[**7]** long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045; BMC Software, 83 S.W.3d at 795; Reata, 111 S.W.3d at 645.* That statute permits Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas. *TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; BMC Software, 83 S.W.3d at 795; Reata, 111 S.W.3d at 645.* The statute lists some activities that constitute "doing business," including the commission of a tort, in whole or in part. *TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; Reata, 111 S.W.3d at*

645. The list of activities set forth in *section 17.042* is not exclusive, however. *BMC Software, 83 S.W.3d at 795.*

*Section 17.042*'s broad language extends Texas courts' personal jurisdiction only "as far as the federal constitutional requirements of due process will permit." *Id.* (quoting *U-Anchor Adver., Inc., N.H. v. Burt, 553 S.W.2d 760, 762, 20 Tex. Sup. Ct. J. 435 (Tex.1977))*; *Reata, 111 S.W.3d at 645.* **[**8]** Therefore, in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction, we rely on precedent from **[*846]** the United States Supreme Court and other federal courts, as well as our own state's decisions. *BMC Software, 83 S.W.3d at 795.*

**Due Process**

Due process is satisfied when (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)*; *BMC Software, 83 S.W.3d at 795*; *Reata, 111 S.W.3d at 645.* Here, appellant challenges only the first component of due process: whether it established minimum contacts with the State of Texas.

A nonresident defendant who has "purposefully availed" itself of the privileges and benefits of conducting business in a foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction on a court in that forum. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)*; **[**9]** *BMC Software, 83 S.W.3d at 795.* Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established minimum contacts with the forum state. *BMC Software, 83 S.W.3d at 795*; *Reata, 111 S.W.3d at 646.* Minimum contacts analysis focuses solely on the actions and reasonable expectations of the defendant. *Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 790, 48 Tex. Sup. Ct. J. 789 (Tex. 2005).*

Because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system, the minimum contacts analysis is particularly important when the defendant is from a different country. *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987)*; *BMC Software, 83 S.W.3d at 795.* A defendant should not be subject to a foreign court's jurisdiction based on random, fortuitous, or attenuated contacts. *Burger King, 471 U.S. at 475, 105 S. Ct. at 2183*; *BMC Software, 83 S.W.3d at 795.* Rather, individuals must have fair warning **[**10]** that a particular activity may subject them to the jurisdic-

tion of a foreign sovereign. *Burger King, 471 U.S. at 472, 105 S. Ct. at 2181*; *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227, 34 Tex. Sup. Ct. J. 376 (Tex. 1991)*; *Reata, 111 S.W.3d at 646.*

Three factors are important in determining whether a defendant has purposefully availed itself of the forum: first, only the *defendant's* contacts with the forum count; second, the acts relied on must be purposeful rather than merely fortuitous; and, third, the defendant must seek some benefit, advantage, or profit by availing itself of the forum. *Michiana, 168 S.W.3d at 785*; *Karstetter v. Voss, 184 S.W.3d 396, 403 (Tex. App.--Dallas 2006, no pet.).*

**General v. Specific Jurisdiction**

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, 466 U.S. at 413-14, 104 S. Ct. at 1872*; *BMC Software, 83 S.W.3d at 795*; *Reata, 111 S.W.3d at 646.* A trial court **[**11]** has general jurisdiction over a nonresident defendant when that defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software, 83 S.W.3d at 796*; *Reata, 111 S.W.3d at 646.* In contrast, specific jurisdiction is present if the nonresident defendant's alleged liability **[*847]** arises from or is related to an activity conducted within the forum. *BMC Software, 83 S.W.3d at 796*; *Reata, 111 S.W.3d at 646.* When a plaintiff asserts that a trial court has specific jurisdiction over a nonresident defendant, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal, 815 S.W.2d at 227-28*; *Reata, 111 S.W.3d at 646.*

For a Texas trial court to have specific jurisdiction over a nonresident defendant, it is not necessary that the nonresident defendant's conduct actually occur in Texas, as long as the defendant's acts were purposefully directed towards Texas. **[**12]** *Calder v. Jones, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984)*; *CSR Ltd., 925 S.W.2d at 595*; *Reata, 111 S.W.3d at 646.* "[A] defendant should reasonably anticipate being haled into court where the effects of its conduct have been intentionally caused through the purposeful direction of activity toward the forum state, even if the defendant never physically enters the state." *Reata, 111 S.W.3d at 646* (quoting *Cole v. The Tobacco Inst., 47 F. Supp. 2d 812, 815 (E.D. Tex. 1999)).*

**Applicable Facts**

**Allegations in American's Pleadings**

In its second amended petition, in which TravelJungle was first added as a defendant in the suit, [4] American asserted that the trial court had personal jurisdiction over TravelJungle because it is a foreign corporation that had committed torts in Texas, breached a contract (AA.com's Use Agreement) entered into and governed by the laws of Texas, violated Texas statutory law, and "systematically did, and still do[es] conduct business in" Texas.

