1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5

   THE FACEBOOK, INC. AND      )  C-07-01389 JW
6  MARK ZUCKERBERG,            )
                               )  SAN JOSE, CALIFORNIA
7           PLAINTIFFS,        )
                               )  OCTOBER 28, 2008
8          VS.                 )
                               )  PAGES 1-76
9  CONNECTU, INC. (FORMERLY    )
   KNOWN AS CONNECTU, LLC),    )
10 PACIFIC NORTHWEST           )
   SOFTWARE, INC., WINSTON     )
11 WILLIAMS, AND WAYNE         )
   CHANG,                      )
12                             )
           DEFENDANT.          )
13 _____)

14

              TRANSCRIPT OF PROCEEDINGS
15        BEFORE THE HONORABLE JAMES WARE
             UNITED STATES DISTRICT JUDGE
16

17 A P P E A R A N C E S:

18 FOR THE PLAINTIFF:  ORRICK, HERRINGTON & SUTCLIFFE
                       BY:  I. NEEL CHATTERJEE
19                     1000 MARSH ROAD
                       MENLO PARK, CALIFORNIA  94025
20

21

22      APPEARANCES CONTINUED ON NEXT PAGE

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                       CERTIFICATE NUMBER 9595
25

                                                    1

```
 1

 2    APPEARANCES (CONTINUED)

 3    FOR DEFENDANTS:        BOIES, SCHILLER & FLEXNER, LLP
                             BY:   DAVID A. BARRETT
 4                           575 LEXINGTON AVENUE, 7TH FLOOR
                             NEW YORK, NEW YORK  10022
 5
                             BY:   EVAN ANDREW PARKE
 6                           5301 WISCONSIN AVENUE, N.W.
                             WASHINGTON, D.C.  20015
 7

 8    FOR QUINN,             QUINN, EMANUEL, URQUHART,
      EMANUEL:               OLIVER & HEDGES, LLP
 9                           BY:   BRUCE E. VAN DALSEM
                             865 SOUTH FIGUEROA STREET
10                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
11
                             BY:   RANDY GARTEISER
12                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
13                           REDWOOD SHORES, CALIFORNIA 94065

14    SPECIAL MASTER:        GEORGE C. FISHER
                             2600 EL CAMINO REAL, SUITE 410
15                           PALO ALTO, CALIFORNIA  94306

16

17

18

19

20

21

22

23

24

25

                                                           2
```

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA          OCTOBER 28, 2008 |
| | 2 | P R O C E E D I N G S |
| | 3 | (WHEREUPON, COURT CONVENED AND THE |
| 10:17:00 | 4 | FOLLOWING PROCEEDINGS WERE HELD:) |
| 10:17:00 | 5 | THE CLERK:  CALLING CASE NUMBER 07-1389, |
| 10:17:10 | 6 | FACEBOOK, INC., VERSUS CONNECTU, INC., ET AL, ON |
| 10:17:14 | 7 | FOR ORDER TO SHOW CAUSE RE: SPECIAL MASTER'S REPORT |
| 10:17:17 | 8 | NUMBER 1. |
| 10:17:18 | 9 | COUNSEL, PLEASE COME FORWARD AND STATE |
| 10:17:20 | 10 | YOUR APPEARANCES. |
| 10:17:20 | 11 | MR. CHATTERJEE:  GOOD MORNING, YOUR |
| 10:17:24 | 12 | HONOR.  NEEL CHATTERJEE REPRESENTING FACEBOOK AND |
| 10:17:28 | 13 | MARK ZUCKERBERG. |
| 10:17:29 | 14 | MR. VAN DALSEM:  GOOD MORNING, YOUR |
| 10:17:30 | 15 | HONOR.  BRUCE VAN DALSEM ON BEHALF OF QUINN, |
| 10:17:33 | 16 | EMANUEL. |
| 10:17:34 | 17 | MR. BARRETT:  GOOD MORNING, YOUR HONOR. |
| 10:17:38 | 18 | DAVID BARRETT ON BEHALF OF CONNECTU AND THE |
| 10:17:42 | 19 | CONNECTU FOUNDERS. |
| 10:17:47 | 20 | MR. FISHER:  GEORGE FISHER, SPECIAL |
| 10:17:48 | 21 | MASTER. |
| 10:17:54 | 22 | THE COURT:  THIS IS A PROCEEDING WHICH |
| 10:17:57 | 23 | FOLLOWS AN ORDER BY THE COURT TO SHOW CAUSE |
| 10:18:01 | 24 | REGARDING THE SPECIAL MASTER'S REPORT, AND I |
| 10:18:08 | 25 | RECEIVED SUBMISSIONS FROM YOU ALL IN RESPONSE TO |

1   THE COURT'S ORDER.

2         I'M WILLING TO GIVE YOU SOME ADDITIONAL

3   TIME TO ADDRESS THE COURT IF YOU WISH.

4         I DID HAVE SOME QUESTIONS WITH RESPECT TO

5   THIS MATTER.

6         I AM REMINDED THAT THIS IS A PROCEEDING

7   WHERE CERTAIN DOCUMENTS WERE FILED UNDER SEAL AND,

8   IN RESPONSE TO THIS ORDER, ADDITIONAL DOCUMENTS

9   WERE FILED UNDER SEAL.

10         WE'RE IN AN OPEN COURTROOM, SO THAT IF

11  THERE ARE MATTERS THAT YOU DON'T WANT ON THE PUBLIC

12  RECORD, YOU NEED TO BE CAREFUL TO ADVISE THE COURT

13  OF THAT.

14         I'LL -- AS FAR AS THE COURT IS CONCERNED,

15  I'M REGARDING THE NATURE AND AMOUNT OF THE

16  CONSIDERATION AS THE MATTERS THAT THE COURT WOULD

17  AVOID INDICATING, BUT THAT OTHERWISE THE PROCESS IN

18  THE MASTER'S REPORT ARE THE MATTERS OF THE COURT'S

19  CONCERN HERE.

20         SO WITH THOSE INTRODUCTORY COMMENTS, DOES

21  EITHER OF THE THREE OF YOU WHO'VE MADE YOUR

22  APPEARANCES KNOWN WISH TO SPEAK TO THE COURT

23  FURTHER?

24         MR. CHATTERJEE:  YOUR HONOR, I'LL BE

25  HAPPY TO GO FIRST IF, IF IT SEEMS APPROPRIATE.

THE COURT: CERTAINLY.

MR. CHATTERJEE: YOUR HONOR, IT SEEMS TO US THAT IN THE, IN THE VARIOUS FILINGS, THERE ARE ESSENTIALLY FOUR ISSUES THAT ARE KIND OF LINGERING OUT THERE THAT NEED TO BE RESOLVED, OR NEED TO BE ADDRESSED AS PART OF THE ORDER TO SHOW CAUSE AND HOW THE ULTIMATE ORDER LOOKS.

BREAKING IT DOWN KIND OF INTO THE SIMPLEST FORMS, I THINK THE CONNECTU FOUNDERS AND CONNECTU RAISED AN ISSUE AS TO THE COURT'S JURISDICTION, AND I THINK YOUR HONOR ACTUALLY DEALT WITH THAT, AT LEAST PRELIMINARILY, DURING AN EARLIER HEARING WHERE YOUR HONOR HAD SAID THAT YOU FELT THAT THE COURT DID HAVE THE AUTHORITY TO IMPLEMENT THE JUDGMENT OF THE COURT, AND I THINK THAT'S IN ACCORD WITH EVEN THE CASE LAW THAT THE CONNECTU FOUNDERS AND CONNECTU CITED.

WHAT THE COURT CAN'T DO IS ALTER OR CHANGE WHAT THE JUDGMENT IS, AND THIS PROCESS OF WORKING WITH THE SPECIAL MASTER JUST SEEMS TO BE THE MEANS TO EFFECTUATE THE JUDGMENT.

THE SECOND ISSUE IS REALLY DIRECTED TOWARDS WHAT IS THE APPROPRIATE FORM OF THE RELEASE.

THAT IS AN ISSUE WHERE I ACTUALLY DON'T

THINK THE PARTIES REALLY HAVE A MATERIAL DIFFERENCE
OF OPINION.

WHILE WE ALL SUBMITTED PAPERS TO KIND OF
MAKE SURE THAT OUR VARIOUS RIGHTS AND INTERESTS ARE
PROTECTED IF THE COURT WANTS TO GO THE ROUTE OF
ACTUALLY REQUIRING PEOPLE TO PROVIDE RELEASES, YOUR
HONOR'S SUGGESTION IN THE ORDER TO SHOW CAUSE ABOUT
BASICALLY SAYING, THE STATEMENT IN THE SETTLEMENT
AGREEMENT IS WHAT IT IS AND IT SAYS WHAT IT SAYS
AND THERE IS NOT A NEED, AT THIS TIME, TO INTERPRET
THE SIGNIFICANCE OF THAT MAY BE AN ENTIRELY VIABLE
WAY TO GO.

WE SAID THAT IF THE COURT WANTED TO GO
THAT ROUTE, WE WOULD BE OKAY WITH IT.

IN PAGE 10 TO 11 OF THE CONNECTU
FOUNDERS' BRIEFS, THEY ALSO SAID THAT.

IF THE COURT DOES WANT TO GO THE ROUTE OF
ADDRESSING WHETHER WE SHOULD INTERPRET WHAT THAT
PROVISION MEANS AND ACTUALLY DO MORE FORMAL
RELEASES, WE CAN TALK ABOUT THAT IF YOUR HONOR
THINKS THAT'S APPROPRIATE.

THE THIRD ISSUE REALLY GOES TO THE
QUESTION OF HOW DOES THE COURT EFFECTUATE THE
DISMISSALS OF THE LAWSUITS, THAT THERE'S A
CONSOLIDATED LAWSUIT NOW IN MASSACHUSETTS, AND THEN

```
10:22:05  1    THERE'S OBVIOUSLY THE LAWSUIT BEFORE YOUR HONOR.

10:22:07  2              I THINK IT'S PRETTY SIMPLE, WITH RESPECT

10:22:09  3    TO THE COURT HERE, TO JUST DISMISS THE CASE WITH

10:22:13  4    PREJUDICE.

10:22:14  5              THE ONE IN BOSTON, THERE'S A PROCEDURE

10:22:17  6    OUT THERE TO FILE MOTIONS TO DISMISS.

10:22:21  7              THE OTHER ALTERNATIVE, OF COURSE, IS TO

10:22:23  8    HAVE SOME SORT OF RECORDED STATEMENT FROM YOUR

10:22:26  9    HONOR THAT WOULD BE SUBMITTED TO JUDGE WOODLOCK IN

10:22:29 10    BOSTON BASICALLY SAYING THAT PURSUANT TO THE

10:22:32 11    ENFORCEMENT OF THE SETTLEMENT AGREEMENT, YOU WOULD

10:22:35 12    REQUEST THAT THE COURT DISMISS THE CASE WITH

10:22:37 13    PREJUDICE OUT THERE.

10:22:40 14              THERE ARE A VARIETY OF PROCEDURAL OPTIONS

10:22:42 15    AVAILABLE TO YOU.

10:22:43 16              THE REAL ISSUE THAT'S RAISED IN THE

10:22:45 17    PAPERS BY THE CONNECTU FOUNDERS, AND CONNECTU, IS

10:22:48 18    ONE OF TIMING.  WHEN SHOULD YOUR HONOR ISSUE THAT

10:22:51 19    ORDER?

10:22:53 20              YOUR HONOR HAS ALREADY SAID IN THE

10:22:55 21    JUDGMENT THAT THAT PROVISION IS TO BE ENFORCED, SO

10:22:58 22    IT'S NOW JUST A QUESTION OF IMPLEMENTATION.

10:23:00 23              IF YOU WERE TO DO THAT TODAY, TOMORROW,

10:23:02 24    OR AT WHATEVER POINT IN THE NEAR FUTURE, THAT IS

10:23:08 25    NOT ALTERING OR AMENDING THE JUDGMENT.
```

7

INSTEAD IT IS MERELY IMPLEMENTING THE JUDGMENT THAT YOUR HONOR ALREADY ENTERED.

THE FINAL ISSUE IS THE ISSUE OF CONNECTU'S CONSIDERATION.

YOUR HONOR'S ORDER TO SHOW CAUSE LAID OUT A PROCESS FOR EXCHANGING THE CONSIDERATION, BUT THEN IDENTIFIED CORRECTLY THE ISSUE ASSOCIATED WITH THE QUINN, EMANUEL LIEN THAT IS IN EXISTENCE AGAINST THE PROCEEDS OF THE CONSIDERATION THAT FACEBOOK HAS PUT IN.

YOUR HONOR, MR. FISHER, THE SPECIAL MASTER, IN HIS REPORT LAID OUT SEVERAL SUGGESTIONS OF OPTIONS OF WAYS TO GO AS FAR AS HOW TO RELEASE THAT CONSIDERATION.

I DON'T THINK IT'S AN APPROPRIATE THING TO DO TO SIMPLY RELEASE IT TO THE CONNECTU FOUNDERS, BECAUSE THAT COULD POTENTIALLY EXPOSE FACEBOOK TO CLAIMS DEPENDING ON HOW THE LAW WOULD APPLY, A COURT ORDERED DISPOSITION AS OPPOSED TO PARTIES JUST ENGAGING IN A DISPOSITION.

BUT IT DOES SEEM TO US THAT THE PROPER COURSE OF ACTION IS TO FOLLOW THE SPECIAL MASTER'S RECOMMENDATION, WHICH WE AGREE WITH AND MY UNDERSTANDING IS QUINN, EMANUEL AGREES WITH, WITH RESPECT TO THE DISPOSITION OF THE FACEBOOK

10:24:22  1    CONSIDERATION.

10:24:23  2              THE COURT:  WHICH IS WHAT?

10:24:24  3              MR. CHATTERJEE:  THERE WERE SEVERAL

10:24:26  4    SUGGESTIONS.  ONE OF THEM WAS TO HAVE QUINN,

10:24:30  5    EMANUEL -- THERE WERE TWO OPTIONS, ESSENTIALLY.

10:24:33  6              ONE WAS TO HAVE QUINN, EMANUEL AND THE

10:24:36  7    CONNECTU FOUNDERS CREATE AN ESCROW ACCOUNT,

10:24:41  8    ESSENTIALLY, WHERE THEY WOULD PUT THE PROCEEDS AND

10:24:43  9    IT WOULD BE HELD UNTIL THE DISPUTE BETWEEN THEM IS

10:24:46 10    RESOLVED FOR DISPOSITION, AND THEY WOULD HAVE TO

10:24:48 11    FIGURE OUT WHAT THE TERMS WERE FOR THAT ESCROW.

10:24:51 12              IT WOULD NOT BE AN ISSUE FOR US.  THE

10:24:53 13    SPECIAL MASTER WOULD SIMPLY RELEASE IT ONCE THEY

10:24:55 14    DID THAT.

10:24:57 15              THE ALTERNATIVE IS THE CHECKS AND THE

10:24:59 16    SHARES WOULD BE JOINTLY WRITTEN TO ALL OF THEM.

10:25:01 17              AND, AND IT WOULD NOT BE DIVIDED IN ANY

10:25:04 18    WAY, BUT IT BASICALLY COULD NOT BE DISPOSED OF

10:25:06 19    UNTIL THEY REACHED SOME KIND OF AGREEMENT.

10:25:10 20              THERE WAS A FINAL ISSUE THAT DIDN'T

10:25:12 21    REALLY GO TO THE MERITS OF THE ORDER TO SHOW CAUSE,

10:25:15 22    BUT MORE OF A PROCEDURAL QUESTION, THAT THE

10:25:17 23    CONNECTU FOUNDERS AND CONNECTU RAISED IN THEIR

10:25:19 24    PAPERS, WHICH WAS THEY WERE ASKING ESSENTIALLY FOR

10:25:24 25    A STAY FOR 21 DAYS ON THE ORDER TO SHOW CAUSE IN

ORDER TO ALLOW THEM TO FILE AN EMERGENCY MOTION TO
THE NINTH CIRCUIT COURT OF APPEALS.

WE ARE VERY OPPOSED TO ADDITIONAL DELAYS
IN US GETTING THE VALUE THAT WE NEGOTIATED FOR.

WE'RE NOW EIGHT MONTHS PAST WHEN WE
SIGNED AN AGREEMENT THAT THOUGHT WE HAD -- THAT WE
THOUGHT GAVE US THE FINALITY THAT WE BARGAINED FOR,
AND AN ADDITIONAL 21 DAYS WHEN WE'VE ALREADY GONE
UP TO THE NINTH CIRCUIT ONCE ON AN EMERGENCY
APPEAL, WHICH WAS DENIED, THE EMERGENCY APPLICATION
BY THE CONNECTU FOUNDERS AND CONNECTU, IT SEEMS TO
US THAT AN ADDITIONAL 21 DAYS JUST CONTINUES TO
DEPRIVE US OF THE VALUE THAT WE BARGAINED FOR AND
WE DON'T SEE ANY NEED FOR AN ADDITIONAL 21 DAYS TO
ESSENTIALLY STAY THE EXECUTION OF THE JUDGMENT.

THE COURT:  THE ONE ASPECT OF THIS THAT
YOU DID NOT ADDRESS WAS THE PROPOSED COMPLAINT AND
INTERPLEAD.

MR. CHATTERJEE:  YOUR HONOR, YES.

WE HAD SUGGESTED THAT -- THE PROPOSED
COMPLAINT AND INTERPLEADER THAT WE HAD PUT IN OUR
PAPERS WITH RESPECT TO QUINN, EMANUEL, WHICH WAS
THE STATUTORY INTERPLEADER, THAT WAS SOMETHING THAT
THE SPECIAL MASTER DID NOT PROPOSE, BUT WE DID
PROPOSE IN OUR PAPERS.

