UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

The Facebook, Inc., et al.,    )
                               )
          Plaintiffs,          )
                               )
   VS.                         )      NO. C 07-1389 RS
                               )
ConnectU, Inc., et al.,        )
                               )
          Defendants.          )
_____ )

San Jose, California
Wednesday, January 16, 2008

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING**

**APPEARANCES**:

For Plaintiffs:
                    Orrick, Herrington & Sutcliffe LLP
                    405 Howard Street
                    San Francisco, California  94105
          BY:  **SEAN ALAN LINCOLN**
               **ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:        Kelly L. Bryce,
                    Court Reporter Pro Tem

Computerized Transcription By Eclipse

**APPEARANCES**:  (CONTINUED)

For Plaintiffs:

          ORRICK, HERRINGTON & SUTCLIFFE
          1020 Marsh Road
          Menlo Park, California  94025
    BY:  **MONTE M.F. COOPER**
         **THERESA ANN SUTTON**
         **ATTORNEYS AT LAW**

For Defendants:

          Finnegan, Henderson, Farabow,
          Garrett & Dunner LLP
          Stanford Research Park
          3300 Hillview Avenue
          Palo Alto, California 94304
    BY:  **SCOTT RICHARD MOSKO**
         **ATTORNEY AT LAW**

For David Gucwa:

          DECHERT LLP
          2440 W. El Camino Real - Suite 700
          Mountain View, California, 94040
    BY:  **VALERIE MARGO WAGNER**
         **ATTORNEY AT LAW**

1    <u>Wednesday - January 16, 2008</u>                    <u>2:40 p.m.</u>

2

3            **THE CLERK:**  Calling Case Number C 07-01389 RS,

4    Facebook versus ConnectU.

5            **MR. LINCOLN:**  Good afternoon, Your Honor.  Sean

6    Lincoln on behalf of Facebook.

7            **THE COURT:**  Good afternoon.

8            **MR. LINCOLN:**  Along with me is Monte Cooper and

9    Theresa Sutton.

10           **THE COURT:**  Good afternoon.

11           **MR. LINCOLN:**  I apologize on behalf of

12   Mr. Chatterjee who is unavoidably out of town.

13           **THE COURT:**  That's all right.

14           **MS. WAGNER:**  Valerie Wagner for defendant, David

15   Gucwa.

16           **THE COURT:**  Good afternoon.

17           **MR. MOSKO:**  And good afternoon, Your Honor.  Scott

18   Mosko for the remaining defendants.

19           **THE COURT:**  Good afternoon.

20           Let me give you a couple of comments.  I did spend

21   some time reading the Case Management Conference Statement, and

22   I know also that we have some motion issues as well and I read

23   through those papers.

24           So why don't you just go ahead and sit down.  Let me

25   just run through a few general comments and then we can take

1    this up.  Probably the order that I would suggest is we'll take

2    up the questions regarding the motion that's outstanding and

3    then we can talk about some case management issues.  They tend

4    to, as you will see, at least in my mind, they merge to some

5    extent.  So we'll see as I go through this.

6         Let me first give you some guidance with respect to

7    setting of the trial date.  There's a lot of discussion back

8    and forth in the papers about Facebook asking for the summer

9    and ConnectU talking to me about the Olympics and other things.

10   We don't need to get there because I can't try this case in the

11   summer.  The summer is full.

12        So what we're going to be looking at is some date

13   later this year at the earliest.  I know ConnectU wants it to

14   go into '09.  I'm inclined to shoot for some time toward the

15   end of this year, and I think what I'm going to do is throw it

16   back to you to come up with a schedule, propose at least some,

17   my hope is, stipulated schedule with the guidance from me that

18   I want it to be in the late fall of this year.

19        Let me touch on a couple of other issues, general

20   issues.  There is some suggestion in the joint statement by the

21   Facebook side that they've got some discovery disputes and do I

22   want to just deal with those.  And the answer is, no.  I

23   want -- I don't want to deal with discovery issues on the fly

24   in a case management context.  I may or may not have a hearing

25   on motions when they get filed, but I want to see something in

1    writing so I know what the issue is rather than just have you

2    start doing it on an informal discussion basis.

3            I have used that mechanism from time to time and, at

4    least in my personal experience, it seems to create more

5    problems than it solves, sometimes because there's always some

6    uncertainty about sometimes what the specific dispute is and

7    then what the judge's -- the scope of the judge's read is on

8    it.  And I want at least at the outset to know what the dispute

9    is about in some sort of written form.  So I'm not proposing to

10   deal with those issues today.

11           With respect to a settlement conference, I am

12   inclined to want to send you forth to some ADR process.  I know

13   we have the issue of related litigation, this litigation.  What

14   the ADR process will entail, I'm not sure I -- I'll want to

15   talk to you about that, but I think it is a circumstance in

16   which sooner rather than later I want some ADR to be

17   undertaken; and, as I say, we can discuss what form that will

18   take and to whom that will be directed.

19           With respect to discovery limits and the like, when

20   the parties start to have disagreements, just forwarning, I

21   tend to fall back on the Federal default limits; and, so, that

22   usually is going to win out.  So when there's a proposal to

23   let's do this by hours instead of, you know, total hours versus

24   particular limits on particular depositions, and the like, I

25   tend to go back to the basic, I think, workable Federal limits

1   and, perhaps, tweak them a bit but not do some other approach.

2           Okay.  Let me bring up an issue that's not in your

3   papers but it's -- and I know it's always frustrating for the

4   parties and I've been there when I was in practice, sealing of

5   documents.  I am very concerned that I am getting, on virtually

6   every submission in this very papered case, I'm getting

7   requests to seal everything.  And thus far, I have been, I

8   think, fairly -- I've been willing to approve the parties'

9   requests generally.

