# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

Nos. 08-16745, 08-16849, 08-16873 (consolidated)
_____

**THE FACEBOOK, INC., *et al.*,**
**Plaintiffs—Appellees,**

v.

**CONNECTU, INC., *et al.*,**
**Defendants—Appellants.**

_____

**CAMERON WINKLEVOSS, TYLER WINKLEVOSS AND DIVYA NARENDRA'S**

(I)  RESPONSE TO "APPELLANT'S MOTION TO VOLUNTARILY DISMISS APPEAL PURSUANT TO FRAP 42(B)" and STIPULATION OF DISMISSAL, and

(II) RESPONSE TO "MOTION TO WITHDRAWAL AND APPOINTMENT OF SUBSTITUTE COUNSEL FOR DEFENDANT-APPELLANT CONNECTU, INC.

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

*Attorneys for Appellants-Non-Movants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra*

January 6, 2009

TABLE OF CONTENTS

I.  RESPONSE TO MOTION TO DISMISS CONNECTU'S APPEAL ................................................................1

    A.  Dismissal Would Be Unjust ..................................................2

    B.  Dismissal Would Be Improper Where the Sole Purpose of The Motion to Dismiss is to Evade Appellate Review ..........5

    C.  ConnectU Continues to Have Standing to Appeal .................6

    D.  ConnectU's Appeal Is Not Moot...........................................7

II.  RESPONSE TO MOTION TO SUBSTITUTE COUNSEL ..............10

III. CONCLUSION ................................................................................12

Appellants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (the founders and prior shareholders of ConnectU, collectively, "Founders") hereby respond to ConnectU's motion to dismiss; ConnectU's purported "stipulation" of dismissal; and ConnectU's motion to substitute counsel.

## I. RESPONSE TO MOTION TO DISMISS CONNECTU'S APPEAL

As an initial matter, the Founders respectfully request that the Court defer consideration of ConnectU's motion to dismiss to the Merits Panel. Based on its prior positions, we expect Facebook to argue in its merits brief due on January 12, that the *Founders'* appeal—like ConnectU's appeal—should also be dismissed on alleged standing or mootness grounds.[1] Because the legal and factual issues concerning the two issues are intertwined, the Court should address them at the same time. This is particularly true in this case where, if the Merits Panel were to find that both ConnectU and the Founders' appeals are moot, it would then have to address whether the district court orders giving rise to any mootness should be vacated. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (vacatur is the "general practice" of the Court

---

[1] Facebook has previously taken the position (as ConnectU has in its Motion to Dismiss, at page 7) that compliance with terms of settlement moots an appeal. *See* Ex. A to the Parke Decl. at 5. Facebook has also taken the position before the Court that the Founders have complied with the terms of the settlement. *See* Ex. B to the Parke Decl. at 6 ("the transfer of the cash and stock consideration by the parties and the filing of dismissals were required acts contemplated by the Settlement Agreement and the July 2, 2008 Judgment.").

to ensure reviewability of district court rulings).

## A. Dismissal Would Be Unjust

If this panel does decide to address Facebook's motion to dismiss ConnectU's appeal, the Court should deny the motion because dismissal would unjustly reward Facebook's attempts to manipulate proceedings before the Court.

On October 6, 2008, ConnectU and the Founders filed their opening appeal brief seeking to reverse the district court's summary enforcement – without an evidentiary hearing and without discovery – of a purported settlement agreement between them and Facebook. That settlement required, among other things, that the Founders transfer to Facebook all of ConnectU's common stock. Until three weeks ago, and per order of the district court, the ConnectU stock was being held in trust by a Special Master. *See* Ex. D to the December 22, 2008, Declaration of James Towery ("Towery Decl.") at 2. But on November 21, 2008, over the objection of ConnectU and the Founders, the district court ordered the Special Master to transfer the ConnectU stock to Facebook on December 15. *See* Ex. B to the Towery Decl. at 1-2.