> 4 The same allegations are in American's fourth amended petition, which was the live petition at the time of the evidentiary hearing and trial court's ruling on the special appearance. The record also contains a fifth amended petition; however, TravelJungle concedes that because the fourth amended petition was the petition on file when the trial court ruled on the special appearance, it "is presumed to be the version at issue in this appeal."

[**13] American contends that TravelJungle "uses screen-scraping software on its Traveljungle.com, Traveljungle.us, and Hotfares.com websites, as well as other affiliated sites" and that "Traveljungle's access and use of AA.com is without American's authorization and in violation of the Use Agreement" for AA.com. According to American, TravelJungle's screen-scraping software "sends out electronic robots, spiders, or other automated scraping devices across the Internet to enter and search targeted airline industry websites, including but not limited to AA.com, and extracts proprietary fares from the sites." American's Use Agreement--which is accessed via a link at the bottom of the home page entitled "Legal," but which users are not specifically required to indicate agreement with before using AA.com--prohibits the use of any "robot, spider, or other automatic device, without first obtaining American['s] . . . prior written consent." American claims in its petition that "[t]his unauthorized use of and intermeddling with AA.com [by sending electronic robots and spiders to AA.com's servers] uses valuable computer capacity" and "deprive[s] American of its ability to possess and use that [**14] capacity to serve legitimate customers." Thus, American is primarily asserting that Texas has specific jurisdiction over TravelJungle, and it has at least pled a sufficient jurisdictional basis that requires TravelJungle to negate all possible bases of jurisdiction. *See BMC Software, 83 S.W.3d at 793.*

**Evidence Offered by TravelJungle in Support of Special Appearance**

In support of its special appearance, TravelJungle attached an affidavit from [*848] Kalina Krasteva, who is "responsible for management of the operations of Travel-Jungle, Ltd." In her affidavit, Krasteva averred that "TravelJungle is the trade name of an internet-based aggregator of travel data providing information on airline flights, automobile rentals and hotel accommodations" and that "TravelJungle was organized and registered as a limited liability corporation in the United Kingdom in 2003." According to Krasteva, "TravelJungle acquires its data through its automated computer process that accesses web sites of airlines and reservation sites such as Expedia and Travelocity in response to inquiries from TravelJungle users." Krasteva further averred that "[s]ince its inception in 2001, TravelJungle [**15] established one reservation for a Texas resident that was booked directly through the American . . . site and eight reservations for Texas residents that were booked through other sites for air transportation with AA."

Krasteva claimed that before TravelJungle received American's second amended petition in 2004, it "was unaware that AA disapproved of TravelJungle's use of AA's website or logo." She further averred that "[s]ince TravelJungle ceased accessing the AA.com web site, any information relating to AA flights that appears on TravelJungle search reports is obtained through third-party reservation systems such as Expedia or other data readily available in the public domain." And, finally, she averred that American "has demanded that TravelJungle not access any information regarding AA regardless of where such information may reside in the public domain and has stated it requires that TravelJungle stop distributing any information regarding American fares."

American filed a response, to which it attached an affidavit from Daniel Henry, the then-current "Managing Director, Customer Technology/Technical Services" for American. [5] Henry averred that AA.com's servers are located [**16] in Plano, Texas. He also averred that "[s]creen-scraping of AA.com uses valuable computer capacity. To the extent that scrapers use AA.com's capacity, they deprive American of its ability to possess and use that capacity to serve other customers." Henry also averred that Exhibit 7 attached to the response is an exhibit of a computer report showing that AA.com received 2,972 fare search requests from IP address 207.36.213.160 on June 14, 2004. Preceding that report is a copy of a deposition of Bryce Short, who is "Director of Customer Retention and Quality" for Affinity Internet, Inc. He is the custodian of records able to identify the customer or customers of Affinity Internet that on June 14, 2004 were the end users of or otherwise connected with the IP address "207.36.213.160." Short identified that end user as being set forth on attachment 1 to the deposition. That attachment shows that the domain "207.36.213.160" was registered to TravelJungle Limited, attention Kallina Krasteva. [6]

5   Henry averred that in his position, he had "responsibility for the Architecture, Application Development, Operations, and Infrastructure for all customer-facing applications, which includes AA.com."