1   I THINK THAT'S A PERFECTLY LEGITIMATE WAY

         2   TO GO IF YOUR HONOR WANTED TO DO THAT.

         3         I THINK ONE OF THE COMPLEXITIES THAT I

         4   DON'T HAVE ENOUGH FACTUAL UNDERSTANDING OF, TO BE

         5   CANDID, YOUR HONOR, IS WHAT IS GOING ON BETWEEN

         6   QUINN, EMANUEL AND CONNECTU AND THE CONNECTU

         7   FOUNDERS, WHAT THE STATUS OF THAT DISPUTE AND THE

         8   ARBITRATION IS, BECAUSE YOU DO RUN THE RISK OF

         9   HAVING PARALLEL PROCEEDINGS GOING ON, AND I JUST --

        10   I DON'T KNOW ENOUGH ABOUT WHAT THEIR DISPUTE --

        11   WHAT'S GOING ON IN THEIR DISPUTE BECAUSE IT'S A

        12   PRIVATE, A PRIVATE DISPUTE TO KNOW IF WE COULD DO

        13   THE COMPLAINT AND INTERPLEADER.

        14         BUT WE THINK IT WAS A PERFECTLY VIABLE

        15   OPTION ASSUMING THERE'S NO FACT THAT WE'RE UNAWARE

        16   OF THAT PRECLUDES IT.

        17              THE COURT:  VERY WELL.

        18              COUNSEL?

        19              MR. BARRETT:  THANK YOU, YOUR HONOR.

        20   DAVID BARRETT FOR CONNECTU AND THE CONNECTU

        21   FOUNDERS.

        22         I THINK MR. CHATTERJEE HAS SUMMARIZED THE

        23   ISSUES BEFORE THE COURT.

        24         WHAT I WOULD LIKE TO FOCUS ON IS, I

        25   THINK, A COUPLE OF VERY KEY LEGAL ISSUES, WHICH --

                                                            11

10:27:58 1   LEGAL AND FACTUAL ISSUES WHICH, I THINK, ARE HIGHLY

10:28:03 2   RELEVANT TO ACTUALLY ALL OF THE ISSUES THAT THE

10:28:07 3   COURT NEEDS TO DECIDE IN CONNECTION WITH THE ORDER

10:28:09 4   TO SHOW CAUSE.

10:28:14 5        THE FIRST OF THOSE ISSUES ARISES FROM THE

10:28:17 6   FACT THAT IF THE COURT WERE TO DISTRIBUTE OR ORDER

10:28:23 7   THE DISTRIBUTION OF THE SETTLEMENT CONSIDERATION AT

10:28:29 8   SOME POINT IN THE IMMEDIATE FUTURE, WHAT EFFECT

10:28:33 9   WOULD THAT HAVE?

10:28:36 10       AND AS YOU KNOW, YOUR HONOR, ONE OF THE

10:28:40 11  ARGUMENTS THAT WE MAKE IS THAT THE COURT LACKS

10:28:44 12  JURISDICTION TO ORDER THAT DISTRIBUTION.

10:28:51 13       I BELIEVE, ESSENTIALLY, FOR THE SAME

10:28:53 14  REASON THAT THE COURT -- AND I'M GOING TO ARGUE

10:28:57 15  THAT THE COURT LACKS JURISDICTION -- IT'S ALSO NOT

10:29:00 16  A GOOD IDEA, AS A MATTER OF THE COURT'S EXERCISE OF

10:29:04 17  ITS EQUITY POWERS IN DEALING WITH THE SPECIAL

10:29:06 18  MASTER'S REPORT, AND, INDEED, ALSO SUPPORTS THE

10:29:10 19  IRREPARABLE INJURY PRONG OF OUR REQUEST TO STAY

10:29:16 20  EXECUTION IF THE COURT WERE TO ORDER THE

10:29:21 21  DISTRIBUTION OF THE SETTLEMENT PROCEEDS.

10:29:23 22       THE BASIS FOR ALL OF THOSE CONTENTIONS,

10:29:26 23  YOUR HONOR, IS THAT, AS YOU KNOW, THE DISTRIBUTION

10:29:30 24  OF THE SETTLEMENT PROCEEDS, AND PARTICULARLY WHAT

10:29:33 25  MR. CHATTERJEE IS INTERESTED IN, WOULD ENTAIL

GIVING THE CONNECTU STOCK, WHICH IS NOW HELD BY THE SPECIAL MASTER, TO FACEBOOK.

NOW, CONNECTU, IN PAPERS PREVIOUSLY FILED WITH THE COURT, HAS TOLD YOU WHAT THE EFFECT OF TAKING THAT ACTION, ORDERING THE STOCK DISTRIBUTED TO THEM, WOULD BE.

THEY SAY -- THEY SAID, FIRST OF ALL -- AND THIS IS AT PAGE, AT PAGE 5 OF THE BRIEF THAT CONNECTU FILED ON AUGUST 4TH IN OPPOSITION TO THE MOTION -- I'M SORRY, FACEBOOK, PARDON ME -- FACEBOOK FILED ON AUGUST 4TH IN OPPOSITION TO CONNECTU'S MOTION FOR A STAY.

AT FOOTNOTE 7 OF THAT BRIEF, FACEBOOK INVOKED THE DOCTRINE OF DOMINIX LITIS, WHICH, AT LEAST IN FACEBOOK'S VIEW -- AND THEY CITE A CASE FROM THE FEDERAL CIRCUIT CALLED GOULD V. CONTROL LASER, AND IN FACEBOOK'S VIEW, WHAT THAT CASE STANDS FOR IS THAT IF FACEBOOK OWNS THE CONNECTU STOCK, THEY CONTROL BOTH SIDES OF THE LITIGATION THAT IS NOW PRESENTLY BEFORE THE COURT OF APPEALS AS BETWEEN THEMSELVES AND FACEBOOK -- AND CONNECTU.

AND, THEREFORE, THAT CASE IS MOOT, OR THAT APPEAL HAS TO BE DISMISSED BECAUSE THE SAME PARTY IS ON BOTH SIDES OF THE APPEAL.

IN ADDITION, YOUR HONOR, IN THE PAPERS

13

| | |
|---|---|
| 10:31:13 | 1 |

THAT WERE PRESENTED TO YOU IN CONNECTION WITH THE
STAY, THERE WAS, THERE WAS FURTHER EVIDENCE,
INCLUDING EXHIBIT B TO THE DECLARATION OF MY
COLLEAGUE, MIKE UNDERHILL, WHICH WAS DOCUMENT
579-3, AND IN THAT EXHIBIT, THERE'S REPRODUCED AN
E-MAIL EXCHANGE BETWEEN MR. UNDERHILL AND
MR. CHATTERJEE, THE GIST OF WHICH WAS WE WERE
ASKING FACEBOOK TO INDICATE THAT IF IT CAME INTO
POSSESSION OF THE CONNECTU STOCK, IT WOULD NOT, AS
THE NEW OWNER OF CONNECTU, DISMISS THE APPEAL.

AND MR. CHATTERJEE ESSENTIALLY DECLINED
TO ANSWER THAT, TO ANSWER THAT QUESTION.

BUT IT SEEMS QUITE CLEAR FROM, FROM THE
STATEMENTS AND FROM THE CONTEXT THAT CONNECTU IS --
THAT FACEBOOK IS MAINTAINING THAT IT WOULD HAVE THE
POWER TO DISMISS THE APPEAL THAT'S BEFORE THE NINTH
CIRCUIT NOW ON BEHALF OF CONNECTU.

SO, YOUR HONOR, WHAT YOU ARE FACED WITH
TODAY, AND RESPECTFULLY I DO NOT THINK THAT YOU
WERE FACED WITH THIS WHEN YOU DENIED THE STAY BACK
IN AUGUST, IS A SITUATION WHERE YOUR IMMEDIATE
ACTION OF ORDERING THE CONNECTU STOCK OUT OF THE
HANDS OF THE SPECIAL MASTER AND INTO THE HANDS OF
FACEBOOK, WHERE THAT ACT OF THIS COURT WOULD HAVE
THE PRACTICAL EFFECT OF ENDING OR POTENTIALLY

14

1    ENDING, BECAUSE OF THE ARGUMENTS THAT FACEBOOK HAS

2    SAID THAT IT'S GOING TO MAKE, CONNECTU'S APPEAL IN

3    THE NINTH CIRCUIT.

4         NOW, IF THAT HAD HAPPENED BEFORE, BEFORE

5    THE APPEAL HAD BEEN FILED, IT WOULD BE A DIFFERENT

6    CASE.

7         BUT NOW, BECAUSE THE APPEAL HAS BEEN

8    FILED, AND THE STANDARD IS, YOU KNOW, WOULD THIS --

9    WOULD THIS COURT'S ACTIONS ALTER OR ENLARGE THE

10   SCOPE OF ANY ORDER OR CHANGE THE SCOPE OF THE

11   ISSUES THAT ARE BEING PRESENTED TO THE NINTH

12   CIRCUIT, THOSE ARE SORT OF PARAPHRASING THE

13   STANDARDS, IN THE NINTH CIRCUIT, IN THE NINTH

14   CIRCUIT CASES, CLEARLY CAUSING A PARTY, CONNECTU,

15   WHICH NOT ONLY HAS FILED A NOTICE OF APPEAL, BUT

16   HAS ACTUALLY FILED ITS BRIEF ON THE MERITS IN THE

17   NINTH CIRCUIT ON OCTOBER 6TH, CLEARLY REMOVING THAT

18   PARTY FROM THE APPEAL AND, AND, AND ENDING THAT

19   PARTY'S ABILITY TO PURSUE ITS RIGHTS ON APPEAL IS A

20   VAST CHANGE, HOWEVER YOU PHRASE IT, IN THE SCOPE OF

21   THE ISSUES THAT ARE BEFORE THE NINTH CIRCUIT.  IT

22   IS CHANGING THE SCOPE OF WHAT IS GOING ON IN THE

23   NINTH CIRCUIT.

24        SO MR. CHATTERJEE POINTED OUT THAT THE

25   COURT HAS AUTHORITY TO IMPLEMENT THE JUDGMENT, AND

I THINK THAT THAT'S TRUE.

BUT THIS IS NOT MERELY IMPLEMENTING THE
JUDGMENT WHEN YOU HAVE THE ADDITIONAL FACTS THAT
THE APPEAL IS ALREADY IN PROGRESS IN THE NINTH
CIRCUIT WITH THE NOTICE OF APPEAL AND THE BRIEFS
FILED, AND, AND THERE IS THE, THE VERY REAL AND
IMMEDIATE RISK THAT IF THE STOCK GOES OVER TO
FACEBOOK, THEN THAT APPEAL, BY THAT PARTY,
CONNECTU, WILL SIMPLY END.

THEY'RE IN THE NINTH CIRCUIT NOW, AND
SUDDENLY THEY'RE NOT IN THE NINTH CIRCUIT.

THAT -- THE COURT HAS RECOGNIZED THAT
THAT RIGHT OF APPEAL IS A SUBSTANTIAL RIGHT, THAT
THE LOSS OF THAT RIGHT CAN CERTAINLY CONSTITUTE
IRREPARABLE INJURY.

AND THAT, YOUR HONOR, IS WHAT I SUBMIT IS
THE BASIS FOR SAYING THAT THE COURT DOESN'T HAVE
JURISDICTION NOW, NOW THAT THE NINTH CIRCUIT
PROCEEDINGS ARE ONGOING, TO, IN EFFECT, LITERALLY
CHANGE WHO THE PARTIES ARE WHO ARE NOW BEFORE THE
NINTH CIRCUIT.

NOW, MR. CHATTERJEE HAS POINTED OUT
BEFORE, AND IT IS THE CASE, THAT, AS YOUR HONOR
RECALLS, THE FOUNDERS OF CONNECTU, THE INDIVIDUALS,
ARE ALSO PURSUING AN APPEAL IN THE NINTH CIRCUIT.

THERE ARE A COUPLE OF POINTS WITH RESPECT
TO THAT.

I DON'T THINK THAT THAT CHANGES THE
FUNDAMENTAL JURISDICTIONAL QUESTION, WHICH IS,
WHICH IS CAN THIS COURT, IN A CASE THAT IS ALREADY
PENDING IN THE NINTH CIRCUIT, EFFECTIVELY CHANGE
THE IDENTITY OF THE PARTIES TO THAT APPEAL?

SECONDLY, THE INTEREST -- WHATEVER THE
INTERESTS ARE, THE INTERESTS OF THE SHAREHOLDERS --
AND IT'S ONLY THREE OUT OF THE FOUR SHAREHOLDERS,
YOUR HONOR WILL RECALL, WHO ARE ACTUALLY PARTIES IN
THIS CASE IN ANY WAY, ARGUABLY, OR IN THE NINTH
CIRCUIT, SO IT'S NOT ALL OF THE SHAREHOLDERS --
THAT'S A FURTHER LACK OF IDENTITY BETWEEN THE
SHAREHOLDERS AND CONNECTU.

BUT AS A LEGAL MATTER, A CORPORATION HAS
A SEPARATE LEGAL EXISTENCE AND SEPARATE LEGAL
RIGHTS FROM ITS INDIVIDUAL SHAREHOLDERS.

SO THE DEPRIVATION OF THAT CORPORATION'S
RIGHT TO APPEAL, HAVING, YOU KNOW, ALREADY FILED
AND EVEN BRIEFED AN APPEAL IN THE COURT OF APPEALS,
WE BELIEVE REMOVES JURISDICTION TO MAKE THAT, THAT
DISTRIBUTION OF THE CONNECTU STOCK OUT OF THE HANDS
OF THE SPECIAL MASTER .

THE COURT:  HAVE YOU LOOKED AT THAT

10:37:35  1    QUESTION?  IT SEEMS TO ME THAT I HAVEN'T PAID CLOSE

10:37:46  2    ATTENTION TO WHAT IS GOING ON IN THE CIRCUIT.

10:37:49  3              MR. BARRETT:  UM-HUM.

10:37:50  4              THE COURT:  I WAIT UNTIL THEY ISSUE

10:37:52  5    MANDATES TO ME AND THEN I PAY ATTENTION.

10:37:54  6              AND I HAVEN'T FOLLOWED THE BRIEFING,

10:37:57  7    ALTHOUGH THERE WAS A BRIEF THAT WAS ATTACHED TO

10:37:59  8    THESE PAPERS THAT I LEAFED THROUGH.

10:38:01  9              MR. BARRETT:  YES.

10:38:01  10             THE COURT:  BUT AM I TO UNDERSTAND THAT

10:38:06  11   THERE IS A CURRENT APPEAL, OR MORE THAN ONE APPEAL

10:38:11  12   PENDING?

10:38:11  13             MR. BARRETT:  YEAH.  YOUR HONOR, I THINK

10:38:13  14   TECHNICALLY THERE ARE THREE APPEALS PENDING.  THEY

10:38:18  15   HAVE ALL BEEN CONSOLIDATED BY THE NINTH CIRCUIT.

10:38:22  16             THE COURT:  WHAT IS IT, THEN, THAT LEADS

10:38:24  17   YOU TO BELIEVE THAT IF THE ORDER TO SHOW CAUSE IS

10:38:34  18   IMPLEMENTED BY CLOSING OUT THE DUTIES OF THE MASTER

10:38:41  19   AND ORDERING THIS CONSIDERATION PAID OVER --

10:38:44  20             MR. BARRETT:  UM-HUM.

10:38:45  21             THE COURT:  -- THAT WOULD MOOT THE

10:38:47  22   APPEAL?

10:38:48  23             MR. BARRETT:  I DON'T NECESSARILY BELIEVE

10:38:49  24   IT WOULD MOOT THE APPEAL ENTIRELY.

10:38:53  25             THERE -- LET ME JUST -- I CAN ACTUALLY BE

VERY SPECIFIC, THOUGH.

THE THREE APPEALS ARE AS FOLLOWS: THE FIRST FILED ONE WAS THE APPEAL FILED BY CONNECTU.

THE SECOND -- I THINK I'VE GOT THE ORDER CORRECT -- THE SECOND APPEAL THAT WAS FILED WAS FILED BY THE FOUNDERS FOLLOWING YOUR HONOR'S DENIAL OF THE MOTION TO INTERVENE.

AND THE THIRD APPEAL THAT WAS FILED -- OR MAYBE THE SECOND AND THIRD WERE IN REVERSE ORDER -- WAS A CROSS-APPEAL BY CONNECTU, IN WHICH --

MR. PARKE: BY FACEBOOK.

MR. BARRETT: -- BY FACEBOOK, I'M SORRY -- BY FACEBOOK IN WHICH FACEBOOK APPEALS FROM AN EARLIER ORDER NOT BY YOUR HONOR BUT BY ANOTHER JUDGE WHICH GRANTED THE FOUNDERS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

SO THOSE ARE THE THREE APPEALS, AND THOSE WERE ACTUALLY THREE SEPARATE DOCKET NUMBERS. THEY'RE CONSOLIDATED NOW FOR BRIEFING PURPOSES.

THE COURT: ALL RIGHT.

MR. BARRETT: BUT MY --

THE COURT: MY QUESTION STANDS. WHAT IS IT THAT WOULD LEAD YOU TO --

MR. BARRETT: WELL, THE CONNECTU APPEAL, WHICH WAS THE FIRST FILED APPEAL, THAT'S THE ONE

THAT WOULD BECOME MOOT, SO THAT CASE BEFORE THE
NINTH CIRCUIT WOULD BECOME -- WOULD ARGUABLY BECOME
MOOT.

AND, AND SO THAT'S AN ACTUAL CASE, AN
ACTUAL DOCKET NUMBER.  THAT WAS NOT JOINT WITH
ANYBODY.

NOW, THERE IS THE CONSOLIDATION.  WE DID
FILE A JOINT BRIEF, AND THAT'S THE BRIEF THAT YOUR
HONOR REFERRED TO THAT YOU LOOKED AT.

YOU KNOW, IN THE FIRST PLACE, IT'S NOT
100 PERCENT CERTAIN WHETHER THE FOUNDERS WILL BE
PERMITTED BY THE COURT OF APPEALS TO APPEAL.