10          Henceforth, you're forewarned they need to be much

11  more specific and much more limited.  I can tell you there's an

12  active discussion amongst the judges in the Northern District,

13  some of whom -- I spoke recently with Judge Hamilton and she

14  said, "I'm denying all of them.  I think it's outrageously

15  overbroad what people are asking to seal and I'm denying them

16  all."

17          And I am not proposing I'm going to do that, but I

18  share her sentiment that it's out of control.  And, so, I know

19  everybody thinks it's the keys to the kingdoms that they have,

20  but documents that are five years old or that sort of thing,

21  you're going to have to really jump through hoops to show me

22  they ought to be sealed.  So you are forewarned.  I'm not

23  proposing that people are going to need to resubmit anything

24  that's already been submitted, and it's more of a going forward

25  piece of advice to all of you.

1        Okay.  With respect to the motion issue, the summary

2    judgment motion that Facebook has filed and then the request by

3    ConnectU for sort of an interim ruling on their 56(f) argument,

4    my sense of that -- and I'll certainly let you address it,

5    Mr. Mosko -- but I don't want to do this on a piecemeal basis.

6        The standard which I think works just fine is, if

7    there's a 56(f) argument, it's ordinarily made in the

8    alternative:  We oppose summary judgment for these reasons; but

9    in the event we don't prevail on that, we think under 56(f),

10   that we need to do these specific pieces of discovery in order

11   to get the case in a posture that it can be ruled on.  And,

12   so -- but I am disinclined to take up the 56(f) part of the

13   opposition first, give you a read on that, and then have you go

14   into any kind of other more substantive objection you have.

15       With respect to the schedule, however, of the

16   pending summary judgment motion, that's going to be kicked

17   back.  What I'm proposing to do is to kick it about two weeks

18   back to February 27th.  So that would probably result in moving

19   all the dates -- the opposition dates and the reply dates --

20   back a commensurate period of two weeks, which in some sense

21   addresses, perhaps, one issue that I suspect ConnectU has,

22   which is, if they're put to filing a full opposition, they need

23   a little more time, and that would accommodate that.  I need to

24   move it in any event, so it's not being moved to adjust for

25   that particular issue.

1    Okay.  Those are a bunch of general comments.  So
2  I'm going to turn it over to the parties.  So why don't you
3  come on up whoever wants to address these issues.

4    **MR. LINCOLN:**  Thank you, Your Honor.

5    I would like to add to our agenda of discovery
6  disputes, not in order of importance but to make sure that we
7  have on our agenda, a couple of other items.  One is the
8  protective order.

9    **THE COURT:**  The protective order, yes.

10    **MR. LINCOLN:**  Again, it's not an issue of
11  contention, I believe, so I bring that up first.

12    **THE COURT:**  Yes.  Thank you.  I did see that.  You
13  say there's been a protective order in State Court; and if you
14  agree to it, I suspect I will have no problems with it.  You
15  probably submitted it to me in the past.  If you would resubmit
16  it, I would appreciate it.

17    Remember though, and it goes, again, to the sealing
18  question, you have been addressing 79-5, our Local Rule, and
19  you've been dealing with that appropriately.  That I would want
20  to have in the protective order, that 79-5 is the governing
21  procedure for requesting the documents in the court file be
22  sealed.

23    And, again, I don't have a recollection, I may have
24  seen your particular protective order before; but keep in mind
25  that if there's anything in there that essentially says --

1  that's contrary to this notion of 79-5, that we can keep

2  everything under seal in the courthouse, that's not going to

3  fly.  So I haven't seen it.  With that exception, I'm sure I

4  won't have a problem with it.  So if you want to resubmit it,

5  that's fine.

6          **MR. LINCOLN:**  If I can explain what occurred.  When

7  the defendants removed the case, of course, the process of

8  removal required us to submit all the previous documents that

9  existed in the Superior Court here to the Federal Court.  And,

10  so, in terms of submitting it, that's how it got submitted.  I

11  would be surprised if that's something that the Court

12  specifically looked at.

13          **THE COURT:**  Okay.

14          **MR. LINCOLN:**  That's why I think we raised it in the

15  joint Case Management Conference Statement, that we've been

16  operating under as though it were a Federal submitted

17  protective order; but what I propose, as we've done it before,

18  is that plaintiffs prepare a draft protective order, we'll make

19  whatever comments, and I suspect we'll reach an agreement, and

20  then submit it to you for -- as a proposed order.

21          **THE COURT:**  That's fine.

22          **MR. MOSKO:**  That sounds reasonable.

23          **THE COURT:**  I assume there's a protective order in

24  the Massachusetts action; right?

25          **MR. LINCOLN:**  Yes, certainly.

1      **THE COURT:**  Is that going to be -- I mean, we have

2  materials that are from that litigation this litigation.  Are

3  they going to be consistent?  I wouldn't want to -- yeah.

4      **MR. LINCOLN:**  So the parties have agreed that the

5  discovery that has occurred in Massachusetts can apply in

6  California and vice versa.

7      **THE COURT:**  Okay.

8      **MR. LINCOLN:**  Certainly there is a protective order

9  in Massachusetts.  It is a bit different than the one, I

10  believe, Judge Trumbull has submitted, and I think that's the

11  one that's currently on the Web site, the court's Web site, as

12  a proposed order.

13      **THE COURT:**  Yeah.  That's just by way of an example.

14  That's not in any way a mandated form that we expect, so...

15      **MR. LINCOLN:**  We'll take a look at it.  I think the

16  simplest thing is --

17      **THE COURT:**  Okay.  That's fine.

18      **MR. LINCOLN:**  -- to take what we've already been

19  using and living by in State Court --

20      **THE COURT:**  I think that's fine.

21      **MR. LINCOLN:**  -- and make sure that it doesn't

22  violate Rule 75(f) and make sure that that's expressly called

23  out --

24      **THE COURT:**  Okay.

25      **MR. LINCOLN:**  -- and submit the rule.  If there's

1    something else we need to talk about, we can resolve that.