On November 25, ConnectU and the Founders moved this Court to stay the transfer, arguing that if the transfer were made, Facebook would seek to dismiss ConnectU's appeal (including under the doctrine of *dominus litis*),

2

which would cause irreparable harm. Docket No. 24 in Appeal No. 08-16873 (motion to stay, filed under seal) at ii and 1, fn. 1. *See Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (loss of basic right to appeal constitutes irreparable harm justifying a stay pending appeal). In opposition to the stay, Facebook represented that the alleged "harm—the loss of an appeal—*is speculative*." *See* Ex. C to the Parke Decl., at 18 (emphasis added). On December 12, the Court denied the requested stay and the stock was given to Facebook on December 15. *See* Ex. H to the Towery Decl. at 1-2.

Facebook immediately took steps to use its new control of ConnectU to do precisely what it had said was "speculative" on November 25: it converted ConnectU into a subsidiary of Facebook, controlled by its sole director Mark Howitson, an in-house lawyer for Facebook, and just one week later filed a motion to dismiss the ConnectU appeal, including pursuant to the doctrine of *dominus litis*.

It would be unjust to dismiss ConnectU's appeal in light of Facebook's representations to this Court just days before that the very irreparable injury – dismissal of the appeal – that Facebook now seeks to inflict was "speculative," when in fact Facebook clearly intended to seek dismissal as soon as it acquired the ConnectU stock. *See Blackie v. Barrack*, 524 F.2d 891, 900 (9th Cir. 1975) (Court has discretion to take into consideration questionable litigation tactics and

3

posture of case in determining whether to dismiss an appeal); *Benton v. County of Berrien*, 570 F.2d 114, 119 (6th Cir. 1978); *see also Suntharalinkam v. Keisler*, 506 F.3d 822, 825-27 (9th Cir. 2007) (Kozinski, J., dissenting) ("the combination of these factors spells manipulation. What could possibly have motivated petitioner's counsel to file a motion seeking dismissal of the petition, which would do his client absolutely no good, and quite possibly some harm…").

Moreover, dismissal would be particularly unjust where ConnectU's appeal has been pending since August; ConnectU filed its opening appeal brief months ago on October 6; Facebook's opposition brief is due next week; and ConnectU has devoted significant resources to pursuing its appeal.

For all of the foregoing reasons, it also would be unjust to enter Facebook's proffered stipulation, which is in any event procedurally improper.[2]

---

[2] This is a consolidated appeal in which the Founders are also appellants. Neither "new" ConnectU (*i.e.*, ConnectU as controlled by Facebook as owner of its stock) nor Facebook has sought—much less obtained—consent to dismiss ConnectU's appeal from the Founders, who were real parties in interest at the time ConnectU's appeal was filed, and are real parties in interest to ConnectU's pending appeal. *See* F. R. App. P. 42(b). It is undisputed that ConnectU is a closely held corporation having four shareholders, Cameron Winklevoss, Tyler Winklevoss, Divya Narendra (the Founders) and Howard Winklevoss.

### B. Dismissal Would Be Improper Where the Sole Purpose of the Motion to Dismiss is to Evade Appellate Review

The motion should also be denied because it was filed for the sole purpose of evading appellate review of contested orders and judgments below. *See United States* v. *Wash. Dep't of Fisheries*, 573 F.2d 1117, 1118 (9th Cir. 1978) (Kennedy, J.) (explaining that "[i]f it appeared that an appellant sought dismissal for the purpose of evading appellate determination of certain questions in order to frustrate court orders in the continuing litigation, we might have grounds for exercising our discretion not to dismiss").

Indeed, it is clear that Facebook's true purpose is to avoid having this Court review the merits of the orders and judgments of the district court that resulted in enforcement of the purported settlement. The current motion to dismiss is part of that effort. If the Court were to dismiss ConnectU's appeal, Facebook is likely then to argue in its merits opposition that the Founders' appeal also should be dismissed, due to alleged lack of standing or mootness. *See* prior discussion at 1, fn.1. Such an unjust attempt at "appeal-proofing" should be avoided by denying the motion to dismiss. *See Dep't of Fisheries*, 573 F.2d at 1118.