[**17]

6   TravelJungle contends that the evidence shows the address was registered to Cybergate, Inc. rather than TravelJungle. Although one of the questions to Short indicates that the address appears to be registered to Cybergate, Inc., in response to a subsequent question asking the names of the persons or entities that were the end users of the address, Short answered that "[t]he customer records of Affinity Internet, Inc., set forth as attachment one, detail the record owner of the account using said IP address as of June 14, 2004." That attachment does not list Cybergate as the registrant of the address; rather, it shows TravelJungle Limited as the name of the customer.

[*849]  The trial court also heard evidence at a hearing on April 13, 2006. Dr. Hans-Josef Vogel, a minority shareholder of TravelJungle, testified that TravelJungle employs a "metasearch travel engine." He testified that TravelJungle does not "scrape" websites; he defined scraping as taking a picture of another website, scraping pixels off the screen, and reconstituting them on another PC's screen. When asked what method TravelJungle [**18] employed for accessing flight schedule and fare data, Dr. Vogel answered that "at the request of a consumer, [TravelJungle] seek[s] information from another site but [does] not scrape the other site." He also continued, ambiguously, "You could also call that robots - - robots or spiders. Essentially, it's the same thing." It is unclear here whether he meant that robots and spiders are the same as scraping or whether robots and spiders are the same thing as what TravelJungle's software does.

Vogel later admitted that someone had to purposefully put AA.com into a search script when TravelJungle first started accessing AA.com and that he verified that TravelJungle had stopped accessing AA.com by making sure that it would not be put in the search script anymore. He also admitted that when TravelJungle accesses AA.com, "there might be a contact with the servers of American Airlines through that automated software program." He also distinguished TravelJungle from Google.com on the ground that TravelJungle never sent software to a server to simply collect fare data at random times; a logical inference from Vogel's testimony is that TravelJungle did send software to AA.com's servers, [**19] but in connection with a specific inquiry, not a random one.

Vogel testified that he did not know where AA.com's servers were located and that their location is not disclosed on AA.com. He said that TravelJungle has no bank accounts or offices in Texas and did no business in Texas other than what he had previously described regarding the websites. Vogel also testified that TravelJungle does not charge a user for obtaining information on its website unless the user actually books a flight, then it charges the user a booking fee. In Krasteva's affidavit, she averred that TravelJungle had not retained any part of an American fare that it had processed and that "all fare revenues processed by TravelJungle were paid in full either to reservation sites or to [American] itself."

Vogel testified without challenge that TravelJungle had never intentionally misrepresented information that it received from AA.com but that he could not rule out database error; according to Vogel, TravelJungle displayed only a copy of what its software actually found. He also testified without challenge that American had never blocked TravelJungle's access to AA.com, nor had it ever tried to "mask" AA.com from [**20] TravelJungle's software.

## Analysis

According to American, its "claims in this suit are based upon TravelJungle's repeated accessing of AA.com and selling of American fare data." American contends that TravelJungle failed to negate facts showing that it purposefully directed its activities towards Texas, i.e., facts establishing specific jurisdiction. Allegations that a tort was committed in Texas satisfy the long-arm statute, but not due process concerns. *Michiana, 168 S.W.3d at 788.* Thus, our analysis will focus on whether TravelJungle met its burden to negate American's allegations that its activities satisfy the minimum contacts requirement of due process.

TravelJungle contends that it was just an occasional viewer of AA.com and that it merely "looked at" AA.com, likening its  [*850]  actions to that of a person visiting several websites, reading fare and scheduling data from the websites, and compiling his or her own list. However, TravelJungle's own witness admitted that TravelJungle's contacts went beyond merely looking at AA.com when he testified that someone at TravelJungle had to intentionally include AA.com in its software search script and that its software [**21]  is different from Google.com because TravelJungle does not send its software out to search AA.com at random. It is undisputed that TravelJungle specifically entered AA.com into its search script and utilized AA.com in its searches if AA.com provided service to the user-requested arrival and departure cities from February 2003 to June 2004. Vogel admitted that there might be contact between TravelJungle's servers and AA.com's servers in Texas

when TravelJungle sent its automated software to obtain fare and scheduling data from AA.com.