OBVIOUSLY YOUR HONOR RULED THAT THEY WERE
PARTIES AND THAT THEY WERE ENTITLED TO APPEAL.

WE THINK THEY WERE ALSO -- IF THAT'S
INCORRECT, THAT THEY WERE ENTITLED TO INTERVENE AND
APPEAL.

HOPEFULLY THOSE ARE SUCCESSFUL ARGUMENTS
ON OUR SIDE, BUT NONE OF US IN THIS COURTROOM TODAY
CAN SAY WHAT THE COURT OF APPEALS IS GOING TO DO
WITH THAT JURISDICTIONAL QUESTION OR THAT STANDING
QUESTION.

THE COURT:  SO THEN THERE IS AN
OUTSTANDING QUESTION BEFORE THE CIRCUIT AS TO THE
FOUNDERS' RIGHT TO PROSECUTE AN APPEAL?

10:40:57 1        MR. BARRETT:  WELL, THERE CERTAINLY COULD

10:40:58 2   BE.  I DON'T KNOW.

10:40:59 3        MR. CHATTERJEE HASN'T FILED HIS BRIEF

10:41:02 4   YET, SO I DON'T KNOW IF, IF THEY'LL TAKE THAT

10:41:05 5   POSITION OR NOT.

10:41:05 6        I SUPPOSE IT'S KIND OF AN ISSUE THAT EVEN

10:41:07 7   THE COURT COULD RAISE SUA SPONTE.

10:41:11 8        BUT I BELIEVE IT'S AT LEAST A POTENTIAL,

10:41:15 9   IT'S A POTENTIAL ISSUE.

10:41:17 10       AND, SECONDLY, YOUR HONOR, I DO THINK

10:41:19 11  THAT THE RIGHTS OF THE CORPORATION ARE SEPARATE AND

10:41:21 12  INDEPENDENT AS A LEGAL MATTER FROM THE RIGHTS OF

10:41:24 13  THE SHAREHOLDERS, AND THOSE RIGHTS WOULD BE DENIED.

10:41:27 14       THE COURT:  WELL, LET ME KIND OF CUT TO

10:41:35 15  THE CHASE HERE.

10:41:36 16       MR. BARRETT:  UM-HUM.

10:41:37 17       THE COURT:  IT DOES SEEM TO ME THAT PART

10:41:40 18  OF -- PART OF THE COURT'S CONCERN IS NOT TO DO

10:41:44 19  ANYTHING BEYOND ITS POWER, AND IF I BELIEVE THAT I

10:41:47 20  HAVE THE POWER TO IMPLEMENT THE JUDGMENT, IT SEEMS

10:41:52 21  TO ME THAT UNLESS THERE'S SOME LEGAL IMPEDIMENT TO

10:42:00 22  DOING SO, I SHOULD DO SO.

10:42:01 23       AS YOU CITE THIS QUESTION OF THE APPEAL,

10:42:07 24  ESSENTIALLY YOUR ARGUMENT IS THAT AS THE OWNER OF

10:42:14 25  THE STOCK, FACEBOOK WOULD HAVE THE RIGHT TO DISMISS

THE -- AT LEAST THE CONNECTU APPEAL.

THAT'S WHY I QUESTIONED WHETHER OR NOT THAT'S BEEN THOUGHT THROUGH. I DON'T KNOW A LOT ABOUT APPELLATE PROCEDURE, BUT WOULDN'T THAT REQUIRE AN ORDER OF THE NINTH CIRCUIT PERMITTING THE APPEAL TO BE DISMISSED? OR IS THAT SOMETHING THAT CAN BE VOLUNTARILY DONE WITHOUT ANY RULING BY THE CIRCUIT?

IT SEEMS TO ME THAT IF FACEBOOK GOES TO THE APPELLATE COURT WITH A MOTION TO DISMISS THE APPEAL, IT WOULD BE AN OPPORTUNITY FOR CONNECTU TO ARGUE, BASED UPON THE CIRCUMSTANCES, THE MERITS OF WHAT THE APPEAL IS ABOUT, AND THAT MOTION SHOULD BE DENIED AND THE APPEAL ALLOWED TO PROCEED.

IF THE CIRCUIT AGREES WITH FACEBOOK THAT THE APPEAL MAY BE DISMISSED, IT WOULD HAVE TO DO SO IN A FASHION THAT WOULD BE AN ADJUDICATION ON THE MERITS OF THE APPEAL, AS WELL AS ON THE STANDING OF FACEBOOK TO MAKE THAT MOTION.

IF THE COURT OF APPEALS DENIES THAT MOTION TO DISMISS THE APPEAL, THEN THE CONNECTU COMPANY, AS WELL AS ITS FOUNDERS, WOULD BE ABLE TO PURSUE THE APPEAL TO A RESOLUTION ON THE MERITS, AND WHATEVER THAT RESOLUTION IS BY THE NINTH CIRCUIT WOULD THEN BE REMANDED BACK TO THIS COURT

TO TAKE ACTION BASED UPON IT.

SO THE REAL CONCERN THAT THIS COURT WOULD HAVE IS, AM I IN A POSITION IF THE CASE COMES BACK TO ME TO TAKE WHATEVER ACTION WOULD BE REQUIRED OF ME BY THE CIRCUIT UNDER THOSE, UNDER THOSE CIRCUMSTANCES?

BUT I DON'T FORESEE A CIRCUMSTANCE WHERE THE NINTH CIRCUIT WOULD SIT IDLY BY AND ALLOW FACEBOOK TO DISMISS THE APPEAL BY CONNECTU, UNLESS THERE IS A RULE THAT SAYS THE OWNER OF THE STOCK CAN, IN THE FACE OF AN ONGOING APPEAL, SIMPLY DISMISS AND THE CIRCUIT WOULD HAVE NOTHING TO SAY ABOUT THAT.

IF THAT'S THE CASE, IS THERE ANYTHING I SHOULD DO ABOUT THAT --

MR. BARRETT:  RIGHT.

THE COURT:  -- AS OPPOSED TO THE CIRCUIT?

MR. BARRETT:  WELL, YOUR HONOR, A COUPLE OF THINGS.

I MUST SAY THAT STANDING HERE, I, I DON'T KNOW THE ANSWER TO YOUR HONOR'S PROCEDURAL QUESTION, EXCEPT TO SAY THAT I THINK, WITH RESPECT TO THAT, AS WITH RESPECT TO THE STANDING OF THE FOUNDERS TO APPEAL -- AND BY THE WAY, THAT IS AN ISSUE WHICH, IN EARLIER PROCEEDINGS IN THIS CASE,

| | |
|---|---|
| 10:44:57 | 1 |
| 10:45:01 | 2 |
| 10:45:08 | 3 |
| 10:45:11 | 4 |
| 10:45:14 | 5 |
| 10:45:17 | 6 |
| 10:45:21 | 7 |
| 10:45:23 | 8 |
| 10:45:27 | 9 |
| 10:45:31 | 10 |
| 10:45:35 | 11 |
| 10:45:38 | 12 |
| 10:45:43 | 13 |
| 10:45:46 | 14 |
| 10:45:49 | 15 |
| 10:45:56 | 16 |
| 10:46:01 | 17 |
| 10:46:07 | 18 |
| 10:46:09 | 19 |
| 10:46:11 | 20 |
| 10:46:14 | 21 |
| 10:46:19 | 22 |
| 10:46:24 | 23 |
| 10:46:27 | 24 |
| 10:46:31 | 25 |

FACEBOOK DID QUESTION THE STANDING OF THE FOUNDERS TO APPEAL AT ALL, I THINK BASICALLY ON THE BASIS THAT THEY HAD SOMEHOW WAIVED THEIR RIGHTS BY NOT PARTICIPATING ACTIVELY IN THIS COURT.

MY POINT IS, WHETHER THOSE, WHETHER THOSE ARGUMENTS ARE RIGHT OR WRONG WITH RESPECT TO THAT OR WITH RESPECT TO THE QUESTION THAT YOUR HONOR JUST RAISED, NONE OF US IN THIS ROOM CAN BE CERTAIN WHAT THE CIRCUIT COURT'S RULING IS GOING TO BE.

AND IF THE NET RESULT OF THE CIRCUIT COURT'S RULING, AND I'M SURE FACEBOOK WOULD LIKE TO SEE THIS RESULT, IS THAT, IN EFFECT, NO ONE CAN CHALLENGE THE MERITS OF THIS COURT'S DECISION ON APPEAL, AND I CAN CONCEIVE OF WAYS IN WHICH THAT COULD BE THE OUTCOME, THEN BY THE SIMPLE ACT OF DISTRIBUTING THE STOCK FROM THE SPECIAL MASTER TO FACEBOOK, THAT -- THAT'S WHAT -- THAT'S THE RESULT OF THAT ACTION BY THE COURT.

NOW, YOUR HONOR, IN ANSWER TO, I THINK, WHAT WAS AN IMPLICIT QUESTION, WHICH IS WHAT CAN WE DO ABOUT IT, I THINK WHAT WE CAN DO IS WE CAN MAINTAIN WHAT IS NOW THE STATUS QUO; THAT IS, LEAVE THE SETTLEMENT CONSIDERATION IN THE HANDS OF THE SPECIAL MASTER.

THAT -- AND WE CAN TALK ABOUT WHY THAT IS

10:46:34  1    APPROPRIATE, WHY I DON'T BELIEVE IT WOULD INJURE

10:46:37  2    FACEBOOK'S INTERESTS IN ANY WAY, NOTWITHSTANDING

10:46:40  3    MR. CHATTERJEE'S CONCERNS ABOUT FINALITY AND THE

10:46:44  4    BENEFIT OF THE BARGAIN AND SO FORTH.

10:46:46  5          BUT IT WOULD AVOID ALL OF THESE

10:46:49  6    UNCERTAINTIES, ALL OF THESE RISKS, ALL OF THESE

10:46:55  7    DIFFICULTIES WHICH ARISE.

10:46:56  8          YOUR HONOR REFERRED ALSO TO WHAT IF THE

10:46:58  9    NINTH CIRCUIT SENDS THE CASE BACK TO YOU?

10:47:01  10         OBVIOUSLY IF THE NINTH CIRCUIT AFFIRMS,

10:47:04  11   THEN IT'S EASY.  ALL THE CONSIDERATION GOES OUT, WE

10:47:07  12   ALL GO HOME, THE CASE IS DONE.

10:47:09  13         IF THE NINTH CIRCUIT WERE TO REVERSE,

10:47:12  14   HOWEVER, YOUR HONOR, I THINK THAT IS IT A MUCH MORE

10:47:16  15   COMPLICATED SITUATION TO DEAL WITH IF THE

10:47:20  16   CONSIDERATION HAS BEEN DISBURSED AND IF IT JUST, IF

10:47:25  17   IT JUST STAYS WITH THE SPECIAL MASTER AT

10:47:27  18   ESSENTIALLY NO, NO INJURY TO ANY PARTY.

10:47:31  19         IT'S MORE COMPLICATED BECAUSE YOU'VE GOT

10:47:33  20   RELEASES THAT ARE OUT THERE, AT LEAST IN THE

10:47:36  21   DISTRICT OF MASSACHUSETTS -- MAYBE IT'S RELATIVELY

10:47:39  22   EASY FOR YOUR HONOR TO REINSTATE THE CASE IF THE

10:47:42  23   COURT SAYS REVERSE IN ACCORDANCE WITH THIS OPINION.

10:47:46  24         THAT'S NOT THE CASE WITH THE FIRST

10:47:48  25   CIRCUIT CASE WHERE THERE'S PRESUMABLY BEEN A

DISMISSAL MOTION, OR OTHER PROCEEDINGS.  MAYBE

THERE'S EVEN BEEN AN APPEAL TO THE FIRST CIRCUIT IN

THE MEANTIME.

THE SPECIAL MASTER'S SUGGESTED THAT RULE

60(B)(5) MIGHT BE APPLICABLE, AND INDEED, IT MIGHT

BE.

BUT THE, THE ISSUE IS, IN MY MIND, WHY DO

WE NEED TO GO TO ALL OF THAT TROUBLE WHEN WE'VE GOT

A SOLUTION THAT IS VERY SIMPLE AND, AS I SAY, I

DON'T THINK PREJUDICES THE INTERESTS OF ANY PARTY,

WHICH IS FOR THE SPECIAL MASTER TO CONTINUE TO HOLD

THE CONSIDERATION, JUST AS YOUR HONOR ORDERED IN

THE ORIGINAL JUDGMENT ON JULY 3RD, PENDING FURTHER

ORDER OF THIS COURT OR THE OUTCOME OF AN APPEAL.

THAT --

THE COURT:  LET ME CHECK TO SEE --

MR. CHATTERJEE, YOU STOOD UP IN THE MIDDLE OF

COUNSEL'S ARGUMENT, BUT I PRESUMED IT WAS BECAUSE

YOU WANTED TO MAKE AN OBJECTION, OR --

MR. CHATTERJEE:  I DID, AND I APOLOGIZE

FOR INTERRUPTING COUNSEL'S ARGUMENT.

THERE IS ONE IMPORTANT ISSUE THAT I THINK

IS BEING OVERLOOKED HERE, YOUR HONOR.

THIS ENTIRE ISSUE ABOUT WHAT HAPPENS WITH

CONNECTU AS A COMPANY, IT WAS RAISED IN THE

PREVIOUS PROCEEDINGS.  THE CONNECTU FOUNDERS AND
CONNECTU FILED AN EMERGENCY MOTION TO THE NINTH
CIRCUIT TO STOP THE DISPOSITION OF THE ASSETS, THEY
REFUSED TO PUT THE CONSIDERATION INTO THE SPECIAL
MASTER'S HANDS BECAUSE OF THE NINTH CIRCUIT APPEAL
AND BECAUSE OF THE SCHEDULING OF YOUR HONOR'S
HEARINGS.

AND ALL OF THAT WAS DENIED.  THE NINTH
CIRCUIT HAS ADDRESSED THIS ISSUE.  THEY HAVE
ADDRESSED THE IMMINENCE OF THE CONSIDERATION
TRANSFER TO FACEBOOK.

THAT WAS THE BASIS OF THE EMERGENCY
APPEAL THAT CONNECTU AND THE CONNECTU FOUNDERS
FILED.

THE COURT:  IT'S A DIFFERENT SITUATION,
BUT I AGREE THAT THE CIRCUIT HAS WEIGHED IN, AT
LEAST WITH RESPECT TO THIS QUESTION OF A STAY OF
EXECUTION.

YOUR COMMENT, THOUGH, PROMPTS ME TO ASK
WHY, IF YOU'VE CONSIDERED IT, YOU HAVE NOT PURSUED
THAT BEYOND THE COURT'S RULING.

YOU ASKED FOR AN EMERGENCY STAY OF
EXECUTION, BUT SO FAR AS I KNOW, YOU HAVEN'T ASKED
THE CIRCUIT TO ISSUE ANY ORDER TO ME TO STAY MY
HAND BY WAY OF A WRIT OR ANYTHING OF THAT KIND,

WHICH WOULD BE BEYOND THE APPEAL ROUTE.

IF YOUR ARGUMENT IS I DON'T HAVE

JURISDICTION AND I'M ABOUT TO DO SOMETHING BEYOND

MY JURISDICTION, WHY HAVEN'T YOU PURSUED A WRIT?

MR. BARRETT:  WELL, YOUR HONOR, WE -- I

GUESS WE THOUGHT THAT THE, THAT IT WOULD BE

APPROPRIATE TO PROCEED AS WE HAVE HERE TODAY,

RAISING THE CHALLENGE TO THE COURT'S JURISDICTION

IN THIS COURT IN THE FIRST INSTANCE, AS WELL AS

MAKING THE REQUEST FOR A STAY IF THE COURT'S RULING

WERE TO BE THAT THE SETTLEMENT CONSIDERATION IS

DISTRIBUTED.

THE COURT:  IT'S NOT A STAY.  YOU'VE

ALREADY EXHAUSTED THAT, I THINK.

MR. BARRETT:  WELL, YOUR HONOR --

THE COURT:  BUT IT COULD BE THAT THE

CIRCUIT WOULD RECONSIDER THE STAY.

A WRIT PROCEEDS FROM A DIFFERENT LEGAL

PROPOSITION.  IT IS THAT THE COURT IS ABOUT TO DO

SOMETHING BEYOND ITS DISCRETION.

A STAY IS WITHIN THE COURT'S DISCRETION,

AND IF YOUR ARGUMENT HERE IS THAT THE COURT HAS NO

DISCRETION BUT TO HOLD THESE PROCEEDS AND IT CANNOT

PROCEED BASED UPON THE PRESENCE OF AN APPEAL, THAT

SEEMS TO ME TO INVITE -- IF I BELIEVE YOU'RE WRONG

10:51:36 1   AND I'M ABOUT TO TAKE AN ACTION IN RESPONSE TO THIS

10:51:39 2   ORDER TO SHOW CAUSE, YOU HAD A BASIS FOR SEEKING

10:51:41 3   THAT WRIT.

10:51:42 4           AND IT SEEMS TO ME THAT THE FAIREST THING

10:51:44 5   FOR THE COURT TO DO, IF IT IS DETERMINED TO

10:51:47 6   PROCEED, WOULD BE TO STAY ITS HAND FOR A DAY OR TWO

10:51:50 7   TO ALLOW YOU TO SEEK THAT KIND OF A WRIT ASKING THE

10:51:55 8   COURT TO, TO STOP ME ON THE GROUNDS THAT I'M

10:52:00 9   EXCEEDING MY AUTHORITY.

10:52:01 10          MR. BARRETT:  YOUR HONOR, PERHAPS, YOU

10:52:06 11  KNOW, IT CERTAINLY WOULD BE AN AVAILABLE PROCEDURAL

10:52:10 12  ROUTE.