2            MR. MOSKO:  That works.

3            MR. LINCOLN:  Another item for -- and we seek the

4    Court's guidance, and that is two clerical errors in our prayer

5    and we would like to -- we could submit a request to amend but

6    that seems burdensome.

7            THE COURT:  My suggestion on this, so we don't have

8    amended, second amended, or third amended, but I would

9    suggest -- and you can do it any way you want -- is to say:

10   "Corrected Second-Amended Complaint."  I mean, all you're doing

11   is correcting what, as it's been characterized to me, unless

12   you have some problem with it, Mr. Mosko, it sounds like these

13   are just typos effectively.

14           MR. MOSKO:  In general I don't have any problem.

15   I'd like to take a look at it --

16           THE COURT:  Okay.

17           MR. MOSKO:  -- a little bit more specifically, but I

18   don't anticipate that.

19           THE COURT:  Okay.  Well, assuming that that is what

20   they are, then I would suggest you just file a corrected

21   Second-Amended Complaint.

22           MR. LINCOLN:  And as long as that's acceptable to

23   Your Honor without making a motion for leave to do so --

24           THE COURT:  That's fine with me.

25           MR. LINCOLN:  -- we'll run a draft by them and

1  submit it to you as soon as we can.

2          **MS. WAGNER:** Would the defendants need to answer

3  that again or just --

4          **THE COURT:** No. That's why I wanted to use the term

5  "corrected" as opposed to "amended."

6          **MS. WAGNER:** Right.

7          **THE COURT:** If it's a new amendment, then I think

8  the argument is we've got to start over the whole process

9  again, at least technically, and you're just making -- assuming

10 that when you see it, you agree with that characterization,

11 that it's just -- if it says "Corrected Second-Amended

12 Complaint," it won't trigger any new responsive pleadings.

13         **MR. LINCOLN:** It is not our intention to trigger any

14 need for further responsive pleadings.

15         **THE COURT:** Right.

16         **MR. LINCOLN:** For trial dates, Your Honor, coming to

17 the points that you have raised first.

18         **THE COURT:** Yes.

19         **MR. LINCOLN:** I understand Your Honor having the

20 limitation of not being able to try something in the summer

21 certainly is what it is.

22         If, however, we are going to be moved past, because

23 of at least in part of the defendants' request -- now I've got

24 to be more specific -- the Winklevoss' requests. They are not

25 defendants here. They worked hard to not be defendants here.

1          **THE COURT:**  That's true.

2          **MR. LINCOLN:**  In all fairness, I think it is

3     reasonable that those parties in the other action not then be

4     seeking a trial date before this one in Massachusetts.

5     Otherwise, we're going to end up with another set of claims,

6     and we're not even at issue in that case; but I'm concerned

7     about how we're going to then turn around and have a problem in

8     Massachusetts.

9          **THE COURT:**  Well, I'm not going to weigh into any

10    strategy issues in terms of what other parties are positioning

11    themselves for trial date purposes.  I mean, the reason that

12    it's not going to be tried in, you know, July and August is --

13    I mean, I'm not reaching the question of whether or not these

14    particular witnesses' Olympic hopes are the reason -- that's

15    not why it's being moved.

16         I don't know whether or not -- I'm not saying that

17    that isn't, you know, a significant event that I wouldn't take

18    into account, but it's somewhat academic because I can't try

19    the case in July and August, so the Olympics will have come and

20    gone.

21         Now, whether or not the, you know, trial date here

22    is before or after Massachusetts, I mean, all I can tell you is

23    that I'm inclined to think, you know, the case can be tried in

24    '08; but beyond that, I mean, I'm not going to get involved in

25    which one goes first.  I'll give you a trial date and you can,

1   you know, do whatever you want to do in Massachusetts; but I

2   mean, I'm not going to position this case one way or the other

3   with respect to the date of a trial in Massachusetts.  That's

4   for you guys to fight about.

5           **MR. LINCOLN:**  Okay.  Next issue was the --

6           **THE COURT:**  By the way, though, so we don't -- you

7   know, there are many moving parts and I do want to address

8   this.

9           On this question of these particular witnesses, I do

10  think that, in terms of availability for discovery, that it is

11  not going to be an argument that we have to practice eight

12  hours a day until the Olympics, so there's no way -- I don't

13  know whether or not these depositions are a part of the package

14  in this case; but I don't want you to assume because I said it

15  might have an impact on the trial date, if my schedule was

16  otherwise available, I'm not saying I've determined whether or

17  not that's a basis on which they're precluded from any

18  involvement in the case.  I mean, I assume they take a day off

19  here and there, so I don't know.

20          **MR. MOSKO:**  May I address that?

21          **THE COURT:**  You may.

22          **MR. MOSKO:**  I anticipated you were going to ask that

23  question and I'm prepared to respond with respect to what their

24  schedule is so you understand.

25          They practice seven days a week.  In most instances,

1    they practice -- they have two actual workouts a day; one in

2    the morning that starts at about 8:00 o'clock that goes for

3    somewhere in the nature of two to two and a half hours, then

4    they break, then they have an afternoon comparable workout.

5           They're single-man athletes; that is, this is the

6    boats where -- these are the boats where they only row one oar,

7    not that that makes too terribly much difference.

8           **THE COURT:**  One person rowing two oars or --

9           **MR. MOSKO:**  No.  A person rowing one oar.  So there

10   is three boats where they are competing.  There's an

11   eight-person boat --

12          **THE COURT:**  Yes.

13          **MR. MOSKO:**  -- there's a four-person boat, and

14   there's a two-person boat.  Each person is rowing one oar.

15          **THE COURT:**  Okay.  All right.

16          **MR. MOSKO:**  Okay.

17          **THE COURT:**  So their unavailability would disrupt

18   the general overall practice of the boat?

19          **MR. MOSKO:**  So --

20          **THE COURT:**  Okay.