### C. ConnectU Continues to Have Standing to Appeal

ConnectU incorrectly asserts that its appeal must be dismissed because it lacks standing to appeal. But as is made clear by the case on which ConnectU relies, "a party aggrieved by a final judgment may appeal from it" as long as it has an "immediate and pecuniary interest" that is "not a remote consequence of the judgment." *Libby, McNeill & Libby v. City National Bank*, 592 F.2d 504, 511-12 (9th Cir. 1978) (internal citations and quotations omitted). ConnectU's appeal seeks redress from several adverse district court rulings directly affecting significant interests of ConnectU, including its rights under the purported settlement and the ownership of its stock. *See* Ex. E to the Towery Decl. (redacted term sheet ("Term Sheet") showing that ConnectU was a party to the Term Sheet agreement). Any ruling by the Court on the merits of ConnectU's appeal would have an immediate and direct impact on ConnectU's legal interests.

While ConnectU cites *Libby* for the proposition that ConnectU cannot carry the appeal for the Founders, the case says no such thing. There, the appellant sought to appeal a judgment that was not entered against it—one that the adverse party had no desire to appeal. *See Libby*, 592 F.2d at 511. Here, all the appealed orders and judgments were entered against both ConnectU and the Founders. ConnectU repeatedly sought stays of those rulings, appealed those

rulings, and already filed its appellate brief – all without objection from the purported beneficial owner, Facebook. *See* Ex. A to the Parke Decl. at 5, fn. 7 (Facebook arguing in August 2008 that "Facebook is now the beneficial owner of ConnectU").

Moreover, *Libby* expressly distinguishes a situation, like the present case, where a judgment was entered against multiple entities, but only a subset desires to appeal. *See id.* 511-12 ("This is not a case such as [*Celanese*] where a surety who is sued directly along with his principal is permitted to appeal although the principal chooses not to"); *United States ex rel. Celanese Coatings Co. v. Gullard*, 504 F.2d 466, 469 (9th Cir. 1974) ("Celanese also argues that Fireman's Fund, as a mere surety, has no standing to maintain this appeal since Gullard, the principal, has not appealed. We have concluded that this contention has no merit whatsoever.").

### D. ConnectU's Appeal Is Not Moot

ConnectU's "burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Mootness is a flexible doctrine that allows review "if there are present effects that are legally significant." *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003); *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980) (explaining that the Court's "cases demonstrate the flexible character of the Art. III mootness

7

doctrine"). Where a court retains the ability to "fashion some form of meaningful relief" between the parties, an appeal is not moot. *See Dream Palace v. County of Maricopa*, 384 F.3d 990, 1000 (9th Cir. 2004) (inner citation omitted).

As demonstrated above, ConnectU has appealed several rulings below that directly affect ConnectU's rights under the purported settlement and the ownership of its stock. The transfer of the ConnectU stock to Facebook on December 15 in no way undermines the "present effects" of any merits-based ruling by the Court on these issues. This Court could very well strike down the purported settlement as invalid, which would nullify ConnectU's rights under that purported agreement and result in, *inter alia*, the return of the ConnectU stock to the Founders.

All the settlement cases cited by ConnectU involve facts—unlike this case—where parties had complied with significant terms of settlements without resistance. ConnectU even concedes that under the law of the Circuit, a case is moot only where a party "demonstrates an intention to abide" by the settlement or judgment, "accepts a benefit," or when "the party's compliance renders appellate relief futile." *See* Mot. to Dismiss at 7, *citing Geneva Towers Tenants Org. v. Federated Mortg. Investors*, 504 F.2d 483, 485 n.2 (9th Cir. 1974). Here, ConnectU has resisted at every turn. It opposed Facebook's motion to

8

enforce the purported settlement. It sought a stay in the district court and before this Court in order to prevent the transfer of its stock. It filed its Notice of Appeal of the adverse district court rulings on July 30. It filed its opening appeal brief on October 6. It opposed the district court's September 19 show cause order, which contemplated the prompt transfer of the ConnectU stock to Facebook. It then sought an additional stay from the district court, and a stay and mandamus relief from this Court to prevent distribution of the ConnectU stock to Facebook. These efforts strongly weigh against a finding of mootness.