In addition, TravelJungle's evidence of how it obtained the fare and scheduling data was unclear; although it contends that its software merely "looked at" AA.com, Vogel's testimony did not explain how the software merely looked at AA.com. He also specifically analogized to Google.com's software, implying that TravelJungle intentionally sent software to AA.com's servers. Moreover, American presented evidence that a website address registered to TravelJungle accessed AA.com 2,972 times in one day, that TravelJungle's use of software to search AA.com "uses valuable computer capacity," and that TravelJungle's use of AA.com's server capacity deprives American **[**22]** of the ability to use that same capacity to serve its other customers. We conclude and hold that TravelJungle did not meet its burden of negating the evidence showing that it purposefully directed its data-gathering activity toward AA.com's servers, which are located in Texas, for commercial, profit-driven purposes; thus, the basis for jurisdiction specifically arises out of the conduct of which American complains. *See Guardian Royal, 815 S.W.2d at 227-28.*

TravelJungle contends that its activities could not subject it to specific jurisdiction in Texas because it did not know where AA.com's servers were located, it was not aware that American objected to or disapproved of its data-gathering activities, and it ceased searching AA.com after American sued it. But TravelJungle does not explain why its cessation of such activities should not subject it to personal jurisdiction in a suit specifically complaining of those past activities. Furthermore, it has not cited any authority, nor have we found any, requiring a potential plaintiff to inform a potential defendant of its objections to the potential defendant's purposeful activity towards a forum for purposes of establishing **[**23]** personal jurisdiction.

As to TravelJungle's contention that it did not know where AA.com's servers were located, we do not believe that it should be able to avoid personal jurisdiction by purposefully engaging in activity directed towards a server located in a particular forum and then claiming ignorance of the location of that forum. In this respect, this case is similar to federal cases holding that senders of spam e-mails are subject to personal jurisdiction in the forum in which their e-mails are received or where the server processing those e-mails is located. Generally, these cases hold that by purposefully targeting e-mail addresses using a particular server, the senders assumed the risk that they would be haled into a forum where that server is located. *See, e.g., Verizon Online Svcs., Inc. v. Ralsky, 203 F. Supp. 2d 601, 618 (E.D. Va. 2002)* ("Defendants assumed the risk of injuring valuable property in Virginia by deliberately sending millions of UBE [spam e-mails] to and through Verizon's e-mail servers located in Virginia for pecuniary **[*851]** gain."). These cases focus, not on the defendants' actual knowledge of the destination of their e-mail activity, but **[**24]** on the deliberate nature of the defendants' activity. *See id.* at 620 ("Defendants' conduct and connections to Virginia were of their own choosing . . . . They cannot seek to escape answering for these actions by simply pleading ignorance as to where these servers were physically located."); *Internet Doorway, Inc. v. Parks, 138 F. Supp. 2d 773, 779 (S.D. Miss. 2001)* ("[Defendant] then sent the e-mail to persons presumably all over the country and the world. By doing this, [defendant] had to have been aware that the e-mail would be received and opened in numerous fora, including Mississippi.").

TravelJungle contends that the spam e-mail analogy is inapposite because it does not send spam and because it searched AA.com only at a user's request. However, the evidence regarding TravelJungle's purposeful contact of AA.com's servers is very similar to the e-mail contact initiated in the cases cited above in that it is TravelJungle's activity directed toward AA.com that is important, rather than TravelJungle's actual awareness of the physical location of AA.com's servers. By deliberately directing its activity toward AA.com, TravelJungle should have been **[**25]** aware of the possibility that it would be haled into any forum where AA.com's servers would be located. *See Reata, 111 S.W.3d at 646; see also Verizon Online Svcs., 203 F. Supp. 2d at 620; Internet Doorway, 138 F. Supp. 2d at 779.*

Accordingly, we hold, on the facts of this case, that TravelJungle did not meet its burden under the appropriate standard of review to negate all bases of jurisdiction. More specifically, American's allegations of specific jurisdiction arising out of TravelJungle's conduct of which American complains have not been negated. Because of this determination, we need not address American's other alleged bases for jurisdiction or TravelJungle's responses thereto. We overrule TravelJungle's sole issue on appeal.

## Conclusion

Having overruled TravelJungle's sole issue, we affirm the trial court's order denying TravelJungle's special appearance and remand this case to the trial court for further proceedings. We also lift the stay of all proceedings with respect to American's claims against TravelJungle that we previously granted on June 27, 2006, effective as of the date mandate issues in this appeal.

TERRIE LIVINGSTON

**[**26]** JUSTICE