10:52:10 13          I GUESS OUR VIEW WAS IF WE PRESENTED BOTH

10:52:13 14  THAT ARGUMENT AND THE OTHER ARGUMENTS TO THIS

10:52:17 15  COURT, YOU KNOW, THERE ARE MANY SITUATIONS IN WHICH

10:52:20 16  THE COURT IS, IS PRESENTED WITH A, WITH AN ARGUMENT

10:52:24 17  THAT IT LACKS JURISDICTION TO PROCEED.

10:52:29 18          AND I'M NOT SURE THAT THE CIRCUIT WOULD,

10:52:32 19  YOU KNOW, WOULD LIKE COUNSEL WHO HAD THOSE

10:52:34 20  ARGUMENTS TO BE SEEKING WRITS EVERY TIME WE BELIEVE

10:52:39 21  THAT TO BE THE CASE.

10:52:42 22          AND I THINK THAT THE COURT WILL MAKE A

10:52:44 23  FAIR DETERMINATION BASED ON ITS VIEW OF THE LAW AND

10:52:47 24  THE FACTS.

10:52:48 25          I DO WANT TO ADDRESS, THOUGH,

10:52:51 1   MR. CHATTERJEE'S -- THE ARGUMENT THAT

10:52:54 2   MR. CHATTERJEE JUST MADE AND THAT THE COURT ALLUDED

10:52:57 3   TO RELATING TO THE CIRCUIT'S PRIOR, OR PREVIOUS

10:53:01 4   DENIAL OF THE MOTION FOR A STAY.

10:53:06 5          AND I THINK, YOUR HONOR, YOU WERE EXACTLY

10:53:09 6   RIGHT WHEN YOU SAID THAT THE CIRCUMSTANCES ARE

10:53:12 7   DIFFERENT NOW.

10:53:14 8          AND I THINK THE CLEAREST INDICATION OF

10:53:17 9   THAT IS THE FACT THAT THE -- IN ITS DECISION, THE

10:53:20 10  CIRCUIT DIDN'T GIVE MUCH, MUCH OF AN EXPLANATION.

10:53:25 11         ESSENTIALLY THE DECISION ON THE MERITS

10:53:28 12  WAS, THE MOTION FOR A STAY IS DENIED, AND THEY

10:53:32 13  CITED TWO CASES.

10:53:33 14         ONE WAS THE GOLDEN GATE CASE, WHICH I

10:53:36 15  TAKE IT IS THE COURT'S MOST RECENT PRONOUNCEMENT ON

10:53:40 16  THE GENERAL STANDARDS FOR A STAY PENDING APPEAL,

10:53:44 17  AND I THINK FACTUALLY THAT IS NOT PARTICULARLY

10:53:50 18  INSTRUCTIVE IN THIS CASE.

10:53:51 19         THE OTHER CASE, THE SECOND CASE WHICH THE

10:53:53 20  COURT OF APPEALS CITED WAS THE CASE OF LOPEZ

10:53:58 21  AGAINST HECKLER, WHICH I BELIEVE YOUR HONOR ALSO

10:54:01 22  CITED, AND IT CITED IN PARTICULAR PAGE 1435 OF 713

10:54:11 23  F.2D IN THAT LOPEZ CASE.

10:54:13 24         AND THE REASON, YOUR HONOR, THAT I THINK

10:54:15 25  THAT IS SIGNIFICANT IS THAT ON THAT PAGE, THERE IS

A PARAGRAPH IN WHICH THE COURT DESCRIBES THE PRIOR

10:54:22 2 HISTORY OF THE CASE IN WHICH THE SECRETARY OF

10:54:26 3 HEALTH AND HUMAN SERVICES MOVED FOR A PARTIAL, OR

10:54:30 4 FOR AN EMERGENCY STAY OF THE DISTRICT COURT ORDER,

10:54:34 5 AND THE DISTRICT COURT ORDER IN THE LOPEZ CASE WAS

10:54:40 6 THAT THE SOCIAL SECURITY ADMINISTRATION HAD TO GIVE

10:54:45 7 NOTICE TO TENS OF THOUSANDS OF INDIVIDUALS WHO HAD

10:54:50 8 HAD THEIR SOCIAL SECURITY DISABILITY PAYMENTS

10:54:54 9 STOPPED ON THE GROUNDS THAT THEY WERE NO LONGER

10:54:57 10 DISABLED.

10:54:59 11 AND THE COURT HAD PREVIOUSLY RULED THAT

10:55:03 12 THE SECRETARY COULDN'T STOP THOSE PAYMENTS UNTIL

10:55:05 13 AFTER THE INDIVIDUALS HAD HAD NOTICE AND

10:55:08 14 OPPORTUNITY TO BE HEARD.

10:55:10 15 THE SECRETARY HAD ANNOUNCED THAT SHE

10:55:13 16 WASN'T GOING TO ABIDE BY THAT DECISION, AND THE

10:55:15 17 PARTIES WENT BACK TO THE DISTRICT COURT.

10:55:17 18 THE DISTRICT COURT ISSUED AN ORDER THAT

10:55:19 19 SAID, YES, YOU ARE, AND YOU'RE GOING TO SEND NOTICE

10:55:22 20 TO ALL THESE PEOPLE BY A CERTAIN DATE, AND THEN IF

10:55:26 21 THEY ASK YOU FOR IT, YOU'RE GOING TO CONDUCT

10:55:28 22 HEARINGS, AND IF THEY'RE ENTITLED, YOU'RE GOING TO

10:55:31 23 GIVE THEM BACK THEIR BENEFITS.

10:55:33 24 SO THAT WAS THE ORDER.

10:55:34 25 THE SECRETARY OF HEALTH AND HUMAN

10:55:37 1  SERVICES SOUGHT AN EMERGENCY STAY FOUR OR FIVE DAYS

10:55:41 2  BEFORE THOSE TENS OF THOUSANDS OF NOTICES TO THE

10:55:46 3  DENIED CLAIMANTS WERE GOING TO GO OUT, AND THE

10:55:50 4  COURT GAVE TWO REASONS FOR DENYING THE EMERGENCY

10:55:54 5  STAY.

10:55:55 6         THE FIRST REASON WAS THAT THE SECRETARY

10:55:57 7  HAD WAITED ABOUT 50 OR 55 DAYS FROM THE DATE OF THE

10:56:01 8  ORIGINAL ORDER UNTIL MAKING THAT STAY MOTION JUST

10:56:05 9  FOUR DAYS BEFORE THE NOTICES WERE TO GO OUT.

10:56:10 10        NOW, THAT'S ARGUABLY, YOUR HONOR -- YOUR

10:56:13 11 HONOR HAD SOME ISSUES WITH US NOT HAVING FILED THE

10:56:17 12 NOTICE OF APPEAL SOONER.

10:56:21 13        RESPECTFULLY, WE DISAGREE, AND AS WE

10:56:23 14 ARGUED AT THE TIME, WE THOUGHT THERE WERE SOME GOOD

10:56:25 15 REASONS BASED ON FACEBOOK'S CONDUCT AND TRYING TO

10:56:28 16 WORK OUT THE ISSUE THAT WE THOUGHT WE HADN'T BEEN

10:56:32 17 DILATORY.

10:56:33 18        BUT IN ANY EVENT, THAT'S ONE ASPECT OF

10:56:38 19 THE DECISION.

10:56:39 20        THE SECOND ASPECT OF THE DECISION,

10:56:40 21 THOUGH, AND I THINK THIS IS REALLY CRUCIAL, WAS

10:56:43 22 THAT THE COURT OF APPEALS SAID, "THE FACT THAT

10:56:47 23 TERMINATED RECIPIENTS BE," AND I'M QUOTING HERE,

10:56:51 24 "NOTIFIED BY AUGUST 15TH OF THEIR POTENTIAL

10:56:54 25 ELIGIBILITY FOR BENEFITS WAS THE ONLY IMMEDIATE

OBLIGATION IMPOSED UPON THE GOVERNMENT.

"WE REASONED THAT THE BULK OF THE
ADMINISTRATIVE COSTS AND THE COSTS OF REINSTATING
BENEFITS, THE SOURCE OF THE INJURY WHICH THE
SECRETARY ARGUES JUSTIFIES A STAY, WOULD NOT START
TO ACCRUE UNTIL LATER WHEN THE FORMER RECIPIENTS
BEGAN REAPPLYING FOR BENEFITS.

"THUS, WE SAW NO NECESSITY TO ISSUE A
TEMPORARY STAY PENDING APPEAL ON AN EMERGENCY
BASIS, ESPECIALLY GIVEN THE SECRETARY'S UNEXPLAINED
DELAY."

SO WHAT THE COURT REALLY FOCUSSED ON WAS,
WHAT WAS THE IMMEDIATE INJURY THAT WAS GOING TO BE
SUFFERED BY THE PARTY SEEKING THE STAY?

YOUR HONOR, I THINK THAT IS REALLY
EXACTLY ANALOGOUS TO THIS CASE.

AT THE TIME WE MADE THAT MOTION, THE
ORDER OF THE COURT WAS, GIVE THE STOCK TO THE
SPECIAL MASTER.

THAT TENDERING OF THE STOCK TO THE
SPECIAL MASTER WAS SUBJECT TO THE FINAL PARAGRAPH
OF THE FINAL JUDGMENT, WHICH SAID THE SPECIAL
MASTER CAN'T DO ANYTHING WITHOUT FURTHER ORDER OF
THE COURT.

SO IT'S OUR VIEW, YOUR HONOR, THAT WHEN

33

THE COURT OF APPEALS CITED THE LOPEZ CASE AS THE
GROUND FOR DENYING THE STAY, WHAT -- CERTAINLY A
VERY SIGNIFICANT PART OF THAT DECISION WAS THAT WE
WERE NOT GOING TO SUFFER ANY IMMEDIATE IRREPARABLE
INJURY BECAUSE THE STOCK WAS JUST GOING INTO THE
HANDS OF THE SPECIAL MASTER WHERE THE INJURIES IN
TERMS OF LOSS OF APPEAL RIGHTS AND SO FORTH,
POTENTIAL LOSS OF APPEAL RIGHTS ACCORDING TO
FACEBOOK, AND SO FORTH WOULD NOT BE SUFFERED.

NOW, HOWEVER, AND I -- THAT'S WHY I COME
BACK TO THIS POINT.  THE SITUATION HAS CHANGED.

WE ARE NOT TALKING ABOUT THAT LOSS BEING
POTENTIALLY DAYS, WEEKS, MONTHS IN THE FUTURE, THAT
LOSS OF APPEAL RIGHTS.

WE ARE TALKING ABOUT IT BEING IMMINENT.
WE ARE TALKING ABOUT THE COURT'S VERY ACT OF
ORDERING THE DISTRIBUTION WOULD RESULT IN OUR
POTENTIALLY LOSING THE APPEAL, THE APPEAL RIGHTS IN
VIEW OF FACEBOOK'S INTERPRETATION OF THE LAW.

SO YOU, YOU HAVE -- YOU HAVE A SITUATION
WHERE, WHERE LOPEZ SEEMED TO SUGGEST THAT THE
EARLIER STAY REQUEST WAS DENIED, IN EFFECT, BECAUSE
IT WAS PREMATURE.

ALL WE WERE FACED WITH WAS, WAS DOING A
QUASI MINISTERIAL ACT, GIVING THE SHARES TO THE

34

SPECIAL MASTER.

YES, WE WERE WORRIED AT THAT TIME ABOUT
WHAT THE ULTIMATE RESULT MIGHT BE, BUT THAT
COULDN'T HAPPEN UNTIL WE HAD EXACTLY THE
OPPORTUNITY THAT WE HAVE HERE TODAY, WHICH IS TO
HAVE NOTICE AND AN OPPORTUNITY TO PERSUADE THE
COURT NOT TO MAKE THAT DISTRIBUTION.

BUT --

THE COURT:  WELL, YOU'RE BEING QUITE
COMPLETE, AND I REALLY APPRECIATE IT, IN YOUR
RECITATION OF THE CIRCUMSTANCES, AND PART OF WHAT
YOU'VE SAID I RECOGNIZE.

IT DOES SEEM TO ME A DIFFERENT
PROPOSITION FOR THIS COURT TO ORDER A STAY SO THAT
IT CAN CONSIDER MATTERS BEFORE IT THAN FOR THE
COURT TO ORDER A STAY SO THAT THE NINTH CIRCUIT CAN
CONSIDER MATTERS BEFORE IT --

MR. BARRETT:  UM-HUM.

THE COURT:  -- WHEN THE NINTH CIRCUIT IS
PERFECTLY CAPABLE OF MAKING ITS OWN JUDGMENT ABOUT
THAT.

AND FOR ME TO PROTECT THE JURISDICTION OF
THE NINTH CIRCUIT BY ISSUING A STAY UNDER
CIRCUMSTANCES WHERE I'VE ALREADY MADE MY JUDGMENT
AND MY ASSESSMENT OF IT IS A DIFFERENT, A DIFFERENT

MATTER.

IF I UNDERSTANDING WHAT YOU'RE SAYING, IT
IS THAT YOU NEED TO GO THROUGH THIS PROCEDURE TO
PUT YOURSELF IN THE POSITION OF NOW SUBMITTING TO
THE NINTH CIRCUIT EITHER A REQUEST FOR A STAY OR A
REQUEST FOR A WRIT, AND I CAN UNDERSTAND, THEN, WHY
YOU WOULD GO THROUGH THIS PROCESS, BECAUSE UNLESS
I'M PERSUADED THAT I DON'T HAVE THE AUTHORITY, IT
SEEMS TO ME THAT THERE ARE TWO SIDES TO THE APPEAL
THAT YOU'RE CITING.

THERE IS THE SIDE THAT YOU'RE CITING,
WHICH IS THE CONNECTU SIDE WHICH WOULD, IF IT HAS
TO FOLLOW THROUGH WITH ITS SETTLEMENT, LOSE CONTROL
OF THE COMPANY; AND THEN THERE'S THE FACEBOOK SIDE
WHICH IS SEEKING TO GAIN CONTROL.

THAT'S -- THAT'S JUST DESCRIBING TO ME
THE NATURE OF THE PROBLEM.

AND YOUR ARGUMENT IS THAT I SHOULD FAVOR
ONE SIDE OVER THE OTHER IN THAT APPEAL BY SIMPLY
SAYING THAT FACEBOOK WON'T SUFFER ANY INJURY IF
IT'S DENIED THE CONTROL THAT IT BARGAINED FOR, AND
I UNDERSTAND THAT THERE ARE SOME ECONOMIC REASONS
WHY THAT ARGUMENT IS MADE INSOFAR AS CONNECTU IS
CONCERNED .

THE ARGUMENT I'VE HEARD MADE IN THE PAST

IS, WELL, THE COMPANY ISN'T REALLY ACTIVE, IT
REALLY DOESN'T MAKE ANY MONEY, IT'S NOT REALLY
LOSING ANY MONEY, IT'S JUST THERE AND, THEREFORE,
TO ALLOW IT TO BE THE WAY IT IS DOESN'T HURT
FACEBOOK.

BUT THAT DENIES FACEBOOK THE RIGHT TO
MAKE THE COMPANY INTO SOMETHING BETTER THAN IT IS,
TO PURSUE IT ON AN ECONOMICALLY VIABLE BASIS, TO
EXPLOIT IT IN THE WAY THAT IT WOULD WANT TO EXPLOIT
IT SO THAT THE TIME VALUE OF AN EIGHT MONTH DELAY
HAS AN EFFECT ON FACEBOOK.

SO I CAN'T IGNORE ONE IN FAVOR OF THE
OTHER, ESPECIALLY UNDER CIRCUMSTANCES WHERE I'M
PERSUADED THAT THE PARTIES SAT DOWN AT A BARGAINING
TABLE AND THEY AGREED TO THAT EXCHANGE.

MR. BARRETT:  SURE, SURE.

WELL, YOUR HONOR, IF I COULD -- YOUR
HONOR SUMMED IT UP VERY WELL, AND IF I COULD JUST
RESPOND BRIEFLY TO THAT?

I DO THINK IT IS A SITUATION WHERE, YOU
KNOW, YOU REALLY ARE BALANCING THE HARDSHIPS OR
DETRIMENTS TO THE PARTIES, IF YOU WILL.

AND I'LL JUST REMIND THE COURT THAT THE
RECORD DOES INDICATE THAT, FIRST OF ALL, ANY COSTS
ASSOCIATED WITH ANY LITIGATION THAT CONNECTU IS

1    INVOLVED IN, AND THAT INCLUDES BOTH THE APPEAL AND

2    THE DISPUTE WITH QUINN, EMANUEL, THE RECORD IS VERY

3    CLEAR THAT THOSE COSTS ARE NOT BEING PAID BY

4    CONNECTU.  THEY'RE BEING PAID BY THE SHAREHOLDERS.

5         SO ONE ISSUE THAT HAD BEEN RAISED BEFORE

6    WAS, IN EFFECT, THAT THE COMPANY WAS GETTING --

7    LOOTED WOULD BE THE WRONG WORD -- BUT WAS INCURRING

8    DEBTS OR OBLIGATIONS, AND THAT IS SIMPLY NOT THE

9    CASE.  THE RECORD SHOWS THAT IT'S NOT THE CASE.

10        THERE'S ALSO, OF COURSE, THE CLAIM THAT

11   QUINN, EMANUEL HAS MADE AGAINST CONNECTU, BUT THAT

12   CLAIM PREEXISTED, YOU KNOW, THIS, THIS JUDGMENT

13   PROCESS.  THAT CLAIM WAS MADE AS EARLY AS LAST

14   APRIL.

15        SO THAT'S -- THAT ISN'T CHANGED BY

16   ANYTHING THAT'S GOING TO HAPPEN HERE.

17        AND THEN, FINALLY, WITH RESPECT TO THE

18   CONNECTU BUSINESS, WHAT WAS SAID HERE ON AUGUST 6TH

19   WAS THAT CONNECTU, OR THE SHAREHOLDERS, DON'T HAVE

20   ANY OBJECTION TO MR. FISHER OPERATING THE BUSINESS,

21   AND WE TALKED ABOUT THE BUSINESS ESSENTIALLY

22   REQUIRING WRITING A CHECK FOR A SERVER ONCE A

23   MONTH.

24        AND IN FACT, MR. UNDERHILL SAID, "YOUR

25   HONOR, WE WOULD EVEN BE WILLING TO LET FACEBOOK

OPERATE THE BUSINESS."