21          **MR. MOSKO:**  Yes.  In terms of they practice seven

22   days a week, there are either one or two days, I believe, where

23   they have an afternoon off.  So they'll have -- in those

24   instances they'll have a schedule where they workout in the

25   morning between 8:00 and 10:30, or whatever, and then they'll

1    have an afternoon off.  So that's what's going on right now.

2           In, I believe, April there are trials that they call

3    them -- and I hesitate to use that word, but that's what they

4    call them -- where there is, in effect, a competition, which, I

5    understand, which will effectively determine who the two -- who

6    the members of the two-man boat will be; and then the current

7    coach will determine, perhaps based on the trials, perhaps

8    based on other things, will determine who will be rowing in the

9    four-person boat and who will be rowing in the eight-person

10   boat.

11          So that what I'm told is, is that their schedule

12   will only increase between now and those trials, and then will

13   continue on through the Olympics.

14          **THE COURT:**  Well, let me -- maybe this is an

15   academic point.  Mr. Cooper, is it your plan that you want

16   to -- of these two witnesses that you're going to -- again, I

17   don't particularly want to weigh into discovery disputes right

18   now, but are these people you want to take their deposition

19   between now and whenever this can be done?

20          **MR. LINCOLN:**  Yes, Your Honor.  And I'm Mr. Lincoln.

21   This is Mr. Cooper.

22          **THE COURT:**  I'm sorry.

23          **MR. LINCOLN:**  I have no problem with you addressing

24   questions to Mr. Cooper.

25          The answer is, yes, absolutely.  We've noticed

depositions. And I don't want to respond here to a point which that haven't had yet, which is we should be able to work out some dates. It just can't be the case that we can't get a deposition day in for each of the guys in the next four months or the next two.

THE COURT: Well, okay. I'm very skeptical that they're -- just what Mr. Lincoln has said, that that can't be done.

Now, I understand that if it's more than a part of the day or whatever, it becomes a bit more problematic; but I just can't believe that there isn't a point in time where they can't have -- they can't be deposed, but we'll -- is this -- are they for sure they're going to go all the way through? I mean, is it like they're competing to get a slot to then compete in Beijing or are they for sure doing this?

MR. MOSKO: There are 25 people in the Olympic -- on the Olympic team, and they may not call it an Olympic team yet --

THE COURT: Okay.

MR. MOSKO: -- and they are competing for those 12 positions.

THE COURT: Twelve slots, okay.

MR. MOSKO: Yeah.

THE COURT: Okay. Okay.

MR. MOSKO: So that's what's going on. They were

1    selected to be in this group who will then compete.

2             THE COURT:  And you told me, I think.  What's the

3    date that they find out if they're in the 12?

4             MR. MOSKO:  Well, as I said, I believe it's either

5    late March or April where they have these trials, but I don't

6    want to give the Court the impression that the trials will

7    determine -- shortly thereafter, that will determine who will

8    be in the eight- or the four-person boat.  I think that

9    determines who is in the two-person boat.

10            THE COURT:  Well, does it determine who's not going

11   to be going to the Olympics?

12            MR. MOSKO:  No.  That is whatever happens in these

13   trials, then the coach, I believe his name is Coach Teti, then

14   he will make the decision.  It's not clear when that decision

15   is.

16            What they do in these trials, this late March or

17   April trial, is they row two-person boats; and, so, as I

18   understand the process, the coach could pick one from one boat

19   and one from another boat depending on the circumstances.  It's

20   a complicated --

21            THE COURT:  And after I said that the Massachusetts

22   case sort of does its own thing, which is my general view, are

23   they -- I mean, they can't have the position that they're

24   available to do activities related to the Massachusetts action

25   but somehow their training schedule is such that it precludes

1    them from involvement in this action.

2            And I recognize that they are not parties in this

3    case because we went through that issue at some length but they

4    are, certainly from what I know of the case, witnesses of some

5    consequence in this case.  So they can't have it both ways.

6            **MR. MOSKO:**  And I don't believe -- you asked me what

7    the schedule was --

8            **THE COURT:**  Yeah.

9            **MR. MOSKO:**  -- and I was explaining what the

10   schedule was.

11           If the demand in terms of discovery, for example,

12   is, "No, we want them for eight hours on Tuesday," then I think

13   we have a problem with that.  If, as I said, they're willing to

14   work with us and, you know, we say, "We can give you two hours

15   on Thursday because that's the day of their -- that's the day

16   of the afternoon they have off," then I'm confident that we can

17   work with that.

18           **THE COURT:**  Okay.

19           **MR. MOSKO:**  I am not of the belief or the

20   understanding, although I am not involved in the Massachusetts

21   case, I'm not of the understanding that there's a position, a

22   contention, that they can't do things in either case.

23           **THE COURT:**  All right.  Okay.  Well, then --

24           **MR. MOSKO:**  You asked me the schedule.  I wanted to

25   give it to you.

1        **THE COURT:** Well, the first point of involvement

2    here is to see if you can work something out. I mean, I won't

3    weigh further into this particular issue until I see whether or

4    not there's a dispute.

5        **MR. LINCOLN:** We've noticed depositions.

6        **THE COURT:** Okay.

7        **MR. LINCOLN:** We've been told, as I understand it,

8    that those dates won't work. We've got nothing else, unless

9    what this was was an oral motion for protective order until

10   September, which I don't think it was.

11       **THE COURT:** I didn't interpret it that way.

12       **MR. LINCOLN:** Then we would hope that they can work

13   it out, find us some time, and we'll proceed.

14       **THE COURT:** Okay. Just as some guidance, I mean, I

15   would want to have the parties work it out. I would be

16   inclined to think that it's workoutable, meaning that there's

17   got to be some point in time where they're available, but I

18   would also expect some, you know, some understanding on those

19   who want to take the deposition that there is a somewhat

20   unusual situation. Okay.

21       **MR. MOSKO:** Thank you.