Lastly, ConnectU argues that the doctrine of *dominus litis* moots ConnectU's appeal. Mot. to Dismiss at 7, *citing Gould v. Control Laser Corp.*, 866 F.2d 1391, 1394 (Fed. Cir. 1989). But this doctrine has been applied by other courts only in limited, readily distinguishable situations and does not replace the fact-intensive mootness inquiry typically made in this Circuit, discussed in the prior paragraph. For example, *Gould* addressed the effect of a settlement that was never contested. *Gould*, 866 F.2d at 1394. *Gould* specifically distinguished that situation from one where a claim allegedly becomes moot *while an appeal is pending*. *Id.* at 1395 ("This case did not become moot on appeal; rather a consent judgment was entered pursuant to the settlement agreement of the parties"). In fact, *Gould* would require this Court to vacate any rulings by the district court that moot ConnectU's pending appeal.

9

*Id.* at 1394-95 (discussing doctrine of vacatur).

## II. RESPONSE TO MOTION TO SUBSTITUTE COUNSEL

Before ConnectU filed its motion to substitute counsel, Boies, Schiller & Flexner LLP—counsel for the Founders and for ConnectU prior to the transfer of the ConnectU stock to Facebook—stated that it would stipulate to substitution of counsel if Facebook agreed to "completely indemnify [it] from any liabilities arising from or relating to such substitution." Ex. D to the Parke Decl. Otherwise, a motion for substitution would need to be filed. *Id.* Neither counsel for Facebook nor "new" ConnectU directly responded to counsel's request prior to filing the pending motion.[3]

The Founders do not object to substitution of counsel to represent the interests of "new" ConnectU, *i.e.*, ConnectU as owned by Facebook, as long as the Founders' existing counsel can continue to represent the Founders and the interests of "old" ConnectU, including in this Court and following a successful outcome on the existing appeal. The Founders are concerned, however, that if the Court were to grant the motion to substitute counsel, Facebook will attempt improperly to expand that ruling as an alleged basis for seeking to disqualify Boies Schiller as the *Founders*' counsel, either in this or other proceedings.

---

[3] BSF also asked ConnectU's "new" counsel to "confirm that ConnectU will not take any actions to interfere with the pending appeal." Ex. D to the Parke Decl. This request was also ignored.

Indeed, Hoge Fenton, ConnectU's purported new counsel, recently advised Boies Schiller that it intends to file a motion in the District Court of Massachusetts seeking to disqualify Boies Schiller from representing the Founders in that case.  Ex. E to the Parke Decl.

Facebook should be prevented from engaging in such gamesmanship. *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) ("The cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant.").  Disqualification would be highly prejudicial to the Founders and is clearly inappropriate.  *See id.* ("Because of this potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'").  Boies Schiller's prior representation of "old" ConnectU cannot be a source of disqualification based on the facts at issue in this case, *i.e*., where pursuant to a contested corporate transaction (the Term Sheet's purported "settlement"), the merits of which are being challenged on appeal, ConnectU "switched sides" after the Founders were forced, by court order, to transfer the ConnectU stock to Facebook over ConnectU's own objection.  *See, e.g., International Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1292 (2d Cir. 1975) ("The earlier relationship of the law firm to the merged corporation cannot be a source of disqualification in these circumstances"); *Bass Pub. Ltd. Co. v. Promus Cos*., 1994 U.S. Dist. LEXIS 136

(S.D.N.Y. Jan. 7, 1994) (disqualification improper where the client, not the firm, had "switched sides"). Further, Boies Schiller did not even represent ConnectU or the Founders before or at the February 21, 2008 mediation, which resulted in the Term Sheet that is at issue on appeal. Rather, Boies Schiller represented ConnectU and the Founders only thereafter in their efforts to void the purported settlement.

## III.   CONCLUSION

The Founders respectfully request that the Court deny ConnectU's motion to dismiss or, alternatively, refer ConnectU's motion to the Merits Panel, which will address Facebook's related argument that the Founders' appeal should be dismissed on standing or mootness grounds.

Date:  January 6, 2009

Respectfully submitted,


  /s/ Evan A. Parke

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

*Attorneys for Defendants and Appellants Cameron Winklevoss, Tyler Winklevoss and Divya Narendra*