AND SO IT'S NOT -- AND MR. -- AND
MR. FISHER INDICATED THAT AT LEAST IF IT WAS NOT A,
A COMPLEX PROJECT, HE WOULD BE WILLING TO UNDERTAKE
THAT RESPONSIBILITY.

SO I UNDERSTAND WHAT THE COURT IS SAYING
ABOUT FACEBOOK'S RIGHT TO TAKE THE CONNECTU
BUSINESS AND PERHAPS TURN IT INTO SOMETHING ELSE.

THEY'VE NEVER GIVEN ANY INDICATION THAT
THEY HAVE ANY INTEREST IN DOING THAT.

THEY HAVE GIVEN EXPRESS INDICATIONS THAT
THEY WOULD LIKELY DROP THE APPEAL OR RAISE THE
DOMINIX LITIS DOCTRINE AND CONTEST THE FOUNDERS'
STANDING TO BE INVOLVED IN THE APPEAL.

SO I CERTAINLY UNDERSTAND THAT.

WE WOULD BE HAPPY TO HAVE THE APPEAL
HEARD IN THE NINTH CIRCUIT AS SOON AS THAT COULD
POSSIBLY BE ACCOMPLISHED.

WE FILED OUR BRIEF ON THE DAY THAT WE
WERE ORDERED TO IN ACCORDANCE WITH THE COURT'S
CONSOLIDATION ORDER.

FACEBOOK JUST YESTERDAY REQUESTED AND
RECEIVED A 14 DAY EXTENSION IN THE TIME FOR THE
FILING OF THEIR BRIEF.

I DON'T KNOW THAT THAT MAKES A BIG

1  DIFFERENCE IN WHEN THE CASE GETS ARGUED IN THE

2  NINTH CIRCUIT, BUT WE'RE TRYING TO PURSUE THE

3  APPEAL AS PROMPTLY AS WE CAN.

4         SO I THINK THAT YOU'RE RIGHT THAT THERE

5  IS, YOU KNOW, A POTENTIAL INJURY OF SOME KIND TO

6  FACEBOOK FROM THE DELAY, BUT THEY HAVE NOT

7  IDENTIFIED ANYTHING CONCRETE IN THE MANNER THAT WE

8  HAVE, AND I THINK IF YOU'RE GOING TO BALANCE THOSE

9  TWO THINGS, IT IS APPROPRIATE -- AND THEN, I GUESS,

10 UNDER THE STANDARD, YOU LOOK AT THE LIKELIHOOD OF

11 SUCCESS ON APPEAL.

12        WE HAVE FILED OUR APPEAL BRIEF AND THOSE

13 ARGUMENTS ARE THERE.  OBVIOUSLY THEY DIDN'T

14 PERSUADE YOUR HONOR WHEN WE WERE HERE EARLIER, BUT

15 WE DO THINK THAT THEY'RE, YOU KNOW, VERY

16 SUBSTANTIAL ARGUMENTS AND LIKELY TO PREVAIL.

17        AND ON THAT BASIS, WE WOULD, AGAIN,

18 RESPECTFULLY SUGGEST THAT, YOU KNOW, WE'LL RAISE

19 THE JURISDICTIONAL ISSUE AND ASK THE COURT TO LEAVE

20 THE CONSIDERATION WITH THE SPECIAL MASTER.

21        THAT WOULD ALSO OBVIATE ANY ISSUES WITH

22 RESPECT TO THE RELEASES AND WITH RESPECT TO THE

23 DISMISSALS, PARTICULARLY THE DISMISSAL OF THE

24 MASSACHUSETTS CASE.

25        AND, FINALLY, IT WOULD ALSO OBVIATE ANY

```
11:07:51  1    ISSUE WITH RESPECT TO QUINN, EMANUEL, BECAUSE

11:07:54  2    QUINN, EMANUEL WOULD CONTINUE TO BE PROTECTED BY

11:07:58  3    THE FACT THAT THE CONSIDERATION WAS SIMPLY, IN

11:08:03  4    EFFECT, IN ESCROW IN THE HANDS OF THE SPECIAL

11:08:06  5    MASTER.

11:08:07  6         SO THE COURT WOULDN'T HAVE TO GET INTO

11:08:08  7    THAT ISSUE.

11:08:09  8         THE COURT:  LET ME ASK ONE FINAL

11:08:11  9    QUESTION, AND THAT IS YOU FOCUSSED SEVERAL TIMES ON

11:08:13 10    THE POTENTIAL THAT, AS THE OWNER OF THE SHARES OF

11:08:19 11    CONNECTU, FACEBOOK WOULD POTENTIALLY MOVE TO

11:08:25 12    DISMISS THE APPEAL.

11:08:27 13         IS THERE ANY OTHER HARM THAT YOU WOULD

11:08:30 14    CITE TO THE COURT THAT -- OR DETRIMENT THAT WOULD

11:08:36 15    BE SUFFERED BY CONNECTU IF I ORDER THAT THE STOCK

11:08:43 16    THAT IS SUBJECT TO THE SETTLEMENT BE TRANSFERRED?

11:08:46 17         MR. BARRETT:  WELL, YOUR HONOR, I GUESS,

11:08:49 18    YOU KNOW, THERE -- FOR WHATEVER EXISTENCE THE

11:08:54 19    CONNECTU BUSINESS HAS, TO THE EXTENT THAT THAT WAS

11:08:57 20    CHANGED BY FACEBOOK AFTER THEY GOT CONTROL OF THE

11:09:02 21    ENTITY, AND THERE WERE A REVERSAL SOME MONTHS FROM

11:09:06 22    NOW IN THE NINTH CIRCUIT, PRESUMABLY COMING BACK

11:09:12 23    BEFORE YOUR HONOR AFTER A REVERSAL WOULD BE

11:09:15 24    NECESSARY TO PUT THE PARTIES BACK IN THE POSITION

11:09:17 25    THEY WERE IN BEFORE THE SETTLEMENT WAS IMPLEMENTED
```

AND, YOU KNOW, I DON'T KNOW WHAT DIFFICULTIES THERE

MIGHT BE IN, YOU KNOW, RESTORING THAT PRIOR STATUS

QUO WITH RESPECT TO, WITH RESPECT TO CONNECTU.

I SUPPOSE THEY COULD, YOU KNOW, PUT THE

COMPANY OUT OF EXISTENCE.

THERE ARE A LOT OF THINGS THAT COULD

HAPPEN AND WE JUST, AND WE JUST DON'T KNOW.

THERE'S ANOTHER ELEMENT OF UNCERTAINTY

WHICH I WOULD --

THE COURT:  WELL, WOULDN'T YOU THINK THAT

THAT WOULD HAVE TO GO THROUGH THE NINTH CIRCUIT

BEFORE THAT TAKES PLACE?

IN OTHER WORDS, YOU WOULD ENVISION A

CIRCUMSTANCE WHERE, WITH THE APPEAL PENDING,

FACEBOOK WOULD TAKE THE STOCK, DECIDE, SINCE IT'S

THE OWNER, IT'S NOW GOING TO TAKE OUT OF THE

ORDINARY BUSINESS DECISIONS ABOUT THE COMPANY, AND

WOULD THEN PUT THE, THE -- PUT US ALL IN A

CIRCUMSTANCE WHERE THAT COULD NOT BE DONE.

YOUR ARGUMENT IS THEY COULD DO THAT EVEN

THOUGH THE APPEAL IS STILL PENDING?

MR. BARRETT:  I -- YOU KNOW, I THINK THEY

COULD, YOUR HONOR.  I MEAN, I THINK THAT'S EXACTLY,

AS I UNDERSTAND IT, WHY THEY, WHY THEY WANT TO GET

HOLD OF THE STOCK, GET HOLD OF THE OWNERSHIP

RIGHTS.  THEY HAVE SAID THAT.

I MEAN, IN EFFECT, THAT'S WHAT FACEBOOK
IS SAYING.  WE'RE WAITING.  WE HAVE -- YOU KNOW, WE
BARGAINED FOR THIS AND WE WANT TO EXERCISE DOMINION
AND CONTROL OVER THIS AS SET.  THAT COULD MEAN
ANYTHING.

AND UNLESS, YOU KNOW, THIS COURT ACTS OR
THE NINTH CIRCUIT ISSUES A STAY, I WOULD -- YOU
KNOW, I'M NOT SURE WHAT IT IS OTHER THAN, YOU KNOW,
THEIR OWN JUDGMENT THAT WOULD LIMIT THEIR POWER TO
DO THAT.

I MEAN, IT'S LIKE -- IT'S LIKE ANY OTHER
OWNERSHIP INTEREST.  ONCE YOU HAVE IT, IT'S YOURS.

I CERTAINLY WOULD EXPECT THEM TO ARGUE
THAT, AND WE MIGHT ARGUE SOMETHING TO THE CONTRARY
IF THAT HAPPENED, BUT --

THE COURT:  CAN I HAVE YOU TURN YOUR
ARGUMENT TO THE QUINN, EMANUEL LIEN ISSUE?

MR. BARRETT:  CERTAINLY, YOUR HONOR.

THE COURT:  IF I'M DISPOSED TO ORDER THE
IMPLEMENTATION OF THE JUDGMENT BY ORDERING THE
MASTER TO MAKE THE EXCHANGES THAT --

MR. BARRETT:  UM-HUM.

THE COURT:  -- ARE COVERED BY THE
SETTLEMENT AGREEMENT, WHAT WOULD YOU HAVE THE COURT

43

11:11:45 1    DO, IF ANYTHING, WITH RESPECT TO THE QUINN, EMANUEL

11:11:48 2    LIEN?

11:11:49 3         MR. BARRETT:  YOUR HONOR, I -- QUITE

11:11:51 4    RESPECTFULLY, I WOULD SAY YOU SHOULD NOT TAKE ANY

11:11:57 5    ACTION AT ALL WITH RESPECT TO THE QUINN, EMANUEL

11:12:01 6    LIEN.

11:12:02 7         THE REASON THAT I SAY THAT IS THERE'S

11:12:05 8    A -- THERE'S A -- THERE'S SOME CALIFORNIA CASES,

11:12:08 9    ONE OF WHICH QUINN, EMANUEL CITES IN THEIR BRIEF,

11:12:12 10   CALLED CARROLL AGAINST INTERSTATE BRANDS, 99

11:12:17 11   CAL.APP 4TH 1168, AND THEY CITE THAT CASE FOR THE

11:12:23 12   PROPOSITION, ESSENTIALLY, THAT THE COURT IN WHICH

11:12:29 13   THE MAIN ACTION IS PENDING, THE ACTION WHICH GIVES

11:12:33 14   RISE TO THE LIEN, THE ACTION IN WHICH THE ATTORNEYS

11:12:37 15   PERFORMED THEIR SERVICES, THAT COURT ESSENTIALLY

11:12:39 16   HAS NO -- DOES NOT HAVE THE POWER TO MAKE AN

11:12:42 17   ADJUDICATION WITH RESPECT TO THE LIEN.

11:12:44 18        THE ADJUDICATION OF THE LIEN RIGHTS NEEDS

11:12:47 19   TO BE MADE IN A SEPARATE PROCEEDING IN A COURT THAT

11:12:51 20   IS, IS CONSIDERING THAT ISSUE.

11:12:54 21        AND AS YOUR HONOR WILL RECALL, QUINN,

11:12:58 22   EMANUEL ORIGINALLY FILED FOR ARBITRATION OF THE FEE

11:13:02 23   ISSUE IN NEW YORK BACK IN APRIL.

11:13:04 24        THERE WERE SOME JUDICIAL PROCEEDINGS IN

11:13:06 25   NEW YORK OVER THE SUMMER WHICH RESULTED IN THE

11:13:08 1  NEW YORK COURT ENTERING AN ORDER COMPELLING

11:13:13 2  ARBITRATION, AND THE PARTIES ARE NOW BACK IN THE

11:13:18 3  ARBITRABLE FORUM.

11:13:21 4          I BELIEVE THERE IS AT LEAST AN AGREEMENT

11:13:22 5  IN PRINCIPLE ON SELECTION OF THE ARBITRATORS.

11:13:26 6          YESTERDAY THE CONNECTU FOUNDERS MADE,

11:13:33 7  MADE A CLAIM IN THE ARBITRATION PROCEEDING

11:13:38 8  THEMSELVES.

11:13:39 9          SO THE ARBITRATION IS, IS PROCEEDING.

11:13:48 10         BUT THE BOTTOM LINE IS THAT IF, IF

11:13:56 11 QUINN -- IF QUINN HAD AN INTEREST IN ATTACHING THE

11:14:05 12 FUNDS AND THE STOCK THAT WOULD GO OUT UNDER, UNDER

11:14:08 13 YOUR HONOR'S QUESTION, THEY, THEY HAD PROCEDURES

11:14:14 14 THEY HAD EITHER IN COURT OR THROUGH THE ARBITRATION

11:14:17 15 FORUM, WHICH ARE THE APPROPRIATE PROCEDURES, FOR

11:14:22 16 ASSERTING THAT CLAIM.

11:14:29 17         FOR THIS COURT TO GET INTO -- AND THE

11:14:31 18 REASON THAT IT'S AN ISSUE, YOUR HONOR, IS THAT

11:14:32 19 THERE ARE SOME VERY COMPLEX FACTUAL ISSUES THAT

11:14:35 20 YOUR HONOR WOULD HAVE TO DECIDE JUST IN TERMS OF

11:14:37 21 EITHER THE PROCEDURE FOR WHAT TO DO WITH THOSE

11:14:41 22 ASSETS, OR WE WOULD ARGUE HOW MUCH OF THE

11:14:47 23 CONSIDERATION SHOULD BE DISTRIBUTED DIRECTLY TO THE

11:14:50 24 FOUNDERS?  HOW MUCH SHOULD BE, SHOULD BE SUBJECT TO

11:14:55 25 HOLD BACK WITH RESPECT TO CONNECTU?  HOW DO YOU

45

1   VALUE THEIR PERCENTAGE RETAINER AMOUNT?  DO YOU

2   VALUE IT BASED ON THE HIGHER VALUE?  DO YOU VALUE

3   IT BASED ON THE LOWER STOCK VALUE THAT YOUR HONOR

4   IS FAMILIAR WITH?  DO YOU GIVE THEM ALL CASH?  DO

5   THEY GET TO HOLD BACK ALL CASH?  DO THEY GET TO

6   HOLD BACK THE CONTINGENT PERCENTAGE ON THE CASH AND

7   THE SAME PERCENTAGE ON THE STOCK?

8        THERE ARE A LOT OF DIFFERENT QUESTIONS

9   THAT I'M NOT SURE THIS -- AND SOME OF THOSE -- HOW

10  DO YOU TAKE ACCOUNT OF THE FACT THAT THE CONNECTU

11  FOUNDERS ARE MAKING A CLAIM AGAINST QUINN THAT IS

12  MUCH LARGER THAN THE AMOUNT OF THE FEES THAT ARE

13  BEING CLAIMED?

14       DO YOU MAKE ANY, ANY PRELIMINARY

15  DETERMINATION ON THAT WHEN YOU, WHEN YOU CONSIDER

16  HOW TO, HOW TO DEAL WITH THE LIEN?

17       AND, YOUR HONOR, SO I WOULD SUBMIT THAT

18  THERE ARE A LOT OF ISSUES THERE THAT IT WOULD BE

19  MUCH MORE APPROPRIATE FOR THE FORUM THAT'S

20  ADDRESSED IN THE FEE LIEN TO ADDRESS RATHER THAN

21  ARE ADDRESSED IN THIS COURT.

22       BUT IF YOU WERE GOING TO ADDRESS THE

23  ISSUE -- AND I WOULD THINK THAT YOU, YOU KNOW, AND

24  TO TRY TO BE FAIR ABOUT IT TO BOTH SIDES, YOU WOULD

25  NEED TO GET INTO THAT.

FINALLY, WITH RESPECT TO THE CONCERN THAT
MR. CHATTERJEE RAISED ABOUT FACEBOOK POTENTIALLY
BEING SUBJECT TO A CLAIM FROM QUINN, EMANUEL IN THE
FIRST PLACE, I THINK THAT THAT'S A VERY
HYPOTHETICAL CIRCUMSTANCE TO SAY THE LEAST.

IT PRESUMES THAT THERE'S GOING TO BE A
NET RECOVERY BY, BY QUINN, EMANUEL.

IT ALSO PRESUMES THAT -- THAT THAT --
THAT THAT JUDGMENT IN FAVOR OF QUINN, EMANUEL
WOULDN'T, YOU KNOW, WOULDN'T BE PAID BY THE PARTIES
ON THE CONNECTU SIDE.

BUT IN ANY EVENT, YOUR HONOR, I THINK
WITH RESPECT TO MR. CHATTERJEE'S -- WITH RESPECT TO
MR. CHATTERJEE'S CONCERN, YOU CAN GET GUIDANCE BY
TURNING BACK TO THE TERM SHEET AND SETTLEMENT
AGREEMENT, AS THE COURT HAS DONE A NUMBER OF TIMES
IN THIS CASE, TO DECIDE SOME OF THESE ISSUES OF
INTERPRETATION.

AND YOU'LL RECALL THAT WHAT THE TERM
SHEET SAYS IS ALL CONNECTU STOCK, I'M READING FROM
PARAGRAPH 7, IN EXCHANGE FOR X DOLLARS IN CASH, AND
X COMMON SHARES AND Y COMMON SHARES IN FACEBOOK.