22       **THE COURT:** Let's move on to other issues.

23       **MR. LINCOLN:** Discovery issues, you stated very

24   clearly that you're not inclined to just wing it here today, if

25   I may characterize what you said.

1        **THE COURT:**  That's a fair characterization.

2        **MR. LINCOLN:**  But I would still propose that it

3   would have great value to the parties indeed and accordingly

4   would be very efficient if there could be a date some time in

5   the near time future where we could get Your Honor something in

6   advance of such a meeting and have a discovery conference to

7   work it out, otherwise we're going to have literally dozens of

8   serial motions that are going to come before the Court.

9        **THE COURT:**  Well, I'll tell you, I am averse to

10  discovery conferences I have to tell you, and it's partly what

11  I said before.  I don't find them resolving anything.  I find

12  that the parties, I think, instead of working through issues

13  decide, "Well, we're going to have this nice little discussion,

14  so we'll just go and we'll just put everything on the table and

15  we'll chat."  And then when the conference ends and people seem

16  to then seek clarification on virtually everything that was

17  discussed the day of the conference.  So I have real problems

18  with that.

19        I don't mind at all using different mechanisms to

20  make the lawyers' lives a little easier, that -- you know, if

21  it doesn't warrant a full-blown filing process consistent with

22  the rules, I am amendable to doing things by letter brief and

23  the like.

24        But I want to make sure that the parties know where

25  the battle is; and I don't like the, "Well, let's chat about

1    depositions; and, you know, kind of what issues do you think

2    might come up at these depositions and I'll give you the

3    benefit of my thoughts on that."  That doesn't work in my

4    experience.  I don't like it.  So that's why I'm disinclined to

5    just set a general discussion date about discovery.

6            Then, again, if you want to tee up the disputes for

7    me in a way others -- as I say, in a formal motion process, if

8    you think there are such discrete issues or such easily managed

9    issues that it can be done in the form of a letter brief

10   saying, "These are our five issues.  Can we either have you

11   resolve it on the papers or can we do this in the way other

12   than the full 35 day process," I'm not averse to that, but I

13   don't want a roundtable discussion.

14           **MR. LINCOLN:**  Understood, Your Honor.  I think one

15   of the sources of that request and one of the sources of

16   frustration on our side is the difficulty of even getting

17   through -- I mean, counsel indicates repeatedly he's the only

18   counsel on his side working for these defendants; and, thus,

19   finding a meet-and-confer time has been virtually impossible.

20   Christmas Eve was the only time available for one of the meet

21   and confers and we're still waiting for the response on it.

22           So, from our side, what you're hearing is a request

23   to try to find a concerted way of moving a lot of these

24   discovery disputes along more quickly.  And I'm sensitive to

25   not wanting to sit around a table and generally just get

1  thoughts on something and invite further motion practice; but

2  if there was a way to expedite some of these without full

3  serial motion practice, I think it would benefit everyone.

4  **THE COURT:**  Well, let's talk about that for a

5  second.  You know, I don't want to do the -- because there are

6  obviously very good counsel on both sides, I'm not going to say

7  when a request for meet and confer comes in, it must be

8  responded to in "X" number of days or "X" number of hours.  I

9  mean, you're professionals and I defer and respect your ability

10  to defer to you on this question, respect your ability to get

11  things organized.

12  That said, Mr. Mosko, I mean, they do nee -- I

13  understand you're staffing the case in a different way than the

14  Facebook side is staffing it, but I'm not going to make any

15  requirements that is, you know, as I say, within certain time

16  parameters you must respond, but it does look there is some

17  need for more interaction and I hope you can facilitate that.

18  Because if there's a pattern that develops beyond what I've

19  seen thus far, then I suppose I have to weigh into it and I

20  don't want to do that.

21  **MR. MOSKO:**  Fair enough.

22  And just with respect to Mr. Lincoln's

23  characterizations, when a request for a meet and confer comes

24  in and it's provided, "Get back to us in two or three days,"

25  and I happen to be in deposition in another city, I think it's

1    reasonable to say, "I'm busy.  I'm not able to do that."

2         And you have it right about the way in which the

3    various parties have chosen to staff the case.  Mr. Lincoln, I

4    think, is the eighth lawyer that we've seen with respect to

5    Facebook.  I will get back -- I generally respond to somebody

6    within 48 hours when they make the request, and I say -- I will

7    either say, "I'm available these times, and this is the

8    timeframe that I have to respond," and that's the way it's

9    gone.

10        Unfortunately, because of the staffing decisions,

11   we've gotten the issues of, "Well, we don't accept that."  And,

12   so, you can see the push and pull that's gone on.

13        I will do my best to make myself available

14   consistent with my calendar, but Facebook has to understand

15   that just because they set a 48-hour window to respond to a

16   request and then write countless e-mails to me saying, "You're

17   refusing to meet and confer," I think that's unreasonable.

18        I'll do my best to meet their request and to provide

19   a reasonable timeframe in which to respond as long as they are

20   under the -- have the understanding that they don't

21   automatically get their 48-hour window that they usually

22   request for meet and confers.

23        **MR. LINCOLN:**  The problem, Your Honor, is the choice

24   that he indicates is made about staffing the case and making

25   himself the only person who can do it all is that they

essentially give themselves -- attempts to give himself an unbounded continuance of all of the meet and confers.

The last thing we want to do is litigate after we haven't properly met and conferred. That doesn't do anybody any good.

But we're now in the position in a couple of instances of having to file a motion because we can't get a response, and we're engaging in e-mail practice over whether they've given us enough time. And what you're seeing is that frustration of having us trying to move it forward.

And I'm not in the position to tell counsel that he should be bringing somebody else into the case. That's not what I'm suggesting; but it's not fair to us, after two years of being in this case, to still have to wait a month to find out whether they're going to respond to discovery that was due over a month ago. That's where we are.