IT DOESN'T SAY ANYTHING ABOUT ANY
PROTECTION FOR FACEBOOK FROM RIGHTS OF THIRD
PARTIES, YOU KNOW, ANY KIND OF LIEN HOLDERS OR

1  CLAIMANTS THAT MIGHT EXIST IN THE WORLD AGAINST,

2  AGAINST THE CONNECTU PARTIES.

3          AND I THINK, YOU KNOW, IF THE COURT IS,

4  YOU KNOW, INCLINED TO MOVE IN THAT DIRECTION, THAT

5  WITH RESPECT TO FACEBOOK, YOU KNOW, CASH MEANS

6  CASH.  IT DOESN'T MEAN A CHECK PAYABLE TO TWO

7  PARTIES.  IT DOESN'T MEAN A CHECK IN A TRUST.

8          IT MEANS -- YOU KNOW, IN THIS CASE IT

9  WOULD BE SOME RATHER LARGE SUITCASES, BUT THAT'S

10 LITERALLY WHAT THEY SAID.

11         AND IF THEY WANTED TO PROTECT THEMSELVES

12 AGAINST THESE KINDS OF CLAIMS, AS THE COURT HAS

13 SAID IN OTHER CONTEXTS, THAT SHOULD HAVE BEEN

14 SOMETHING THAT WAS INCLUDED IN THE AGREEMENT.

15         SO IF, IF THERE'S A POTENTIAL PROBLEM FOR

16 FACEBOOK -- AND, AGAIN, I THINK IT'S A VERY REMOTE

17 ONE -- IT'S REALLY A PROBLEM OF THEIR OWN MAKING IN

18 THAT REGARD.

19         THE COURT:  THANK YOU, COUNSEL.

20         DID YOU WANT TO ADDRESS THE COURT ON

21 BEHALF OF QUINN, EMANUEL?

22         MR. VAN DALSEM:  IF THE COURT IS INCLINED

23 TO HEAR US, I WOULD LIKE TO, YOUR HONOR.

24         THE COURT:  OF COURSE.

25         MR. VAN DALSEM:  AND THE REASON I SAY

THAT IS WE'RE NOT A PARTY AND WE HAVEN'T

INTERVENED, AND I'LL TOUCH UPON WHY WE HAVEN'T DONE

THAT IN MY REMARKS.

I AGREE WITH WHAT MR. BARRETT SAYS WITH

ONE SIGNIFICANT EXCEPTION, AND THAT SIGNIFICANT

EXCEPTION IS THAT THE COURT'S PROPOSAL SET FORTH IN

THE OSC WOULD ALTER THE STATUS QUO THAT WOULD HAVE

EXISTED BUT FOR THIS DISPUTE.

QUINN, EMANUEL HAS A CONTRACTUAL LIEN

OVER THIS RECOVERY, AND IN THE NORMAL COURSE,

REALLY BECAUSE OF THE LEVIN CASE WHICH WE'VE CITED,

A DEFENDANT PAYING A PLAINTIFF WILL ISSUE THE

PAYMENT INSTRUMENTS, BE THEY CHECKS OR OTHERWISE,

JOINTLY TO THE PLAINTIFF AND THEIR COUNSEL.

AND THE REASON THEY DO THAT IS BECAUSE

THE LEVIN CASE IN CALIFORNIA HOLDS THAT IF THEY'RE

ON NOTICE OF A CONTRACTUAL RIGHT OF THE LAWYERS TO

RECEIVE A PORTION OF THAT MONEY AND THEY FAIL TO

INCLUDE THE LAWYERS AS A PAYEE, THEN THE DEFENDANT,

IN THIS CASE FACEBOOK, FACES POTENTIAL LIABILITY.

SO IN THE NORMAL COURSE OF THINGS, HAD

THIS SETTLEMENT NOT BEEN CONTESTED AND IN THE

ABSENCE OF SOME WRITTEN INSTRUCTION TO FACEBOOK TO

DO OTHERWISE, FACEBOOK WOULD HAVE ISSUED THE

CONSIDERATION JOINTLY TO CONNECTU, ITS FOUNDERS,

AND THE FIRM.

11:20:20 2      AND I THINK FACEBOOK HAS TAKEN THAT

11:20:23 3 POSITION HERE AND HAS CONFIRMED THAT THAT'S WHAT

11:20:25 4 WOULD HAVE HAPPENED IN THE NORMAL COURSE.

11:20:27 5      IF THE COURT FOLLOWS THROUGH ON WHAT IT

11:20:29 6 STATED IN THE OSC, IT WOULD BE DELIVERING THE

11:20:32 7 CONSIDERATION FROM FACEBOOK DIRECTLY TO THE

11:20:34 8 CONNECTU FOUNDERS WHO COULD -- WHO WOULD THEN BE

11:20:38 9 FREE TO DO WITH IT WHATEVER THEY WISH, AND THAT

11:20:40 10 WOULD ALTER THE STATUS QUO THAT WOULD HAVE EXISTED

11:20:43 11 BUT FOR THIS DISPUTE.

11:20:45 12      AND THAT -- IN MY OPINION, THAT IS NOT

11:20:47 13 SOMETHING THE COURT SHOULD DO BECAUSE IT WOULD

11:20:49 14 DESTROY THE LIEN RIGHT.

11:20:51 15      I AGREE WITH MR. BARRETT THAT IT IS NOT

11:20:53 16 FOR THIS COURT TO ADJUDICATE ANY PORTION OF THE

11:20:56 17 DISPUTE BETWEEN QUINN, EMANUEL AND ITS FORMER

11:20:59 18 CLIENTS.

11:20:59 19      THERE'S AN ARBITRATION CLAUSE.  WE HAVE

11:21:01 20 COMMENCED AN ARBITRATION IN NEW YORK BEFORE THE

11:21:05 21 TRIPLE A.  THEY TRIED TO ENJOIN IT.

11:21:07 22      THAT WAS DEFEATED.  JUSTICE LOWE IN THE

11:21:10 23 SUPREME COURT IN NEW YORK HELD THAT THE MATTER WAS

11:21:13 24 ARBITRABLE.  THEY'VE ASSERTED COUNTERCLAIMS.

11:21:15 25      AND THAT IS THE PROPER FORUM IN WHICH TO

11:21:17 1    RESOLVE ALL OF THESE QUESTIONS AS BETWEEN QUINN,

11:21:20 2    EMANUEL AND ITS FORMER CLIENTS.

11:21:22 3         WHAT SHOULDN'T HAPPEN IN THE MEANTIME IS

11:21:24 4    THE FORMER CLIENTS OBTAIN ALL OF THE MONEY AND THEY

11:21:27 5    CAN DO WITH IT WHATEVER THEY -- WITH THAT MONEY

11:21:28 6    WHATEVER THEY WISH ONCE THEY HAVE THEIR HANDS ON IT

11:21:31 7    AND THEREBY DEFEAT OUR LIEN INTEREST.

11:21:34 8         AND THE COURT'S OSC WOULD ALTER WHO WOULD

11:21:37 9    NORMALLY BE THE PROTECTION FOR QUINN, EMANUEL UNDER

11:21:41 10   THESE CIRCUMSTANCES.

11:21:42 11        THE COURT:  WELL, THE OBLIGATION THAT

11:21:46 12   YOU'RE CITING OF A CONTRACTUAL LIEN HAS NOT BEEN

11:21:52 13   ADJUDICATED AS OF YET; CORRECT?

11:21:54 14        MR. VAN DALSEM:  WELL, THE LIEN IS

11:21:56 15   PERFECTED AND WE'VE CITED CASES UPON EXECUTION OF

11:21:58 16   THE FEE AGREEMENT.  THE MOMENT THAT AGREEMENT WAS

11:22:01 17   SIGNED, THE LIEN WAS PERFECTED.

11:22:03 18        THE COURT:  WHAT DOES IT MEAN FOR A LIEN

11:22:05 19   TO BE PERFECTED?

11:22:06 20        MR. VAN DALSEM:  THAT MEANS THAT QUINN,

11:22:08 21   EMANUEL, AS COUNSEL FOR THE CONNECTU PARTIES, HAS A

11:22:11 22   LIEN OVER WHAT WERE THEN CAUSES OF ACTION, WHICH

11:22:14 23   WERE THEN CONVERTED INTO THINGS OF VALUE AS PART OF

11:22:17 24   THE SETTLEMENT.

11:22:17 25        SO WE HAVE AN ABILITY TO THEN FORECLOSE

ON THAT LIEN, AND CALIFORNIA LAW IS VERY CLEAR THAT

WE -- THAT THAT FORECLOSURE PROCEEDING DOES NOT

HAPPEN HERE.  IT HAS TO HAPPEN IN AN INDEPENDENT

ACTION BROUGHT BY THE LAWYERS AGAINST THE FORMER

CLIENTS.

WE'VE DONE THAT.  THAT'S BEFORE THE

TRIPLE A IN NEW YORK AND THAT WILL PROCEED HOWEVER

IT PROCEEDS.

THE COURT:  THE -- YOUR -- THE

OBLIGATION, THOUGH, IS ONLY TO FACEBOOK WITH

RESPECT TO THE LIEN?

MR. VAN DALSEM:  THE OBLIGATION --

FACEBOOK FACES POTENTIAL LIABILITY IF THESE FUNDS

ARE TURNED OVER TO THE CONNECTU PARTIES WITHOUT

ACCOUNTING FOR THAT LIEN.

THE COURT:  RIGHT.  BUT -- AND I GUESS SO

DO THE FOUNDERS AND CONNECTU?

MR. VAN DALSEM:  THAT'S CORRECT.

THE COURT:  ALL RIGHT.  BUT IF THE FUNDS

ARE NEVER TURNED OVER TO FACEBOOK, WHAT HAPPENS?

MR. VAN DALSEM:  YOU MEAN NEVER TURNED

OVER TO CONNECTU?

THE COURT:  NO, NEVER TURNED OVER BY

FACEBOOK.

MR. VAN DALSEM:  OH.  IF THE FUNDS ARE

11:23:20 1

11:23:23 2

11:23:25 3

11:23:25 4

11:23:28 5

11:23:30 6

11:23:32 7

11:23:33 8

11:23:35 9

11:23:40 10

11:23:41 11

11:23:44 12

11:23:46 13

11:23:49 14

11:23:52 15

11:23:53 16

11:23:55 17

11:23:56 18

11:23:56 19

11:23:58 20

11:24:00 21

11:24:03 22

11:24:06 23

11:24:08 24

11:24:10 25

NEVER TURNED OVER BY FACEBOOK, OR IN THESE

CIRCUMSTANCES, IF THEY STAY WITH THE SPECIAL

MASTER, WE'RE FINE.

      MR. BARRETT IS CORRECT THAT QUINN,

EMANUEL REMAINS PROTECTED IF THE CONSIDERATION WAS

TO STAY WITH THE SPECIAL MASTER.

      THE COURT:  YEAH.  THE REASON I'M

CONCERNED ABOUT SOME KIND OF A JOINT PAYMENT IS,

FIRST, I WOULDN'T KNOW TO WHOM TO GIVE THE MONEY OR

THE CONSIDERATION TO.

      IF IT'S JOINT -- IF IT'S IN SOME JOINT

NAME, I DON'T KNOW WHERE IT PUT IT.  AND UNLESS ALL

OF YOU COME TO ME AND TELL ME, WE'VE SET UP

SOMETHING FOR THAT PURPOSE, I WOULD HAVE TO CHOOSE

WHERE TO PUT THAT.

      MR. VAN DALSEM:  THAT'S -- I DON'T

BELIEVE THAT'S THE CASE, AND I CAN EXPLAIN.

      THE COURT:  ALL RIGHT.

      MR. VAN DALSEM:  LET'S TAKE A SIMPLE

EXAMPLE.  LET'S SAY THAT THE TOTAL SETTLEMENT

CONSIDERATION WAS $100 AND THERE WAS GOING TO BE A

CHECK MADE PAYABLE TO WHOMEVER, AND WE'LL GET TO

THAT, FOR $100.

      THE WAY THIS WOULD HAPPEN IN THE NORMAL

COURSE IS FACEBOOK WOULD WRITE THE CHECK TO

11:24:12
11:24:12
11:24:16
11:24:18
11:24:21
11:24:23
11:24:26
11:24:28
11:24:31
11:24:34
11:24:37
11:24:39
11:24:40
11:24:41
11:24:45
11:24:46
11:24:49
11:24:50
11:24:53
11:24:54
11:24:56
11:24:59
11:25:03
11:25:06
11:25:08

1    CONNECTU AND ITS LAWYERS, QUINN, EMANUEL, URQUHART,

2    OLIVER & HEDGES.

3          THEY THEN HAND THE CHECK TO ONE OF US.

4    WE EITHER SIT DOWN AND COME TO AN AGREEMENT, WHICH

5    IS OBVIOUSLY WHAT WE WOULD TRY TO DO UNDER THE

6    CIRCUMSTANCES, AND IF WE CAN'T COME TO AN AGREEMENT

7    AS TO HOW MUCH OF THAT MONEY SHOULD BE SEQUESTERED

8    TO SECURE THE CLAIM -- WHICH BY THE WAY, THE

9    CONNECTU FOUNDERS, IN THEIR BRIEF, AGREE THAT SOME

10    PORTION OF THAT SHOULD REMAIN LOCKED UP IN ORDER TO

11    SECURE THE CLAIM.  THE ONLY DISPUTE IS HOW MUCH.

12          BUT --

13          THE COURT:  BUT DOESN'T THE FACT THAT

14    IT'S MADE PAYABLE EQUALLY ADJUDICATE SOMETHING?  IT

15    MEANS THAT IT'S 50-50?

16          MR. VAN DALSEM:  NO, NOT AT ALL.

17          IF IT'S PAID JOINTLY, THERE IS -- THAT IS

18    NOT A DETERMINATION AS TO WHAT PERCENTAGE GOES TO

19    WHAT PAYEE.

20          SO WHAT WOULD HAPPEN IN THE NORMAL COURSE

21    IS THAT THE PARTIES WOULD EITHER AGREE UPON THAT

22    AND AGREE TO SEQUESTER AND PUT INTO TRUST A CERTAIN

23    AMOUNT, AND IF WE CAN'T AGREE, THE PROPER FORUM TO

24    DECIDE THAT WOULD BE THE ARBITRATORS IN NEW YORK

25    BEFORE THE TRIPLE A WHO ARE HANDLING THAT

| | |
|---|---|
| 11:25:10 | 1 |

INDEPENDENT ACTION.

THE COURT:  BUT YOU EACH WOULD HAVE A
VETO?  IN OTHER WORDS, YOU'D OWN IT JOINTLY.  THE
FUNDS WOULD BE CONVERTED TO A PARTNERSHIP,
ESSENTIALLY, WITH EACH HAVING A 50 PERCENT
INTEREST.

MR. VAN DALSEM:  NOT TRUE.

WHAT WOULD HAPPEN IS WHEN THAT CHECK
COMES IN AS, THE $100 CHECK IN MY EXAMPLE PAYABLE
TO THE FORMER CLIENTS AND THE LAW FIRM, BOTH
PARTIES WOULD HAVE TO ENDORSE THAT CHECK BEFORE ANY
BANK WOULD CASH IT.

THE COURT:  THAT'S WHAT I MEAN.  SO EACH
WOULD HAVE A VETO.

MR. VAN DALSEM:  WELL, THAT'S CORRECT.

SO WE EITHER COME TO AN AGREEMENT, OR IF
WE CAN'T COME TO AN AGREEMENT, WE GO TO THE PROPER
FORUM TO RESOLVE THAT, WHICH IS THE ARBITRATORS,
AND SAY, HERE'S A PAYMENT INSTRUMENT, IT'S
NON-NEGOTIABLE WITHOUT EVERYONE AGREEING TO IT, WE
CAN'T AGREE, SO THEREFORE, YOU, THE ARBITRATORS,
ARE THE PROPER FORUM TO DECIDE WHAT, IF ANY,
PORTION OF THAT SHOULD REMAIN SUBJECT TO THE LIEN
INTERESTS AND SEQUESTERED DURING THE PENDENCY OF
THAT ARBITRATION.

55

THE COURT: RIGHT. SO ESSENTIALLY, THEN, THE MONEY IS HELD IN ARBITRATION UNTIL THE ARBITRATION IS OVER.

MR. VAN DALSEM: OR SOME PORTION OF THE MONEY.

THE COURT: THE WHOLE THING IS. IF YOU CAN'T AGREE, WOULDN'T IT TAKE AN ADJUDICATION BY THE ARBITRATOR OF THE PROPORTIONATE AMOUNT BEFORE IT COULD BE RELEASED?

MR. VAN DALSEM: THEY COULD MAKE AN INTERIM AWARD. USING MY $100 EXAMPLE -- I'M NOT SUGGESTING WHAT THE CONTINGENCY FEE IS, BUT IN A TYPICAL CONTINGENCY CASE, LET'S SAY IT'S A THIRD, WHAT THE ARBITRATORS MIGHT DO UNDER THE CIRCUMSTANCES IS SAY, TAKE 33 CENTS, LET'S PUT THAT INTO A SEQUESTERED ACCOUNT, AND TAKE THE OTHER 66 OR 67 CENTS AND GIVE IT TO THE CLIENTS WHO OWN THOSE FUNDS AND OVER WHICH THE FORMER LAW FIRM HAS NO CLAIM.

SO THAT'S TYPICALLY WHAT WOULD HAPPEN UNDER THESE CIRCUMSTANCES.

THE COURT: THAT COULD HAPPEN.