**THE COURT:** Well, the standard in this, as in many things, is reasonableness; and if, you know, I see that as a -- I get the flavor that there's some, you know, strategic delay, or what have you, that's not going to be met with a lot of enthusiasm on my part.

But if it's -- but at the same time I don't think I -- this case is certainly not, at this point, one that I think I should do something, which to me would be extraordinary, by saying, "Counsel have to respond to each

1   other within a set period of hours."

2           I'm going to assume that as a result of this

3   discussion, the parties are going to do their utmost to be

4   reasonable in response, with the understanding that all of you

5   are busy lawyers with other matters that you're litigating and

6   other demands upon your time.

7           So I will -- if it looks to me like there's dodging

8   going on, that's one thing.  If it's the press of business is

9   such that it takes a couple of days to get back to you -- I

10  mean, the example you used, Mr. Lincoln, of, "Well, if it's a

11  month or two months," okay, that is a problem.

12          And if that -- you know, I'm not going to go back

13  now and study exactly how long it took each request to be

14  responded to, but I'm going to assume that people are going to

15  be in reasonable communication and that, you know, Mr. Mosko,

16  if you're going to be out of pocket, you'll delegate somebody

17  to handle issues in your absence.  I assume you'll do that.

18          But I'm not going to put some special

19  meet-and-confer response requirement at this juncture, but I

20  don't -- you know, I understand the frustration.

21          Yeah?

22          **MR. MOSKO:**  There's never been an instance in which

23  Mr. Lincoln has suggested whether it's been two months.

24          In any event, the interesting issue that's before us

25  literally right now is they insisted that we meet and confer on

Monday.  I said, "Look, we're going to be together on

Wednesday.  Let's get all those issues together and we can talk

about that after court."  Now whether that's reasonable or not,

I don't know; but I'm prepared to deal with each one of the

issues that they've raised and I've raised with them this

afternoon after court --

     **THE COURT:**  Well, that's good.  The courtroom is

available to you --

     **MR. MOSKO:**  -- and I'd like to go forward with that.

     **THE COURT:**  -- although I have another matter after

yours; but once I'm done with that, you can use the courtroom

or you can use -- we'll find you another room if you need one.

     **MR. MOSKO:**  Terrific.  Thank you, Your Honor.

     **THE COURT:**  So...  Okay.

     **MR. LINCOLN:**  The next issue, at least as you had

raised them, was settlement conference.

     **THE COURT:**  Was?  Pardon me?

     **MR. LINCOLN:**  Settlement conference.

     **THE COURT:**  Settlement conference, yes.

     **MR. LINCOLN:**  ADR of sorts.

     **THE COURT:**  Yes.

     **MR. LINCOLN:**  As I think we included in our papers,

we would propose to have a world class mediator of some sort

who can come in, and I agree sooner rather than later, to try

to address that.  We proposed Mr. Piazza or if he's not

1  available, Judge Infante.

2          **THE COURT:**  Do you want to go to Maui?

3          **MR. LINCOLN:**  I doubt that I'll get to be the one,

4  but somebody else of that skill level, if you will.

5          **THE COURT:**  Sure.

6          **MR. LINCOLN:**  And I propose that that be --

7          **THE COURT:**  Well --

8          **MR. LINCOLN:**  -- maybe have that done as soon as

9  possible.

10          **THE COURT:**  Well, the issue is -- I mean, I'm

11  perfectly prepared to and will require that you explore some

12  ADR mechanism and you do it sooner rather than later.  Where I

13  will need the parties to agree to it, if -- it takes two to

14  tango, if it's, as you suggest, there is going to be discussion

15  of a global resolution, which, frankly, I think makes sense,

16  but be that as it may, I can order you to go and will order you

17  to go and discuss the settlement of this case.

18          I don't think I'm in a position to order that you do

19  a global settlement discussion.  I mean, I don't think that I

20  can require the settlement agenda to include the Massachusetts

21  action or any other disputes that you may have, although I

22  think it makes sense.  Just, you know, it would be in

23  everybody's interest to do that.

24          So all I can do is require you to go to a settlement

25  conference or some other mediation process within a certain

amount of time on this case, and that I will do.  It's then the

parties -- it's for the parties to determine how broad that

process is going to be; and, as I say, it makes sense, as you

suggested, that at the very least you should talk about some

global resolution but, you know, I can't require you to have on

the agenda the Massachusetts litigation because I don't think

that's within my purview at the moment.

So that's where I was headed when you said --

perhaps, your comments were more, "Doesn't it make sense for us

to have a global discussion," and I frankly agree with you.

**MR. LINCOLN:**  That's true, but it also makes sense

to have the right people there; and I think if we're going to

hear, "Well, we can't meet in the next eight months," because

they need to have certain people there who are busy all day

long --

**THE COURT:**  Does this go back to implicating the

Winklevoss brothers again?  Is this that problem?

**MR. LINCOLN:**  Exactly.  They've indicated that they

have to be there at trial.  If they're not going to show up for

a settlement communication -- settlement conference, it's going

to be difficult.

**THE COURT:**  Well, I'm going to order that you go

off, and we'll talk about what the order is going to look like;

and I'm going to talk to the mediator, whoever that may be, to

determine who he or she thinks has to be there and how they

orchestrate all of that. I mean, that is for the settlement conference judge or a mediator to decide, I think, who they need to have and what their particular orders are.

I mean, I have -- Judge Spero, for example, has a different order than I do about who has to be there when we're conducting settlement conferences, so I wouldn't intrude on a particular other mediator's process.

That said, I do want you to go and have a session, an ADR session, at the very least involving this case and I want it to happen in the next 60 days.

Now, it can either be a private mediator or I can order you to either go to one of our panel mediators or I can order you to go to one of my colleagues. So I want your input, each of you -- all of you on that question.

Anyone want to speak up?