BUT YOU COULD AVOID ALL THAT BY AGREEING TO THAT BEFORE IT GOES TO THE ARBITRATORS. IT PRESUMES THAT THE ARBITRATORS WILL COME TO THAT

11:26:55
11:26:57
11:27:03
11:27:07
11:27:10
11:27:15
11:27:18
11:27:19
11:27:22
11:27:24
11:27:26
11:27:28
11:27:31
11:27:33
11:27:35
11:27:37
11:27:41
11:27:45
11:27:48
11:27:51
11:27:53
11:27:56
11:27:59
11:28:01
11:28:04

1    DETERMINATION.

2            WHAT WOULD BE THE EFFECT IF I -- IF THERE

3    WAS A PROPOSED COMPLAINT AND INTERVENTION THAT WAS

4    SUBMITTED TO THE COURT, WHAT WOULD BE THE EFFECT OF

5    THE COURT ORDERING FACEBOOK TO FILE THAT COMPLAINT

6    AND INTERPLEADING THE FUNDS INTO THE COURT?

7            MR. VAN DALSEM:  THAT IS A SOLUTION THAT

8    IS VIABLE.  IT IS -- IT IS SUBJECT TO A COUPLE OF

9    POTENTIAL PROBLEMS.

10           NUMBER ONE, AS I THINK MR. BARRETT

11   POINTED OUT, YOU WOULD HAVE DUAL PROCEEDINGS, OR

12   MR. CHATTERJEE ACTUALLY POINTED OUT, YOU WOULD HAVE

13   DUAL PROCEEDINGS, NUMBER ONE, HERE AND IN THE

14   ARBITRATION IN NEW YORK.

15           NUMBER TWO, I HAVE SOME QUESTION UNDER

16   THE CARROLL CASE AS TO WHETHER THIS, THIS COURT

17   SHOULD REALLY BE DOING THAT IN LIGHT OF ITS MANDATE

18   THAT THE DISPUTE BETWEEN THE LAWYERS AND THEIR

19   FORMER CLIENTS SHOULD BE ADJUDICATED IN AN

20   APPROPRIATE NEW PROCEEDING.

21           SO IT CERTAINLY WOULD BE -- IT WOULD

22   CERTAINLY PROTECT QUINN, EMANUEL'S INTERESTS AND WE

23   WOULD CERTAINLY PREFER THAT RATHER THAN TO HAVE ALL

24   THE FUNDS TURNED OVER TO THE CONNECTU PARTIES.

25           THE COURT:  I'LL TELL YOU THE OTHER THING

I WAS CONSIDERING, AND I RAISED IT WITH THE MASTER
THIS MORNING, IS WHY WOULDN'T IT MAKE SENSE,
BECAUSE IF I AM TO ORDER THE INTERPLEADER, FIRST
THE MONEY WOULD HAVE TO BE PAYABLE TO THE
STAKEHOLDER, THAT IS FACEBOOK, AND THEN FACEBOOK
WOULD HAVE TO INTERPLEAD IT INTO COURT SO THAT I
DON'T KNOW THAT I CAN -- OR IT WOULD HAVE TO BE
MADE PAYABLE TO CONNECTU AND CONNECTU WOULD
INTERPLEAD TO THE COURT.  I'M NOT SURE HOW IT WOULD
WORK.

        BUT THE QUESTION I RAISED WITH THE MASTER
IS WHETHER OR NOT IT WOULD BE FEASIBLE OR ADVISABLE
FOR THE COURT TO HAVE THE MASTER INTERPLEAD THE
FUNDS INTO COURT.

        THEREFORE, THEY WOULD NEVER LEAVE THE
MASTER'S HANDS IN -- PAYABLE TO A PARTY TO THIS
LITIGATION, OR TO THE LAWYERS, OR PAYABLE JOINTLY
TO THE PARTIES OR TO A LAWYER.

        AND IT WOULD THEN BE PLACED IN THE
REGISTRY OF THE COURT.

        THE ONLY PROBLEM WITH THIS WHOLE
INTERVENTION, OR INTERPLEADER NOTION IS THAT IT
PUTS THE CLERK OF COURT IN A POSITION OF HOLDING ON
TO FUNDS, AND ESSENTIALLY SHARES, BECAUSE I PRESUME
THE LIEN REACHES BOTH, AND IT'S NOT QUITE THE KIND

11:29:31 1  OF THING WE DO VERY WELL AS A COURT, AND SO I AM

11:29:36 2  CONCERNED ABOUT THAT.

11:29:36 3          MR. VAN DALSEM:  YOUR HONOR, AND THAT'S

11:29:38 4  ONE OF THE REASONS WHY I THINK OUR SUGGESTED

11:29:40 5  APPROACH IS PREFERABLE.

11:29:41 6          THE CONNECTU PARTIES, OR THE CONNECTU

11:29:45 7  FOUNDERS, DO NOT DISPUTE THAT SOME PORTION OF THE

11:29:47 8  SETTLEMENT CONSIDERATION SHOULD BE SET ASIDE.

11:29:51 9          THAT'S -- I THINK THEIR PAPERS WERE

11:29:52 10 PRETTY CLEAR ON THAT POINT.

11:29:57 11         SO IT IS NOT THE --

11:29:57 12         THE COURT:  LET ME SEE IF I GOT THAT

11:29:58 13 RIGHT.

11:29:59 14         SO CONNECTU AND ITS FOUNDERS TAKE THE

11:30:00 15 POSITION THAT THE COURT SHOULDN'T DO ANYTHING, BUT

11:30:03 16 IF IT DOES ANYTHING, IT SHOULD ORDER THAT FUNDS AND

11:30:06 17 STOCKS BE MADE PAYABLE TO BOTH?

11:30:08 18         IS THAT THE CONNECTU POSITION?

11:30:16 19         MR. VAN DALSEM:  THAT'S NOT WHAT I WAS

11:30:18 20 SUGGESTING IS THEIR POSITION.

11:30:19 21         THE COURT:  OH.  WELL, I THOUGHT -- HOW

11:30:22 22 DO I DO IT OTHERWISE?

11:30:23 23         MR. VAN DALSEM:  WELL, IT'S NOT -- WITH

11:30:25 24 ALL DUE RESPECT, THE CASES ARE PRETTY CLEAR THAT

11:30:28 25 IT'S NOT FOR THIS COURT TO DETERMINE, OKAY, OF THAT

11:30:31 1  $100, SO MUCH GOES INTO TRUST AND SO MUCH GETS

11:30:34 2  RELEASED.

11:30:35 3          THE COURT:  NO, I'M SAYING A JOINT.

11:30:36 4          I THOUGHT THEIR POSITION -- YOU WERE

11:30:37 5  CITING TO ME THEIR POSITION WAS I SHOULD DO

11:30:40 6  NOTHING, BUT IF I DO IT, I SHOULD MAKE IT JOINTLY

11:30:43 7  IN BOTH NAMES.

11:30:44 8          THAT'S THE QUINN, EMANUEL POSITION, AND

11:30:45 9  THAT'S THE CONNECTU POSITION, AND FACEBOOK IS

11:30:48 10  PERFECTLY PROTECTED BECAUSE BOTH PARTIES WHO WOULD

11:30:50 11  BE IN RECEIPT OF THE CONSIDERATION AGREE THAT

11:30:54 12  THAT'S THE WAY TO HANDLE IT.

11:30:55 13          MR. VAN DALSEM:  I AGREE THAT THE COURT

11:30:56 14  SHOULD DO NOTHING, BUT IT DEPENDS ON WHAT YOU

11:31:00 15  DEFINE "NOTHING" AS.

11:31:01 16          WHAT I WOULD DEFINE "NOTHING" AS IS

11:31:03 17  ALLOWING THE SETTLEMENT CONSIDERATION TO TRANSFER,

11:31:06 18  AS IT WOULD HAVE TRANSFERRED HAD WE NEVER BEEN

11:31:08 19  BEFORE YOUR HONOR WITH AN OBJECTION TO THE

11:31:10 20  SETTLEMENT AND EVERYTHING THAT HAS PROCEEDED OVER

11:31:13 21  THE PAST SIX MONTHS.  THAT IS DOING NOTHING IN MY

11:31:17 22  VIEW.

11:31:17 23          AND IN THOSE CIRCUMSTANCES, CONNECTU

11:31:19 24  WOULD HAVE --

11:31:19 25          THE COURT:  I CAN'T DO THAT ANYMORE

BECAUSE THE CONSIDERATION IS NO LONGER IN THE HANDS

OF FACEBOOK.

          MR. VAN DALSEM:  THAT'S CORRECT.  IT

COULD BE --

          THE COURT:  SO I CAN'T DO THAT.

          MR. VAN DALSEM:  IT COULD BE RETURNED TO

FACEBOOK.

          THE COURT:  OH, IN OTHER WORDS, YOU WOULD

WANT ME TO HAND THE CONSIDERATION BACK TO FACEBOOK

WITH DIRECTIONS?

          MR. VAN DALSEM:  OR YOU SIMPLY HAVE THE

SPECIAL MASTER DO WHAT FACEBOOK WOULD HAVE

OTHERWISE DONE HAD IT NOT BEEN ORDERED TO TURN THE

CONSIDERATION --

          THE COURT:  SEE, FACEBOOK RUNS THE RISK,

IF ITS CONSIDERATION COMES BACK TO IT, THAT AN

ARGUMENT COULD BE MADE THAT IT'S NO LONGER IN

KEEPING WITH MY JUDGMENT, IT'S PUT ITSELF IN A

POSITION WHERE SOMETHING HAS BEEN RETURNED TO IT,

THAT MIGHT LOOK LIKE A RECISSION OF SOME SORT.

          SO I'M LOOKING FOR WHAT YOUR POSITION IS

GIVEN THE FACT THAT THE CONSIDERATION IS IN THE

HANDS OF THE MASTER.

          MR. VAN DALSEM:  WHAT QUINN, EMANUEL

SUGGESTS BE DONE IS THAT AN ORDER ISSUE DIRECTING

11:32:12 1 THE MASTER TO ISSUE A CHECK JOINTLY PAYABLE TO

11:32:16 2 QUINN, EMANUEL AND THE FORMER CLIENTS AND TO TURN

11:32:19 3 IT OVER TO EITHER OF US.

11:32:22 4 THE COURT: WELL, THAT'S WHAT I HEARD YOU

11:32:23 5 TO SAY, AND THAT'S WHY I WAS TRYING TO MAKE SURE

11:32:24 6 THAT -- I THOUGHT YOUR POSITION WAS THAT CONNECTU

11:32:26 7 AND ITS FOUNDERS AGREE WITH THAT.

11:32:27 8 MR. VAN DALSEM: THEIR PAPERS MAKE CLEAR

11:32:30 9 THAT THEY AGREE THAT SOME PORTION OF THE SETTLEMENT

11:32:32 10 PROCEEDS SHOULD BE SET ASIDE TO SECURE THE FEE

11:32:34 11 CLAIM.

11:32:35 12 I DON'T THINK THEY'VE AGREED TO A

11:32:37 13 PARTICULAR PROCEDURE TO ACCOMPLISH THAT.

11:32:40 14 THE COURT: SO THEY DON'T AGREE?

11:32:42 15 I MEAN, EITHER YOU DO OR YOU DON'T. DO

11:32:45 16 YOU AGREE?

11:32:45 17 MR. BARRETT: YOUR HONOR, WE DON'T AGREE,

11:32:47 18 CERTAINLY, THAT THE WHOLE AMOUNT OF THE SETTLEMENT

11:32:52 19 PROCEEDS SHOULD BE SUBJECT TO THAT PROCEDURE.

11:32:54 20 THE COURT: WELL, COULD -- DO THE TWO OF

11:32:56 21 YOU AGREE ON AN AMOUNT?

11:33:00 22 MR. BARRETT: I DON'T THINK WE DO, YOUR

11:33:01 23 HONOR.

11:33:01 24 THE COURT: SO THAT LEAVES ME IN A

11:33:02 25 POSITION OF NOT HAVING AN AGREEMENT, NOT HAVING AN

AMOUNT, HAVING MY MASTER HOLD ON TO FUNDS, AND IT

DOES SEEM TO ME THAT IF I CAN TAKE NO ACTION THAT

WOULD BE IN THE FORM OF AN ADJUDICATION OF THE

PROPER PERCENTAGE, IT SOUNDS TO ME LIKE MY ORDERING

THE MASTER TO EITHER HOLD IT OR TO INTERPLEAD IT

ARE THE TWO OPTIONS THAT ARE VIABLE.

      MR. VAN DALSEM:  THERE'S A THIRD OPTION.

      THE COURT:  WHAT'S THAT?

      MR. VAN DALSEM:  THE THIRD OPTION IS THE

REASON WE HAVE NOT BEFORE THE TRIPLE A IN NEW YORK

TO SEEK SOME RELIEF IS THAT WE'VE HAD NO PANEL

BEFORE WHOM TO GO BEFORE.

      AND THE TRIPLE A RULES REQUIRE THAT TO

SEEK INTERIM RELIEF, YOU HAVE TO HAVE A PANEL

CONSTITUTED OR THE PARTIES HAVE TO AGREE.

      THAT PANEL HAS EITHER BEEN CONSTITUTED OR

IS ABOUT TO BE CONSTITUTED.

      WE COULD SIMPLY LEAVE THE SETTLEMENT

CONSIDERATION FROM FACEBOOK WITH THE SPECIAL MASTER

FOR SOME PERIOD OF TIME, 30 OR 60 DAYS, AND IN THE

INTERIM, QUINN, EMANUEL WOULD GO TO THE ARBITER

PANEL AND ASK FOR AN ORDER DIRECTING HOW MUCH OF

THAT SHOULD BE SEQUESTERED.

      THE COURT:  YOU MAY GET THAT, YOU MAY

NOT.

11:34:14  1          IT MEANS THAT YOU'RE ASKING ME TO STAY

11:34:20  2     THE IMPLEMENTATION OF THE JUDGMENT PENDING

11:34:22  3     ARBITRATION PROCEEDINGS.

11:34:23  4          MR. BARRETT:  YEAH, YOUR HONOR.  I WANT

11:34:25  5     TO BE VERY CLEAR ON THAT.

11:34:26  6          CONNECTU AND THE FOUNDERS WOULD

11:34:29  7     STRENUOUSLY OBJECT TO CONSIDERATION FLOWING OUT OF

11:34:31  8     THE SPECIAL MASTER'S HANDS TO FACEBOOK AND NOT TO

11:34:35  9     US.

11:34:36  10          IF IT'S GOING TO HAPPEN, IT SHOULD BE, IT

11:34:38  11     SHOULD BE MUTUAL.  IT SHOULD BE IN BOTH DIRECTIONS.

11:34:42  12          I THINK THE REASON THAT THIS PROBLEM

11:34:43  13     AROSE -- COUNSEL REFERRED TO ASKING FOR AN ORDER

11:34:49  14     FROM THE TRIPLE A PANEL.

11:34:51  15          THAT CERTAINLY WOULD BE POSSIBLE, BUT I

11:34:53  16     DON'T THINK WE KNOW WHEN THAT'S GOING TO HAPPEN.

11:34:57  17          THE FACT IS THAT THEY COULD HAVE GONE TO

11:34:59  18     COURT IN NEW YORK.  NEW YORK COURTS HAVE THE

11:35:01  19     AUTHORITY TO ISSUE INTERIM ORDERS IN AID OF

11:35:04  20     ARBITRATION.  THEY HAD SIX MONTHS.

11:35:06  21          THEY WERE IN FRONT OF A JUDGE.  JUDGE

11:35:08  22     LOWE, I'M SURE, WOULD HAVE CONSIDERED THIS HAD IT

11:35:11  23     BEEN RAISED.  THEY DIDN'T DO THAT.

11:35:13  24          SO WHEN COUNSEL TALKS ABOUT THE -- WHEN

11:35:16  25     MR. VAN DALSEM TALKS ABOUT THE NORMAL COURSE, THE

64

NORMAL COURSE IS THAT THE, THAT THE LAWYER SHOULD, SHOULD NOT HAVE PUT -- SHOULD NOT BE PUTTING THIS COURT IN THIS POSITION.

THE CARROLL CASE TELLS US THAT.

AND HAVING NOT DONE IT WHEN THEY HAD THE OPPORTUNITY TO DO IT, I THINK IF YOU'RE GOING TO RELEASE CONSIDERATION TO FACEBOOK, YOU SHOULD RELEASE THE CONSIDERATION ON THE FOUNDERS' SIDE AND THE PROCEEDINGS CAN GO FORWARD IN NEW YORK IN WHATEVER FORUM IS, IS APPROPRIATE.

IN ADDITION, AGAIN, I COME BACK TO YOUR HONOR EXPRESSING SOME CONCERN ABOUT, WOULD FACEBOOK BE PROTECTED IN THIS PROCESS?

WE SUGGESTED IN OUR PAPERS THAT THE COURT COULD ISSUE AN ORDER THAT SAYS THAT FACEBOOK, HAVING, HAVING PROVIDED THE CONSIDERATION TO THE SPECIAL MASTER, IS ABSOLVED OF THE LIEN.

I DON'T KNOW IF THAT WOULD BE EFFECTIVE UNDER THE CARROLL CASE OR NOT, BUT CERTAINLY THEY HAVE DONE WHAT YOU ORDERED THEM TO DO.

OR, SECONDLY, AS I INDICATED, THIS REALLY -- TO THE EXTENT FACEBOOK HAS ANY SUCH PROBLEM, IT IS A PROBLEM THAT ARISES FROM THEIR DRAFTING OF THE TERM SHEET.

THE TERM SHEET -- WHATEVER MAY BE THE

NORMAL COURSE, IF A PARTY IN FACEBOOK'S POSITION

WANTS TO PROTECT ITSELF, THEY CAN PUT IN THE

SETTLEMENT AGREEMENT, WE'RE GOING TO MAKE THE CHECK

PAYABLE TO PARTY AND LAWYER.

THE COURT:  BUT THAT'S MY POINT.  I DON'T

KNOW WHY WE'RE TALKING ABOUT FACEBOOK ANY LONGER.

IT'S MY PROBLEM.

THE MONEY THAT YOU'RE EXERCISING A LIEN

OVER IS NOT IN THE HANDS -- IT'S NO LONGER IN THE

HANDS OF FACEBOOK.  IT'S IN THE HANDS OF THE COURT.

AND SO WHAT I'M TRYING TO DO IS TO FIGURE

OUT A WAY TO IMPLEMENT THE JUDGMENT WITH SOMEONE

STANDING BEFORE IT ARGUING THAT, I HAVE A

CONTRACTUAL LIEN THAT I'M ASSERTING AGAINST THE

PERSON WHO WAS RECEIVING THE MONEY THAT IS BEING

HELD IN COURT.