**MR. MOSKO:** I'll respond. If -- we're perfectly happy subject to the scheduling and who needs to appear to do a mediation in front of one of the magistrate judges or a settlement conference, as it's referred to, and Mr. Lincoln made reference to world class mediators. I think you've got those right here, frankly.

For example, Judge Trumbull I have all the confidence in the world in and would propose that the case go to her initially; and if there is additional need or there's a possibility where additional time is necessary, if she doesn't

have the time to spend on it, then I think we can -- we can

investigate other possibilities.  But I would be more than

happy to have a settlement conference before Judge Trumbull.

As the Court knows, Judge Lloyd is not a possibility

with respect to my condition.

**THE COURT:**  I know.  Yeah.

**MR. LINCOLN:**  Plaintiffs coming in from the side

bar, Your Honor.  I understand that Judge Trumbull has

disqualified herself from this matter.  It's (inaudible).

**THE COURT:**  I didn't know that, but okay.

**MR. MOSKO:**  Is that right, Monte?

**MR. COOPER:**  Yeah.  My understanding, Your Honor, is

that Magistrate Judge Trumbull was originally assigned.  I can

reverify this, but upon removal my recollection is --

**MR. MOSKO:**  I think it was always Judge Seeborg

but --

**MR. COOPER:**  If I'm mistaken about that, but --

**THE COURT:**  We don't have to -- this doesn't have to

be a whole mess.

**MR. LINCOLN:**  I can qualify, Your Honor, and now I

understand.  What happened was we had a motion to compel in the

Massachusetts case that was originally assigned to Whyte and to

Magistrate Judge Trumbull, several different subpoenas served

by plaintiffs' counsel.

The one that was assigned to Judge Trumbull,

1    Magistrate Judge Trumbull, she eventually actually withdrew

2    from consideration deciding an undisclosed conflict, and I

3    apologize.  That's the conflict.

4            **MR. MOSKO:**  Okay, well --

5            **THE COURT:**  Well, you know, I can make it easy for

6    you because I was probably -- if we go the judicial mediator

7    angle, I was going to explore San Francisco colleagues of mine.

8            But the first issue is whether or not it ought to go

9    to, you had suggested, Mr. Lincoln, private mediation.  Is

10   there any suggestion about that?  I mean, to someone like

11   Mr. Piazza, obviously, requires the parties to agree because

12   it's not without cost.  Has there been discussion about that?

13           **MR. MOSKO:**  There has not.

14           **THE COURT:**  All right.  And I'm -- just in light of

15   the general sense I have about the likelihood of agreements on

16   things, I'm thinking that it's perhaps better for me to just

17   simply assign you to a wonderful free mediation service.

18           So the question is whether or not there is -- you

19   know, our panel mediators are, you know, some of the more

20   respected lawyers in the community; and, so, I'm somewhat

21   tempted by that.

22           But I think what I'm inclined to do is to have you

23   go and see, perhaps, either Judge -- well, unfortunately, Judge

24   Spero is already overburdened with some of my matters -- so,

25   perhaps, Judge Chen or -- probably send it up to Judge Chen

1 actually if he was available.

2 And, again, I'm not sure. You know, I say 60 days

3 to say I want to motivate the parties to do that. I don't know

4 what his schedule is like. He may not be free to do that.

5 But I'm also willing to here somebody if there are

6 other suggestions of people that you have in mind. Go ahead.

7 Tell me.

8 **MR. MOSKO:** If we're going to take advantage of your

9 courtroom this afternoon, I wonder if we can table that and

10 then come back to you as to see if we can't reach some kind of

11 an agreement.

12 **THE COURT:** All right. Just with the understanding

13 that it has to be some -- some ADR has to go on in the next,

14 say, 60 to 90 days, and I can be flexible about it. If the

15 parties agree, the more the better; but there will not be an

16 option to say, "We can't agree, so leave us alone."

17 **MR. MOSKO:** I understand.

18 **THE COURT:** There will be some ADR process within

19 the next 60 to 90 days of the case.

20 **MR. MOSKO:** I understand.

21 **THE COURT:** Okay. Anything else?

22 **MR. LINCOLN:** The next item that you had listed was

23 discovery limits, and I didn't understand you're ruling on any

24 of that.

25 **THE COURT:** I wasn't --

1    **MR. LINCOLN:** You were just telling us to work it

2    out.

3        The main issue with the source of the proposal to be

4    made was most of the depositions we've got are out of state and

5    have to be done because they can't be compelled to come to

6    trial, and some of them are going to be short. So to end up

7    having to come back and fight other whether we got ten

8    depositions that are three hours each or seven depositions --

9        **THE COURT:** What I'm saying is I would rather -- I

10   would have preferred you to say, "We need 15 depositions rather

11   than 10," rather than giving you an hour amount because

12   that's -- I'm concerned -- and, perhaps, you're right, perhaps

13   it wouldn't be this, but I'm concerned that's going to create a

14   whole bunch of issues about the clock running and when the

15   clock is running, and all the rest.

16       Where I would rather, at the outset, know if you

17   think 10 is not enough, you know, 10 is not written in stone.

18   I'm willing to adjust in the appropriate circumstance, but I'd

19   rather do it that way than an hours amount. You know, so if

20   you need 15 depositions, tell me you need 15. If you --

21       **MR. LINCOLN:** 15.

22               (Laughter)

23       **MR. LINCOLN:** No. Actually, Your Honor, that wasn't

24   just answering the question. I was actually consulting with

25   the expert.

1          **THE COURT:**  All right.

2          **MR. LINCOLN:**  Five defendants.  One of the

3    defendants happens to be a principal.

4          Ms. Sutton is the person who has been running point

5    on all the discovery.

6          **THE COURT:**  Okay.

7          **MR. LINCOLN:**  So I turn to look at her, not for any

8    other reason than she's going to be the one who has to then

9    explain to me why I got it wrong if I get it wrong.

10         **THE COURT:**  No shame in consulting with one's

11   colleagues.