AND FACEBOOK IS CONCERNED TO MAKE SURE,

LEGITIMATELY, THAT NO ONE COMES BACK TO IT AND

ASSERTS THAT, YOU DIDN'T DO THE RIGHT THING IN THE

FACE OF THE LIEN THAT IS BEING ASSERTED.

AND I CAN'T -- I'M NOT GOING TO MAKE AN

ADJUDICATION ABOUT THAT BECAUSE THAT ISSUE IS NOT

BEFORE ME.

WHAT I'M GOING TO DO IS TO TRY AND FIGURE

OUT HOW TO HANDLE THE PROBLEM THAT IS BEING

PRESENTED BY THIS LIEN THAT IS BEING ASSERTED

AGAINST FUNDS BEING HELD BY THE COURT THAT WOULD BE

RELEASED IN THE IMPLEMENTATION OF THE JUDGMENT.

AND WITH AN OBJECTION BY CONNECTU TO THAT

BEING RELEASED IN ANY FORM, LET ALONE IN A JOINT

FORM, IT SEEMS TO ME THAT THE QUESTION I ASKED

ABOUT ORDERING THE MASTER TO INTERPLEAD THE FUNDS

WOULD THEN -- ALTHOUGH IT'S A DUAL ADJUDICATION AND

I UNDERSTAND THAT CONCERN, THE POINT OF THE

COMPLAINT IN INTERPLEADER THAT I WOULD ORDER THE

MASTER TO FILE IS TO SAY, ALL RIGHT, HERE'S THE

MONEY, WAITING FOR THE STAKEHOLDERS TO FIGURE OUT

AMONG THEMSELVES -- I MEAN THE CLAIMANTS TO FIGURE

OUT, IN SOME ADJUDICATION -- IT DOESN'T HAVE TO BE

IN THE INTERPLEADER ACTION ITSELF, IT COULD HAPPEN

OUTSIDE OF THAT -- WHERE THOSE FUNDS GO AND WOULD

COME TO THE COURT IN DUE COURSE FOR THAT.

I WOULD NOT HAVE PUT EITHER OF YOU IN ANY

POSITION THAT WOULD BE OF DISADVANTAGE UNDER THOSE

CIRCUMSTANCES BECAUSE OF NECESSITY, IT SOUNDS LIKE,

BOTH OF YOU RECOGNIZE THAT YOU HAVE THE OBLIGATION

TO LITIGATE THAT ISSUE .

IF YOU ARE SUCCESSFUL IN ARBITRATION IN

COMING UP WITH SOME INTERIM RELIEF, THAT'S

SOMETHING THAT COULD BE PRESENTED TO THE

INTERPLEADER JUDGE -- IT MIGHT BE ME, IT MIGHT BE
SOMEONE ELSE -- BECAUSE THEN THERE IS NO CONFLICT
BETWEEN THE CLAIMANTS AND THE PART THAT IS IN
DISPUTE WOULD REMAIN FOR LATER ADJUDICATION.

         I WANT TO GIVE THIS MORE THOUGHT.  I JUST
WANTED TO AIR IT SO THAT I COULD SEE WHAT YOUR
RESPECTIVE POSITIONS WOULD BE.

         I'M RUNNING OUT OF TIME HERE.  ARE THERE
ANY FINAL --

         MR. VAN DALSEM:  COULD I SPEAK VERY
BRIEFLY JUST IN RESPONSE TO MR. BARRETT'S COMMENT?

         THE COURT:  SURE.

         MR. VAN DALSEM:  WE DIDN'T GO RUN INTO
COURT IN NEW YORK ON A TRO, AND IT WOULD HAVE BEEN
INAPPROPRIATE TO DO SO, BECAUSE ANY JUDGE WOULD
HAVE LOOKED AND SAID, WHAT'S THE IRREPARABLE HARM?
YOU KNOW, THE SPECIAL MASTER'S REPORT IS ACTUALLY
SUGGESTING THAT IT GO INTO A TRUST AND WE DON'T
KNOW WHAT JUDGE WARE IS GOING TO DO.  YOU SHOULDN'T
HAVE -- COME BACK TO US IF THIS IS A REAL PROBLEM.

         WE WOULD HAVE BEEN OUT OF A TRO
PROCEEDING IN FIVE MINUTES.

         I THINK, GIVEN THE UNIQUE CIRCUMSTANCES
THAT PRESENT THEMSELVES TO THE COURT, THE
INTERPLEADER ACTION IS A GOOD SOLUTION AND ONE THAT

1   WOULD CERTAINLY PROTECT QUINN, EMANUEL'S INTEREST

2   AND THE CONNECTU PARTIES' INTEREST AT THE SAME

3   TIME, AND WE THINK THAT IT'S A WORKABLE SOLUTION.

4        IF WE CAN THEN EITHER CONSENSUALLY WORK

5   SOMETHING OUT OR WE OBTAIN AN ORDER FROM THE

6   ARBITER PANEL AS TO WHAT TO DO WITH THOSE FUNDS,

7   THEN WE CAN DEAL --

8        THE COURT:  WELL, I'M JUST THINKING ABOUT

9   IT.  OF COURSE, CONNECTU WOULD ARGUE THAT IT IS --

10  IT'S NOT AN IMPLEMENTATION OF THE AGREEMENT BECAUSE

11  THE AGREEMENT PROVIDES THAT IT WOULD RECEIVE, NOT

12  IT WOULD PLACE INTO COURT.

13       MR. BARRETT:  THAT'S EXACTLY RIGHT, YOUR

14  HONOR.  YOU'RE TYING UP ALL OF THE MONEY FOR A FEE

15  THAT IS ONLY A VERY LIMITED PART OF IT.

16       AND PARTICULARLY IF FACEBOOK IS GETTING

17  THE CONNECTU STOCK, WE DON'T THINK THAT THAT'S

18  FAIR.

19       AND, IN FACT, THE QUINN RETAINER SAYS

20  THAT THE LIEN SHALL BE FOR THE PURPOSE OF SECURING

21  OUR ATTORNEYS' FEES, AND WHAT THEY'RE -- WHAT THE

22  NET EFFECT IS, IS THAT THEY'RE -- IS THAT THEY'RE

23  SEQUESTERING 100 PERCENT OF THE JUDGMENT, OR THE

24  SETTLEMENT, TO PROTECT ONLY A VERY SMALL PORTION,

25  AND THAT'S NOT EVEN CONSISTENT WITH THEIR, WITH

THEIR OWN CONTRACT.

SO IT'S REALLY GIVING THEM LEVERAGE THAT SHOULDN'T EXIST, EVEN UNDER THEIR OWN CONTRACT, TO, YOU KNOW, FORCE US TO NEGOTIATE IF WE WANT TO GET THAT, THAT SETTLEMENT PROCEEDS OUT.

AND THAT'S WHY I SAY IT WOULDN'T HAVE BEEN A TRO PROCEEDING IN NEW YORK. IT WOULD HAVE BEEN A PROCEEDING TO SAY HOW MUCH IS OUR LIEN WORTH, BECAUSE THIS COURT OR THIS ARBITRATION PANEL IS THE, IS THE PROPER JURISDICTION TO DECIDE THAT, AT LEAST ON A TEMPORARY BASIS, AND THAT IS, I THINK, SOMETHING THAT THEY COULD HAVE DONE.

MR. VAN DALSEM: WHICH, YOUR HONOR, BRINGS ME FULL CIRCLE BACK TO OUR SUGGESTION, WHICH IS WE DON'T SEEK TO SEQUESTER ALL THE MONEY. WE SEEK TO SEQUESTER THAT WHICH IS NECESSARY TO SECURE OUR CLAIM.

THE COURT: HOW MUCH IS THAT?

MR. VAN DALSEM: I DON'T WANT TO SAY A NUMBER ON THE RECORD, PLUS THERE ARE SOME COMPLICATIONS GIVEN THE VARIOUS TYPES OF CONSIDERATION.

BUT THE POINT IS THAT IF THE PAYMENT INSTRUMENTS ARE ISSUED JOINTLY, THAT EITHER THEN RESULTS IN A NEGOTIATION AND A RESOLUTION, OR AN

ADJUDICATION BY THE PROPER FORUM, WHICH IS THE

INDEPENDENT ACTION.

THE COURT:  I UNDERSTAND YOUR POSITION.

MR. CHATTERJEE, ANY FINAL WORDS BEFORE I

CLOSE THIS?

MR. CHATTERJEE:  YES, YOUR HONOR, JUST A

FEW FAIRLY BRIEF REMARKS.

YOUR HONOR ASKED SOME QUESTIONS AND I

BELIEVE MR. BARRETT DISCUSSED SOME ISSUES

ASSOCIATED WITH, NUMBER ONE, JURISDICTION; AND,

NUMBER TWO, THE TRANSFER OF OWNERSHIP OF CONNECTU

TO FACEBOOK.

WITHOUT GOING INTO THE DETAIL BECAUSE I

KNOW TIME IS TIGHT, THERE ARE TWO CASES THAT I'D

LIKE YOUR HONOR TO TAKE A LOOK AT.  THEY BOTH ARE

BANKRUPTCY CASES.

IN ONE INSTANCE THE BANKRUPTCY

PROCEEDINGS INVOLVED THE TRANSFER OF, ESSENTIALLY,

THE ASSETS OF A COMPANY AND AN EFFORT TO STOP THAT

AS PART OF THE APPEAL, AND THE NINTH CIRCUIT RULED

ON THAT SPECIFIC ISSUE, WHICH IS QUITE ANALOGOUS TO

THE ONE, AND IN THE WAY -- IT RULED ON IT IN THE

WAY THAT FACEBOOK IS ADVOCATING.

THAT CASE IS, IS CALLED IN RE: RAINS.

IT'S A 2005 NINTH CIRCUIT CASE, 428 F.3D 893.

AND THEN THERE'S AN EARLIER CASE THAT ALSO HAS MANY RELATED ISSUES THAT IS WORTH TAKING A LOOK AT, AND IT INCLUDES THE STATEMENT, "A PARTY WHO CHOSES TO APPEAL BUT FAILS TO OBTAIN A STAY OR INJUNCTION PENDING APPEAL RISKS LOSING ITS ABILITY TO REALIZE THE BENEFIT OF A SUCCESSFUL APPEAL."

I THINK THAT'S SELF-EXPLANATORY AS TO WHY IT COULD BE RELEVANT HERE. THAT IS GEMMILL VERSUS ROBISON, 557 F.2D 179. THAT'S A NINTH CIRCUIT CASE FROM 1977.

THE FINAL REMARK, YOUR HONOR, IT WAS VERY INTERESTING TO HEAR MR. BARRETT'S COMMENTS ABOUT WHAT QUINN, EMANUEL COULD HAVE OR SHOULD HAVE DONE IN NEW YORK, IN THE NEW YORK SUPREME COURT ASSOCIATED WITH THIS JUDGMENT, BECAUSE YOUR HONOR ASKED AN IMPORTANT QUESTION OF MR. BARRETT WITH RESPECT TO THE ORDER TO SHOW CAUSE.

THE ORDER TO SHOW CAUSE WAS ISSUED SEPTEMBER 19TH. THIS HEARING IS ROUGHLY SIX WEEKS LATER.

NOW, THEY CAN COME IN AND SAY QUINN, EMANUEL DID NOT DO THESE THINGS AND THEY HAD ALL THE TIME IN THE WORLD TO DO IT.

BUT THE ONE THING THAT DIDN'T HAPPEN BETWEEN SEPTEMBER 19TH AND TODAY IS, DESPITE THE

VOLUMES, THE DOZENS OF PAGES OF PLEADINGS THAT HAVE

BEEN ENTERED IN THIS CASE SINCE WE FILED THE MOTION

TO ENFORCE, THEY DIDN'T FILE A MOTION FOR A WRIT.

THEY DID NOT ASK THE NINTH CIRCUIT TO

INTERVENE AND STOP THIS PROCEDURE FROM GOING

FORWARD, AND I THINK YOUR HONOR WAS ABSOLUTELY

RIGHT TO ASK THAT QUESTION.

AT THIS POINT, EIGHT MONTHS AFTER WE

SETTLED THE CASE, WE'RE ENTITLED TO THE VALUE WE

BARGAINED FOR, AND WE ASK YOUR HONOR TO DO EXACTLY

WHAT YOU SAID IN THE ORDER TO SHOW CAUSE, WITH THE

ONE EXCEPTION OF FOLLOWING WHAT I BELIEVE YOUR

HONOR'S GOING TO DO WITH RESPECT TO THE

CONSIDERATION FACEBOOK PAID IN, AND THAT IS TO HOLD

IT IN SOME WAY IN ABEYANCE UNTIL THE QUINN,

EMANUEL/CONNECTU FOUNDERS' DISPUTE IS RESOLVED TO

FIGURE OUT HOW THOSE FUNDS SHOULD BE ALLOCATED.

THANK YOU, YOUR HONOR.

MR. VAN DALSEM:  YOUR HONOR,

MR. GARTEISER POINTED OUT SOMETHING I FORGOT TO

MENTION, JUST VERY BRIEFLY.

THE COURT:  SURE.

MR. VAN DALSEM:  IN OUR BRIEF ON PAGE 7,

THERE'S A CITATION TO A CASE CALLED BROWN VERSUS

SUPERIOR COURT.  IT'S A 2004 CASE.

AND THE QUOTE, WHICH IS IN THE BRIEF,
SAYS, QUOTE, "IT MIGHT WELL CONSTITUTE A DENIAL OF
SUBSTANTIAL JUSTICE AND, THEREFORE, AN ABUSE OF
DISCRETION FOR THE TRIAL COURT TO DIRECT PAYMENT OF
THE JUDGMENT PROCEEDINGS TO THE FORMER CLIENT
WITHOUT GIVING THE FORMER ATTORNEY A FAIR
OPPORTUNITY TO FIRST LITIGATE THE VALIDITY OF HIS
LIEN CLAIM IN A SEPARATE ACTION."

SO THERE IS, THERE IS AUTHORITY DIRECTLY
ON POINT UNDER CALIFORNIA LAW FOR WHAT WE ARE
ASKING FOR, WHICH IS PROTECTION FROM THE TRIAL
COURT, NOTWITHSTANDING THE CARROLL COURT'S
ADMONITION THAT THIS SHOULD ALL BE LITIGATED IN A
SEPARATE FORUM.

THE COURT:  VERY WELL.  I CONTINUE TO
APPRECIATE THE DIFFICULTY OF THE LEGAL ISSUES THAT
THIS CASE PRESENTS AND THE -- AND I ALSO APPRECIATE
THE ADVOCACY THAT YOU'VE ALL PRESENTED TO ME.

I WANT TO THANK, AGAIN, ON THIS RECORD,
MR. FISHER, THE MASTER, WHO IS PRESENT HERE.

HE HAS PROVIDED THE COURT WITH AN
OPPORTUNITY TO IMPLEMENT THE JUDGMENT BY
SAFEGUARDING THE ASSETS.

IN TODAY'S VOLATILE ECONOMIC CLIMATE, I'M
HAPPY THAT THAT'S NOT AN ISSUE THAT IS BEFORE THE

11:47:02 1 COURT AS TO WHETHER OR NOT THE PROCEEDS PUT IN HIS

11:47:05 2 HANDS HAVE BEEN ADEQUATELY SAFEGUARDED.

11:47:08 3      I KNEW, IN APPOINTING HIM, THAT I HAD A

11:47:11 4 PERSON WHO WOULD BE MINDFUL OF THE SECURITY OF

11:47:15 5 THOSE, OF THOSE PROCEEDS, AND SO I WANT TO THANK

11:47:19 6 HIM ON THIS RECORD FOR HIS CONTINUED SERVICE.

11:47:22 7      AND SO I WILL -- MY INTENT IS TO ACT AS

11:47:25 8 QUICKLY AS I CAN.

11:47:26 9      WHAT I WANTED TO SIGNAL TO THE PARTIES IS

11:47:29 10 MY SENSITIVITY TO THE ARGUMENT THAT I AM ACTING IN

11:47:33 11 EXCESS OF MY JURISDICTION.

11:47:35 12      I DON'T BELIEVE SO, AND FOR THAT REASON I

11:47:44 13 WOULD INTEND TO GIVE A VERY SHORT PERIOD OF TIME

11:47:50 14 BEFORE WHATEVER IMPLEMENTATION I ORDER WOULD TAKE

11:47:58 15 PLACE, AND AT THE SAME TIME, SUFFICIENT TIME, IN MY

11:48:02 16 VIEW, TO ALLOW THE PARTIES TO MAKE THE CASE BEFORE

11:48:05 17 THE CIRCUIT THAT I AM ACTING IN EXCESS OF MY

11:48:10 18 JURISDICTION, TO SEEK SOME DIRECTION FROM THAT

11:48:13 19 COURT TO THIS COURT AS TO WHETHER IT SHOULD STAY

11:48:20 20 ITS HAND SO AS TO ALLOW THE NINTH CIRCUIT TO DEAL

11:48:23 21 WITH THIS IN A MORE COMPLETE FASHION.

11:48:26 22      SO I'LL PUT PEN TO PAPER HERE IN SHORT

11:48:29 23 ORDER, AND MY STAFF HAS DONE A VERY GOOD JOB UP TO

11:48:34 24 NOW OF ALERTING YOU TO WHEN THE ORDER HAS ISSUED SO

11:48:37 25 THAT YOU CAN LOOK ON-LINE AT IT AND TAKE WHATEVER

11:48:41 1    APPROPRIATE ACTION YOU WANT TO TAKE WITH RESPECT TO

11:48:43 2    IT.

11:48:44 3              THANK YOU ALL.

11:48:45 4              MR. BARRETT:  THANK YOU, YOUR HONOR.

11:48:46 5              MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

11:48:47 6              (WHEREUPON, THE PROCEEDINGS IN THIS

11:48:47 7    MATTER WERE CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25