12         How many do you think you need, Mr. Mosko?

13         **MR. MOSKO:**  Probably less than 15, Your Honor, so --

14         **THE COURT:**  Well, it sounds like everyone at this

15   juncture can live with 15.  So I'll use 15.

16         And then the other discovery limits, it would seem

17   to me, would be -- as I say, the jumping-off point is what the

18   fallback is, the 25 interrogatories per party, and the like.

19         Again, if there are particular reasons why you need

20   some different limits, I'm willing to consider it.  I'd like to

21   know why, but --

22         **MR. LINCOLN:**  The question there, Your Honor, is

23   whether the original set of interrogatories that was aimed at

24   the jurisdictional claims --

25         **THE COURT:**  Yes.

1        **MR. LINCOLN:** -- in State Court, for example, and

2    otherwise, whether those going to count towards this or whether

3    we're going to get another set.  I think that is the source of

4    some of the distinction that the parties are...

5        **MR. MOSKO:** And I'm happy to respond to that.  As

6    the Court correctly, I think, observed in its recent order in

7    the motion to compel, the discovery that was done was not

8    simply related to jurisdiction; that is, it wasn't, "Tell me

9    all the contacts that you've had in a particular location."

10        Most of it, in fact, went to the heart of the

11    matter; and we're not, of course, taking the position that it's

12    only relevant to personal jurisdiction, and I think -- I think

13    literally all of that discovery that they propounded, and I

14    think there were hundreds of interrogatories and hundreds of

15    document requests, literally go towards the ultimate issues in

16    the case.

17        If the defendants are -- if the plaintiffs seek an

18    amendment to the 25 interrogatories, and I think they've

19    propounded substantially more than that, then I would propose

20    there would be some kind of a motion so the Court can look at

21    that issue similar to the other issues.

22        **THE COURT:** At this juncture are you saying that --

23    you're saying you want 25 more, you want more than 25 more?  I

24    mean, what is your position on that?  I have to go back and

25    look.

**MR. COOPER:** Your Honor, I was integrally involved at the State level and to answer that, if you could let me just preface the problem.

When we were in front of Judge Elfing in the State level, Judge Elfing initially did grant that we could go forward on jurisdictional discovery. We served both what you may be familiar with are the form interrogatories that are approved by the State Judicial Council. Those are some of the interrogatories Mr. Mosko is referring to.

Most of those went -- the only ones that matter relevant to this particular proceeding are those that were served on ConnectU because both the form and special interrogatories which were also served at that time went to the three dismissed parties, as well as Howard Winklevoss and ConnectU.

The problem that would be faced without just having a clean slate of 25 interrogatories not directed to jurisdiction is that they were written and they were served in that period of time prior to the motion to quash with those issues in mind, not with the substantive issues of the litigation as it would go forward after discovery.

Having said that, the special interrogatories, I believe we served 23 on ConnectU and they were served at the time of the jurisdictional dispute, among the other problems we would face is we got a motion to compel granting some further

1    answers of those; and I wouldn't even know how to have

2    forwarded compliance with those special rogs as they were

3    answered at that time.  I see no viable way other than to clean

4    the slate and say that the parties start with 25.

5          **THE COURT:**  Well, what I want you to do right now, I

6    have to deal with a pretrial conference that's got a bunch of

7    motions and then I have to go to a judges' meeting at

8    4:00 o'clock, so I want you to go and start your meeting and

9    conferring on some of these issues that we've talked about.

10          I'm going to deal with their case and then check in

11   with you right before I go to the judges' meeting, and we'll

12   kind of go from there and see if I can -- well, I can go do my

13   thing there and come back.

14          But I want you to start the process and you have

15   several things to work on at the moment, the trial date being

16   sort of -- the schedule being the first, and then also some of

17   these discovery limits, and the like; and go forth and do that.

18   And then I will deal with this other case and then come back to

19   you in a few minutes.  We can get you a room down the hallway.

20          **MR. MOSKO:**  That's great.  Thank you, Your Honor.

21          **THE COURT:**  So I will ask my law clerk, my judicial

22   assistant -- my law clerk.  All right.

23          **MR. LINCOLN:**  Your Honor, one last thing.  I just

24   want to make sure that I understood what you were saying.  You

25   said that you were inclined to move the summary judgment and

56(f) motions to the same date two weeks back.  Is that a date certain?

        **THE COURT:**  February 27th.

        **MR. LINCOLN:**  Thank you.

        **MR. MOSKO:**  I want to check with my calendar to see if that date's good; and if it is, that's fine.  And I think what we'll do --

        **THE COURT:**  Okay.

        **MR. MOSKO:**  -- with Your Honor's guidance, is that we will withdraw our current motion for Rule 56(f) and then include it in one document --

        **THE COURT:**  Correct.

        **MR. MOSKO:**  -- so the Court can see what the issues are.

        **THE COURT:**  Correct.  And everyone you made your -- you filed your motion.  Everything then will get moved back in terms of the filing deadline consistent with the February 27th date.  So your reply date -- your reply brief moves, your opposition moves.

        **MR. MOSKO:**  I understand.

        **THE COURT:**  Okay.

        **MR. MOSKO:**  Thank you, Your Honor.

        (Proceedings adjourned at 3:29 p.m.)

1

2

3

4                          **<u>CERTIFICATE OF REPORTER</u>**

5

6              I certify that the foregoing is a true and correct

7    transcript, to the best of my ability, of the above pages of

8    the official electronic sound recording provided to me by the

9    U. S. District Court, Northern District of California, of the

10   proceedings taken on the date and time previously stated in the

11   above matter.

12             I further certify that I am neither counsel for,

13   related to, nor employed by any of the parties to the action in

14   which this hearing was taken; and, further, that I am not

15   financially nor otherwise interested in the outcome of the

16   action.

17

18   _____        02/24/09

19              Signature of Transcriber     Date

20

21

22

23

24

25